UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LISA DOMSKI,

      Case No. 2:23-cv-12023

     Plaintiff,

v.      Hon. David M. Lawson

BLUE CROSS BLUE SHIELD
OF MICHIGAN,

     Defendant.

---

| Noah S. Hurwitz (P74063) | Scott R. Knapp (P61041) |
|---|---|
| HURWITZ LAW PLLC | Brandon C. Hubbard (P71085) |
| 617 Detroit St., Ste. 125 | Nolan J. Moody (P77959) |
| Ann Arbor, MI 48104 | Zachary L. Pelton (P85197) |
| (844) 487-9489 | DICKINSON WRIGHT PLLC |
| noah@hurwitzlaw.com | 123 W. Allegan Street, Suite 900 |
| *Attorneys for Plaintiff* | Lansing, MI 48933 |
| | (517) 371-1730 |
| | sknapp@dickinsonwright.com |
| | bhubbard@dickinsonwright.com |
| | nmoody@dickinsonwright.com |
| | zpelton@dickinsonwright.com |
| | *Attorneys for Defendant* |

---

**DEFENDANT'S ANSWER TO PLAINTIFF'S
COMPLAINT, AFFIRMATIVE AND
OTHER DEFENSES, AND RELIANCE UPON JURY DEMAND**

NOW COMES Defendant Blue Cross Blue Shield of Michigan ("Defendant"), by and through its attorneys, Dickinson Wright PLLC, and for its Answer to Plaintiff Lisa Domski's ("Plaintiff") Complaint, states the following:

1

## INTRODUCTION

1.    Plaintiff Lisa Domski submitted a religious accommodation request for exemption from Defendant's COVID-19 vaccine mandate and was terminated for not having "sincerely held religious beliefs" on January 5, 2022. Despite the Equal Employment Opportunity Commission ("EEOC") telling employers to "ordinarily assume that an employee's request for religious accommodation is based on sincerely held religious belief, practice, or observance," Defendant did the opposite. Instead of respecting Plaintiff's religious beliefs, Defendant conducted a short, arbitrary interview with her regarding whether she had taken other vaccines or over the counter medications. Defendant then ignored the EEOC's warning that employers "should not assume that an employee is insincere simply because some of the employee's practices deviate from the commonly followed tenets of the employee's religion, or because the employee adheres to some common practices but not others" and terminated Plaintiff based on Defendant's subjective standard of religiosity. All the while, Defendant did not require the customers, vendors, or independent contractors on its premises to be vaccinated.

**ANSWER: Upon present information and belief, Defendant admits that Plaintiff submitted a religious accommodation request for exemption from Defendant's COVID-19 vaccination policy, and was terminated on January 5, 2022. Defendant denies the remaining allegations contained in Paragraph 1.**

2

## PARTIES AND JURISDICTION

2.    Plaintiff is an individual residing in Wyandotte, Michigan.

**ANSWER: Defendant lacks knowledge sufficient to either admit or deny the allegation contained in Paragraph 2.**

3.    Defendant is a domestic nonprofit organization with a principal place of business located at 600 E. Lafayette Blvd., Detroit.

**ANSWER: Defendant admits the allegation contained in Paragraph 3.**

4.    Plaintiff's claims arise out of Defendant's violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e and the Elliott-Larsen Civil Rights Act ("ELCRA") 28 U.S.C. § 1367.

**ANSWER: Defendant admits that Plaintiff purports to assert violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e and the Elliot-Larsen Civil Rights Act ("ELCRA"). Defendant denies that it has violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e or and the Elliot-Larsen Civil Rights Act ("ELCRA") or any other civil rights act.**

5.    This Court has general federal question jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claim.

**ANSWER: Defendant admits that the U.S. District Court for the Eastern District of Michigan has jurisdiction over the claims.**

6.    This matter is not subject to arbitration.

3

**ANSWER: Defendant denies as untrue the allegation contained in Paragraph 6.**

7.   Venue is proper under 28 U.S.C. § 1391 because this is the judicial district where a substantial part of the events giving rise to the claims occurred.

**ANSWER: Defendant admits the allegations contained in Paragraph 7.**

8.   Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination alleging religious discrimination and retaliation on February 25, 2022.

**ANSWER: Defendant lacks knowledge sufficient to either admit or deny the allegation contained in Paragraph 8.**

## FACTUAL ALLEGATIONS

9.   Plaintiff was employed by Defendant from March 10, 2008, until her termination effective January 5, 2022 with her most recent position being IT Process Specialist II.

**ANSWER: Upon present information and belief, Defendant admits the allegation contained in Paragraph 9.**

10.   Plaintiff was also employed by Defendant for 19 years prior to her recent employment period.

**ANSWER: Upon present information and belief, Defendant admits the allegation contained in Paragraph 10.**

4

## Defendant's Mandatory Vaccine Policy

11.    Defendant announced a mandatory COVID-19 vaccine policy for "all employees and contractors, including those working remotely" on or about November 1, 2021.

**ANSWER: Defendant admits that, on or about that date, it announced a mandatory COVID-19 vaccine policy for its employees and contractors, including those working remotely.  Answering further, Defendant states that it announced its COVID-19 policy on October 31, 2021.**

12.    Defendant required employees and contractors to be vaccinated by December 8, 2021.

**ANSWER: Defendant denies the allegation contained in Paragraph 12 as incomplete, and thus, untrue. Answering further, Defendant states that, pursuant to its COVID-19 vaccination policy, employees were required to receive at least the first dose of a two-dose vaccine by December 8, 2021, and to be fully vaccinated by January 4, 2022 (or have an approved medical or religious accommodation by that date), to avoid being separated from the company on January 5, 2022.**

13.    Defendant never required visitors or vendors to be vaccinated.

**ANSWER: Defendant admits the allegation contained in Paragraph 13. Answering further, Defendant states that, during the relevant time period, access to Defendant's facilities by a visitor or a vendor was severely limited.**

14.   The last day for employees to request accommodations to the vaccine mandate was November 11, 2021.

**ANSWER:  Defendant admits the allegation contained in Paragraph 14.**

15.   The decision whether to grant or deny religious and medical vaccine accommodations to applicants was made less than two (2) weeks later, on November 24, 2021.

**ANSWER:  Upon present information and belief, Defendant admits only that Plaintiff's religious accommodation request was denied. Defendant denies the allegation contained in Paragraph 15 to the extent it relates to religious accommodation requests submitted by any other employee besides Plaintiff.**

16.   Employees denied accommodation were automatically placed on unpaid leave of absence from December 9, 2021, until January 5, 2022.

**ANSWER:  Defendant admits the allegation contained in Paragraph 16.**

17.   Defendant's accommodation process was arbitrary and woefully inconsistent.

**ANSWER:  Defendant denies as untrue the allegation contained in Paragraph 17.**

6

18.     Defendant conducted a series of ambush-style interrogations with employees who submitted religious and medical accommodation requests.

**ANSWER: Defendant denies as untrue the allegation contained in Paragraph 18.**

19.     Defendant's employees were not informed of questions ahead of time.

**ANSWER: Defendant lacks knowledge sufficient to admit or deny the allegation contained in Paragraph 19, as it is unclear what is meant by "employees were not informed of questions."**

20.     Attorneys for Defendant questioned employees, but employees were not allowed to be represented by legal counsel during questioning.

**ANSWER: Defendant denies as untrue the allegation contained in Paragraph 20.  By way of further answer, Defendant states that, while only employees were permitted to attend their respective interviews on their behalf, Defendant in no way prohibited the seeking of legal advice from legal counsel.**

21.     The interviewees were told that the interviews had a maximum time of fifteen (15) minutes in duration.

**ANSWER: Defendant lacks knowledge sufficient to admit or deny whether Plaintiff was told that her interview had a maximum time of fifteen minutes in duration, and therefore denies same. Defendant denies the allegation contained in Paragraph 21 to the extent it relates to any other employee besides Plaintiff.**

7

22.    When employees asked questions, they were warned to just "answer the questions" or else they would be denied accommodation.

**ANSWER: Defendant lacks knowledge sufficient to admit or deny the allegation contained in Paragraph 22, and therefore denies same. Answering further, Paragraph 22 is impossible to answer because it fails to identify which (if any) employees asked a question, and which (if any) interviewer responded by saying "answer the questions."**

23.    The interviewees were threatened to keep their answers short and to the point because time was "running out" and time was "limited."

**ANSWER: Defendant lacks knowledge sufficient to admit or deny the allegation contained in Paragraph 23, and therefore denies same.  Answering further, Paragraph 23 is impossible to answer because it fails to identify which (if any) employees to whom the allegation applies, and which (if any) interviewer made the alleged statements.**

24.    Defendant told interviewees that it had not reviewed their written accommodation requests.

**ANSWER: Defendant lacks knowledge sufficient to admit or deny the allegation contained in Paragraph 24, and therefore denies same. Answering further, Paragraph 24 is impossible to answer because it fails to identify which**

8

(if any) interviewee was told that his/her written accommodation request had

not been reviewed.

25.    Defendant denied accommodation to interviewees with language

barriers and/or difficulty answering questions due to medical conditions.

**ANSWER: Defendant denies as untrue the allegation contained in Paragraph**

**25.**

26.    Defendant asked employees the following questions:

    a.      Do you feel like the COVID-19 vaccines were rushed?
    b.      What do you do when you are in physical pain?
    c.      Do you take Aspirin, Sudafed, Tums, or Tylenol?
    d.      Do your beliefs prevent you from receiving medical treatments?
    e.      Do you have a primary care physician?
    f.      Has your doctor ever prescribed medication?
    g.      What would you do if your doctor prescribed medication?
    h.      What medication have you taken?
    i.      Have you always followed this religious belief?
    j.      When was the last time you received a vaccination?

**ANSWER: Defendant denies the allegations contained in Paragraph 26,**

**subparagraphs a. – j. as incomplete, and thus, inaccurate.**

27.    Employees were told that over-the-counter medications like Tylenol

and Tums were developed and manufactured using stem cells.

**ANSWER: Defendant lacks knowledge sufficient to admit or deny the**

**allegation contained in Paragraph 27, and therefore denies same. Answering**

**further, Paragraph 27 is impossible to answer because it fails to identify which**

**(if any) employee was told that over-the-counter medications like Tylenol and Tums were developed and manufactured using stem cells, or by whom.**

28.    However, the over-the-counter medications referenced by Defendant were developed decades before stem cell research was conducted.

**ANSWER: Defendant lacks knowledge sufficient to either admit or deny the allegation contained in Paragraph 28, and therefore denies same.**

29.    Moreover, many of Defendant's employees were objecting to the COVID-19 [sic] for religious reasons that had nothing to do with stem cell research.

**ANSWER: Defendant lacks knowledge sufficient to either admit or deny the allegation contained in Paragraph 29, and therefore denies same.  Answering further, Paragraph 29 is impossible to answer because it fails to identify which (if any) employees to whom it applies.**

30.    Defendant terminated approximately 250 employees who requested a religious accommodation to the COVID-19 vaccine on January 5, 2022.

**ANSWER: Defendant denies as untrue the allegation contained in Paragraph 30.**

31.    Defendant incentivized employees to retire early in 2020 in order to reduce staffing costs, but Defendant did not have to eliminate jobs in 2021 because it terminated unvaccinated employees.

**ANSWER:  Defendant denies as untrue the allegation contained in Paragraph 31.   Answering further, Defendant states that there is no relation between Defendant's vaccination policy and "hav[ing] to eliminate jobs."**

32.    Defendant touted on job recruiting websites that it required COVID-19 vaccination with "no exemptions."

**ANSWER:  Defendant denies as untrue the allegation contained in Paragraph 32.**

33.    Employees denied accommodation to the vaccine mandate were forced into the horrible position of choosing between vaccination or termination:

> Forcing individuals to choose between their faith and their livelihood imposes an obvious and substantial burden on religion . . . vaccine mandates . . . presents a crisis of conscience for many people of faith. It forces them to choose between the two most profound obligations they will ever assume—holding true to their religious commitments and feeding and housing their children. To many, this is the most horrifying of Hobson's choices.

*Sambrano v. United Airlines, Inc.*, 19 F.4th 839, 841 (5th Cir. 2021).

**ANSWER:  Paragraph 33 does not contain any factual allegations, such that no answer is required. To the extent an answer is required, it is denied.**

34.    Defendant terminated remote employees who remained unvaccinated despite those employees posing no discernible risk to their coworkers.

11

**ANSWER:  Defendant admits that remote employees were terminated for their failure to comply with the COVID-19 vaccination policy. Defendant denies as untrue the remaining allegations contained in Paragraph 34.**

### Plaintiff's Religious Accommodation Request

35.   Plaintiff seeks to make all decisions, especially those regarding vaccination and other medical decisions, through prayer.

**ANSWER: Defendant lacks knowledge sufficient to admit or deny the allegation contained in Paragraph 35, and therefore denies same.**

36.   Plaintiff submitted a religious exemption request for the COVID-19 vaccine.

**ANSWER: Upon present information and belief, Defendant admits the allegation contained in Paragraph 36.**

37.   Plaintiff was interviewed by Defendant before her accommodation request was ultimately denied.

**ANSWER: Upon present information and belief, Defendant admits the allegation contained in Paragraph 37.**

38.   Plaintiff, maintaining her sincerely held religious beliefs, did not receive the vaccine, and was subsequently placed on unpaid leave.

**ANSWER:   Upon present information and belief, Defendant admits that Plaintiff did not receive the vaccine and was placed on unpaid leave, pursuant**

to Defendant's COVID-19 policy.  Defendant denies the remaining allegations contained in Paragraph 38.

39.    Plaintiff was ultimately terminated effective January 5, 2022.

**ANSWER: Upon present information and belief, Defendant admits the allegation contained in Paragraph 39.**

40.    The religious accommodation process mandates "bilateral cooperation" between employer and employee. *Ansonia Bd. of Educ. v. Philabrook*, 479 U.S. 60, 69 (1986).

**ANSWER:  Paragraph 40 states a legal conclusion to which no answer is required.  To the extent an answer is required, the allegation is denied.**

41.    No such "bilateral cooperation" occurred during Defendant's interrogation of its employees or otherwise during the process.

**ANSWER: Defendant denies as untrue the allegation contained in Paragraph 41.**

42.    The United States Equal Employment Opportunity Commission tells employers that a prototypical example of reasonable accommodation to the vaccine is being "given the opportunity to telework." U.S. EQUAL EMPL. OPPORTUNITY COMM'N, What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws (May 28, 2021). "If the employer denies the employee's proposed accommodation, the employer should

13

explain to the employee why the preferred accommodation is not being granted." *Id*. (Mar. 1, 2022).

**ANSWER: Paragraph 42 states a legal conclusion to which no answer is required. To the extent an answer is required, the allegation is denied.**

43.    President Daniel J. Loepp announced on or about December 7, 2021: "I want to thank all employees who are or are in the process to become fully vaccinated and encourage any employee who is not vaccinated to consider doing so."

**ANSWER: Defendant admits the allegation in Paragraph 43.**

44.    President Daniel J. Loepp told Defendant's employees in the weeks prior to the vaccination deadline that he anticipated denying accommodation requests and terminating many employees.

**ANSWER: Defendant denies as untrue the allegation in Paragraph 44.**

45.    Plaintiff was an excellent performer of her job duties.

**ANSWER: Defendant denies as untrue the allegation in Paragraph 45.**

46.    Title VII's statutory definition of "religion" includes "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

**ANSWER: Paragraph 46 states a legal conclusion to which no answer is required. To the extent an answer is required, the allegation is denied.**

47.    The U.S. Equal Employment Opportunity Commission ("EEOC") advises employers to "ordinarily assume that an employee's request for religious

14

accommodation is based on sincerely held religious belief, practice, or observance."
U.S. EQUAL EMPL. OPPORTUNITY COMM'N, What You Should Know About
COVID- 19 and the ADA, the Rehabilitation Act, and Other EEO Laws (May 28,
2021).

**ANSWER: Paragraph 47 states a legal conclusion to which no answer is required. To the extent an answer is required, the allegation is denied.**

48.   An individual's testimony about her or his belief "must be given great weight" and is enough to demonstrate sincerity. *Seeger*, 380 U.S. at 184 (1965).

**ANSWER: Paragraph 48 states a legal conclusion to which no answer is required. To the extent an answer is required, the allegation is denied.**

49.   Plaintiff's religious conviction is highlighted by the fact she remained unvaccinated in the face of termination, losing her livelihood in the process.

**ANSWER: Paragraph 49 states a legal conclusion to which no answer is required. To the extent an answer is required, the allegation is denied.**

### Defendant Did Not Base Its Decision on Undue Hardship, Nor Could It Establish Undue Hardship

50.   The prohibition against religious discrimination imposes a "duty" on employers to accommodate the sincere religious observances of employees, absent a showing of "undue hardship." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977).

**ANSWER: Paragraph 50 states a legal conclusion to which no answer is required. To the extent an answer is required, the allegation is denied.**

51.   An employer does not satisfy its burden of proving undue hardship "merely by showing that an accommodation would be bothersome to administer." *Draper v. United States Pipe & Foundry Co.*, 527 F.2d 515, 520 (6th Cir.1975).

**ANSWER: Paragraph 51 states a legal conclusion to which no answer is required. To the extent an answer is required, the allegation is denied.**

52.   Defendant is not claiming undue hardship.

**ANSWER:  Admitted.**

53.   Defendant cannot allege undue hardship when other employees performing similar job duties were granted religious and medical accommodations to the vaccine.

**ANSWER: Paragraph 53 states a legal conclusion to which no answer is required. To the extent an answer is required, the allegation is denied.**

**COUNT I**
**VIOLATION OF TITLE VII, 42 U.S.C. § 2000E, ET SEQ.**
**<u>RELIGIOUS DISCRIMINATION – FAILURE TO ACCOMMODATE</u>**

54.   Plaintiff restates the foregoing paragraphs as set forth fully herein.

**ANSWER: Defendant incorporates by reference its above answers as if fully stated herein.**

55.   At all times relevant hereto, Plaintiff was an employee and Defendant was her employer for the purposes of 42 U.S.C. § 2000e, *et seq*.

**ANSWER: Paragraph 55 states a legal conclusion to which no answer is required.  To the extent an answer is required, the allegation is denied.**

56.   Title VII of the Civil Rights act of 1964, 42 U.S.C. § 2000e *et seq.*, makes it unlawful for an employer to fail or refuse to reasonably accommodate the religious beliefs and practices of an employee or prospective employee.

**ANSWER: Paragraph 56 states a legal conclusion to which no answer is required.  To the extent an answer is required, the allegation is denied.**

57.   Title VII prohibits an employer from discriminating against an employee "because of such individual's... religion." 42 U.S.C. § 2000e-2(a)(1).

**ANSWER: Paragraph 57 states a legal conclusion to which no answer is required.  To the extent an answer is required, the allegation is denied.**

58.   This "includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that [it] is unable to reasonably accommodate an employee's... religious observance or practice without undue hardship on the conduct of the employer's business." *Id*. § 2000e(j).

**ANSWER: Paragraph 58 states a legal conclusion to which no answer is required.  To the extent an answer is required, the allegation is denied.**

59.   After receiving an accommodation request, "the employer is obligated by law to engage in interactive process – a meaningful dialogue with the employee[.]" *Chevron Phillips Chem. Co.*, 570 F.3d at 621 (5th Cir. 2009).

**ANSWER: Paragraph 59 states a legal conclusion to which no answer is required. To the extent an answer is required, the allegation is denied.**

60.   The employer must act in "good faith," Id., and the employee must "make a good faith attempt to satisfy her needs through means offered by the employer," *Brener v. Diagnostic Ctr. Hosp.*, 671 F.2d 141, 146 (5th Cir. 1982).

**ANSWER: Paragraph 60 states a legal conclusion to which no answer is required. To the extent an answer is required, the allegation is denied.**

61.   Title VII makes it unlawful for an employer to retaliate against an employee who engaged in protected activity.

**ANSWER: Paragraph 61 states a legal conclusion to which no answer is required.  To the extent an answer is required, the allegation is denied.**

62.   Plaintiff holds sincere *bona fide* religious beliefs that preclude her from receiving a COVID-19 vaccine.

**ANSWER:  Defendant denies as untrue the allegations in Paragraph 62.**

63.   Plaintiff informed Defendant of those beliefs and requested religious accommodation from the vaccine mandate.

18

**ANSWER: Upon present information and belief, Defendant admits that Plaintiff requested a religious accommodation to the COVID-19 vaccination policy. Defendant denies the remaining allegations contained in Paragraph 63.**

64.    Defendant refused to engage in the interactive process with Plaintiff regarding her religious accommodation requests.

**ANSWER: Defendant denies as untrue the allegations in Paragraph 64.**

65.    Under Title VII, Plaintiff can establish a *prima facie* case of religious discrimination based on a failure to accommodate by showing: (1) she has a *bona fide* religious belief that conflicts with an employment requirement; (2) about which she informed the [Defendant]; and (3) she suffered an adverse employment action for failing to comply with the conflicting employment requirement. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986).

**ANSWER: Paragraph 65 states a legal conclusion to which no answer is required. To the extent an answer is required, the allegation is denied.**

66.    Multiple accommodations could have been offered to Plaintiff. They include mask wearing and periodic testing for COVID-19—the very same accommodations being offered to virtually every public and private employee in the State of Michigan.

**ANSWER: Paragraph 66 states a legal conclusion to which no answer is required. To the extent an answer is required, the allegation is denied.**

19

67.    A "[r]easonable accommodation is by its terms most logically construed as that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question." *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995).

**ANSWER: Paragraph 67 states a legal conclusion to which no answer is required. To the extent an answer is required, the allegation is denied.**

68.    Defendant would not suffer undue hardship by granting Plaintiff an accommodation. 42 U.S.C. § 2000e(j).

**ANSWER: Paragraph 68 states a legal conclusion to which no answer is required. To the extent an answer is required, the allegation is denied.**

69.    The issue became moot when Defendant failed to engage each employee in "a meaningful dialogue" about the accommodation request and learn whethim an acceptable accommodation would impose undue hardship. *Chevron Phillips Chem. Co.*, 570 F.3d at 621 (5th Cir. 2009).

**ANSWER:  Defendant denies as untrue the allegation in Paragraph 69.**

70.    Instead, Defendant announced a one-size-fits all approach to accommodation that deprived Plaintiff of the conversation necessary to discover what accommodations were possible. *Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281, 1285 (7th Cir. 1996) ("courts should look for signs of failure to participate in good faith or failure by one of the parties to help the other party

determine what specific accommodations are necessary" and "[a] party that fails to communicate... may also be acting in bad faith").

**ANSWER:  Defendant denies as untrue the allegation in Paragraph 70.**

71.   Irrespective of the interactive process, Defendant failed to provide Plaintiff with reasonable accommodations for her religious beliefs.

**ANSWER:  Defendant admits that Plaintiff was not granted an accommodation to the COVID-19 vaccination policy. Defendant denies the remaining allegations contained in Paragraph 71.**

72.   Defendant thereby discriminated against Plaintiff because of her religious beliefs.

**ANSWER:  Defendant denies as untrue the allegation in Paragraph 72.**

73.   Defendant's failure to provide religious accommodations has harmed and will continue to harm Plaintiff.

**ANSWER:  Defendant denies as untrue the allegation in Paragraph 73.**

74.   As a direct and proximate result of Defendant's violation of Title VII Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

**ANSWER:  Defendant denies as untrue the allegation in Paragraph 74.**

75.    As a further direct and proximate result of Defendant's violation of Title VII, Plaintiff has been denied employment and placed in financial distress and have suffered a loss of earnings and benefits, and a loss of and impairment of their earning capacity and ability to work and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

**ANSWER: Defendant denies as untrue the allegation in Paragraph 75.**

76.    By failing to engage in the interactive process or offer any reasonable accommodation, Defendant's discriminatory actions were intentional and/or reckless and in violation of Title VII.

**ANSWER: Defendant denies as untrue the allegation in Paragraph 76.**

**COUNT II**
**VIOLATION OF TITLE VII, 42 U.S.C. § 2000E, ET SEQ.**
**<u>DISPARATE TREATMENT DISCRIMINATION</u>**

77.    Plaintiff restates the foregoing paragraphs as set forth fully herein.

**ANSWER: Defendant incorporates by reference its above answers as if fully stated herein.**

78.    "To assert a successful claim of religious discrimination . . . a plaintiff must either present direct evidence of discrimination, or, in the absence of direct evidence, present a prima facie case of indirect discrimination by showing (1) they

were a member of a protected class, (2) they experienced an adverse employment action (3) they were qualified for the position, and (4) they were replaced by a person outside of the protected class or were treated differently than similarly situated employees." *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007).

**ANSWER:   Paragraph 78 states a legal conclusion to which no answer is required.  To the extent an answer is required, the allegation is denied.**

79.   Plaintiff espoused religious beliefs and is therefore a member of a protected class.

**ANSWER:  Defendant denies as untrue the allegation in Paragraph 79.**

80.   Defendant directly discriminated against Plaintiff by terminating her after she stated her sincerely held religious beliefs that conflicted with Defendant's subjected standard of religiosity.

**ANSWER:  Defendant denies as untrue the allegations contained in Paragraph 80.**

81.   Defendant allowed other unvaccinated employees without Plaintiff's same religious beliefs to be exempted from Defendant's vaccine mandate policy.

**ANSWER:   Defendant admits only that employees who were unvaccinated because of their sincerely held religious beliefs were granted accommodations, regardless of their religious affiliation.  Defendant denies that Plaintiff was denied accommodation based on the content of Plaintiff's religious beliefs.**

23

82.    Defendant placed Plaintiff on unpaid suspension before ultimately terminating employment.

**ANSWER:  Upon present information and belief, Defendant admits to placing Plaintiff on unpaid leave.  Defendant denies the remaining allegations contained in Paragraph 82.**

83.    It is undisputed that Plaintiff was qualified for the position.

**ANSWER:  Defendant denies as untrue the allegation in Paragraph 83.**

84.    Plaintiff was treated differently than similarly situated employees with different religious beliefs who were allowed to continue working despite not being vaccinated.

**ANSWER:  Defendant denies as untrue the allegation contained in Paragraph 84.**

85.    Plaintiff was terminated and replaced with a person of different religious beliefs.

**ANSWER:  Defendant denies as untrue the allegation in Paragraph 85.**

86.    Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the denial of their requests and will so suffer in the future.

**ANSWER:  Defendant denies as untrue the allegations contained in Paragraph 86.**

## COUNT III
## VIOLATION OF ELCRA, MCL 37.2101, *ET SEQ.*
## DISPARATE TREATMENT AND INTENTIONAL DISCRIMINATION

87.    Plaintiff incorporates the foregoing paragraphs by reference herein.

**ANSWER:  Defendant incorporates by reference its above answers as if fully stated herein.**

88.    Plaintiff holds sincere religious beliefs that conflict with Defendant's COVID-19 vaccine mandate.

**ANSWER:  Defendant denies as untrue the allegation contained in Paragraph 88.**

89.    Plaintiff informed Defendant how these sincerely held religious beliefs conflicted with Defendant's COVID-19 vaccine mandate.

**ANSWER: Upon present information and belief Defendant admits that Plaintiff requested a religious accommodation to the COVID-19 vaccination policy.  Defendant denies the remaining allegations contained in Paragraph 89.**

90.    "To assert a successful claim of religious discrimination . . . a plaintiff must either present direct evidence of discrimination, or, in the absence of direct evidence, present a prima facie case of indirect discrimination by showing that the

employee (1) was a member of a protected class;  (2) experienced an adverse employment action; (3) was qualified for the position; and (4) was replaced by a person outside of the protected class or that the employee was treated differently than similarly situated employees." *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007).

**ANSWER: Paragraph 90 states a legal conclusion to which no answer is required.  To the extent further answer is required, denied.**

91.   Defendant directly discriminated against Plaintiff based on termination after the employee espoused sincerely held religious beliefs that conflicted with Defendant's policy.

**ANSWER:  Defendant denies as untrue the allegations contained in Paragraph 91.**

92.   Defendant allowed other unvaccinated employees without Plaintiff's same religious beliefs to be exempted from Defendant's vaccine mandate policy.

**ANSWER: Defendant admits only that employees who were unvaccinated because of their sincerely held religious beliefs were granted accommodations, regardless of their religious affiliation.  Defendant denies that Plaintiff was denied accommodation based on the content of Plaintiff's religious beliefs.**

93.   Plaintiff's sincerely held religious beliefs qualify the employee as a member of a protected class.

**ANSWER: Paragraph 93 states a legal conclusion to which no answer is required.  To the extent an answer is required, denied.**

94.   Defendant placed Plaintiff on unpaid suspension before ultimately terminating Plaintiff.

**ANSWER:  Upon present information and belief, Defendant admits to placing Plaintiff on unpaid leave.  Defendant denies the remaining allegations contained in Paragraph 94.**

95.   Plaintiff was qualified for the position.

**ANSWER:  Defendant denies as untrue the allegation in Paragraph 95.**

96.   Plaintiff was treated differently than similarly situated employees with different religious beliefs who were allowed to continue working despite being unvaccinated.

**ANSWER:  Defendant denies as untrue the allegations contained in Paragraph 96.**

97.   Plaintiff was terminated and replaced with a person of different religious beliefs.

**ANSWER:  Defendant denies as untrue the allegations contained in Paragraph 97.**

98.    Defendant also terminated Plaintiff based on Defendant's own subjective standard of religiosity, thus directly discriminating against Plaintiff's unique sincerely held spiritual beliefs.

**ANSWER:  Defendant denies as untrue the allegations contained in Paragraph 98.**

99.    EEOC Guidance states that ("[t]he definition of 'religion' under Title VII protects both traditional and nontraditional religious beliefs . . . including those that may be unfamiliar to employers.")

**ANSWER: Paragraph 99 states a legal conclusion to which no answer is required.  To the extent further answer is required, this document speaks for itself.**

100.  The law on religious discrimination states that religious beliefs need not be "acceptable, logical, consistent or comprehensible to others" and the law "leaves little room for a party to challenge the religious nature of an employee's professed beliefs."). *E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 56 (1st Cir. 2002).

**ANSWER: Paragraph 100 states a legal conclusion to which no answer is required.  To the extent further answer is required, this document speaks for itself.**

101.  Defendant defied the law when it determined that some religious beliefs of its employees were valid and while others were bogus.

**ANSWER:  Defendant denies as untrue the allegations contained in Paragraph 101.**

102.  In discovery, Plaintiff will be able to investigate which types of religious beliefs Defendant found were acceptable and which types of religious beliefs Defendant discriminated against, thereby establishing evidence probative of discriminatory intent.

**ANSWER:  Defendant denies as untrue the allegations contained in Paragraph 102.**

103.  Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the termination and will so suffer in the future.

**ANSWER: Defendant denies as untrue the allegations contained in Paragraph 103.**

## <u>PRAYER FOR RELIEF</u>

Defendant denies each and every allegation contained in Plaintiff's Prayer for Relief (including sub-paragraphs) and expressly denies that Plaintiff is entitled to any of the relief requested therein.

29

WHEREFORE, Defendant respectfully requests that this Honorable Court dismiss Plaintiff's Complaint in its entirety, with prejudice, and award to Defendant its costs and attorney fees for responding to the Complaint.

Respectfully submitted,

DICKINSON WRIGHT PLLC

By: _s/ Zachary L. Pelton_____
Scott R. Knapp (P61041)
Brandon C. Hubbard (P71085)
Nolan J. Moody (P77959)
Zachary L. Pelton (P85197)
DICKINSON WRIGHT PLLC
123 W. Allegan Street, Suite 900
Lansing, MI 48933
(517) 371-1730
sknapp@dickinsonwright.com
bhubbard@dickinsonwright.com
nmoody@dickinsonwright.com
zpelton@dickinsonwright.com

*Attorneys for Defendant*

Dated:  October 18, 2023

## <u>AFFIRMATIVE AND OTHER DEFENSES</u>

1.  Plaintiff's claims are subject to an agreement to arbitration and are not properly brought in federal court.

2.  Plaintiff's claims fail because Defendant had a legitimate, nondiscriminatory reason for any actions it took.

3.  Plaintiff's claims fail because Defendant relied on the particularized facts of Plaintiff's request for accommodation, with an honest belief in its nondiscriminatory reason for any employment decision made.

4.  Plaintiff's claims fail because Plaintiff lacks a sincerely held religious belief.

5.  Plaintiff's Title VII disparate treatment and ELCRA disparate treatment and intentional discrimination claims fail because Plaintiff was not a member of a protected class.

6.  Plaintiff's Title VII disparate treatment and ELCRA disparate treatment and intentional discrimination claims fail because Plaintiff was not qualified for her position.

7.  Plaintiff's Title VII disparate treatment and ELCRA disparate treatment and intentional discrimination claims fail because Plaintiff was not replaced by a person outside of the allegedly protected class or treated differently than similarly situated employees.

8.     The after acquired evidence rule bars and/or limits Plaintiff's damages and/or claims.

9.     Plaintiff failed to properly exhaust administrative remedies, including, but not limited to, failing to timely file a Charge with the EEOC, secure from the EEOC a notice of right to sue, and/or file within 90 days of having received a notice of right to sue.

10.     Defendant reserves the right to supplement or amend these Affirmative and Other Defenses as other affirmative defenses may become known.

Respectfully submitted,

DICKINSON WRIGHT PLLC


By: */s/ Zachary L. Pelton*
Scott R. Knapp (P61041)
Brandon C. Hubbard (P71085)
Nolan J. Moody (P77959)
Zachary L. Pelton (P85197)
DICKINSON WRIGHT PLLC
123 W. Allegan Street, Suite 900
Lansing, MI 48933
(517) 371-1730
sknapp@dickinsonwright.com
bhubbard@dickinsonwright.com
nmoody@dickinsonwright.com
zpelton@dickinsonwright.com

*Attorneys for Defendant*

## **RELIANCE ON JURY DEMAND**

Defendant relies on the Jury Demand filed by Plaintiff in this matter, but only to the extent this matter does not proceed with arbitration (and this reliance shall in no way be deemed a waiver of arbitration).

Respectfully submitted,

DICKINSON WRIGHT PLLC


By: /s/ Zachary L. Pelton
Scott R. Knapp (P61041)
Brandon C. Hubbard (P71085)
Nolan J. Moody (P77959)
Zachary L. Pelton (P85197)
DICKINSON WRIGHT PLLC
123 W. Allegan Street, Suite 900
Lansing, MI 48933
(517) 371-1730
sknapp@dickinsonwright.com
bhubbard@dickinsonwright.com
nmoody@dickinsonwright.com
zpelton@dickinsonwright.com

*Attorneys for Defendant*

Dated: October 18, 2023

## **CERTIFICATE OF SERVICE**

I certify that on October 18, 2023, I caused to be electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to all parties of record.


By: */s/ Zachary L. Pelton*
Zachary L. Pelton (P85197)