## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LISA DOMSKI,

        Plaintiff,

v.

BLUE CROSS BLUE SHIELD
OF MICHIGAN,

        Defendant.

Case No. 2:23-cv-12023

Hon. David M. Lawson

Mag. Elizabeth A. Stafford

---

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
HURWITZ LAW PLLC
*Attorney for Plaintiff*
340 Beakes St., Ste. 125
Ann Arbor, Michigan 48104
(844) 487-9489
noah@hurwitzlaw.com
grant@hurwtizlaw.com

Scott R. Knapp (P61041)
Brandon C. Hubbard (P71085)
Nolan J. Moody (P77959)
Maureen J. Moody (P85032)
DICKINSON WRIGHT PLLC
*Attorneys for Defendant*
123 W. Allegan St., Ste. 900
Lansing, Michigan 48933
(517) 371-1730
sknapp@dickinsonwright.com
bhubbard@dickinsonwright.com
nmoody@dickinsonwright.com
mmoody@dickinsonwright.com

Michelle R. Heikka (P66122)
Rudolph P. Makupson (P73646)
600 E. Lafayette Blvd., Ste. 1925
Detroit, Michigan 48266
(313) 983-2554
mheikka@bcbsm.com
rmakupson@bcbsm.com
*Attorneys for Defendant*

---

There is no other pending or resolved civil action arising out
of this transaction or occurrence alleged in the Amended Complaint.

## AMENDED COMPLAINT AND JURY DEMAND

Plaintiff Lisa Domski ("Plaintiff"), by and through her attorneys, HURWITZ LAW PLLC, states the following for her Amended Complaint against Defendant Blue Cross Blue Shield of Michigan ("Defendant").  Pursuant to Fed. R. Civ. P. 15(a)(2), Defendant provided written consent on January 19, 2024, for Plaintiff to file her Amended Complaint.

## INTRODUCTION

1.     Plaintiff submitted a religious accommodation request and apprised Defendant that her religious beliefs conflict with Defendant's mandatory COVID-19 vaccine policy.  **Ex. A**.  Plaintiff informed Defendant that her religious conviction is informed by the Christian faith and the Bible, and her religious beliefs prevent her from receiving the COVID-19 vaccine because Plaintiff cannot inject her body, the "temple of the Holy Spirit," with a vaccine that was "either developed or tested using fetal cells that originated in abortion." *Id*.  Plaintiff believes that "abortion is murder and a sin against God" because "human life begins at conception" and "the sanctity of life is precious to God." *Id*.  Therefore, Plaintiff morally and ethically opposes the COVID-19 vaccine through her Christan religious beliefs. *Id*.  Defendant denied Plaintiff religious accommodation request and claimed she did not have a "sincerely held religious belief."  Plaintiff and approximately 250 other employees who sought religious accommodation from Defendant's COVID-19 vaccine policy were

terminated on January 5, 2022.  Defendant accommodated and favored employees with different religious beliefs than Plaintiff, thereby discriminating against her.

## PARTIES AND JURISDICTION

2.      Plaintiff is an individual residing in Wyandotte, Michigan.

3.      Defendant is a domestic nonprofit organization with a principal place of business located at 600 E. Lafayette Blvd., Detroit.

4.      Plaintiff's claims arise out of Defendant's violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e and the Elliott-Larsen Civil Rights Act ("ELCRA") 28 U.S.C. § 1367.

5.      This Court has general federal question jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claim.

6.      This matter is not subject to arbitration.

7.      Venue is proper under 28 U.S.C. § 1391 because this is the judicial district where a substantial part of the events giving rise to the claims occurred.

8.      Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination alleging religious discrimination and retaliation on February 25, 2022.

## FACTUAL ALLEGATIONS

9.      Defendant employed Plaintiff from March 10, 2008, until her termination effective January 5, 2022 with her most recent position being IT Process

3

Specialist II.

## Defendant's Mandatory Vaccine Policy

10.    On or about November 1, 2021, Defendant announced a mandatory COVID-19 vaccine policy for all employees and contractors, including those working remotely.

11.    Defendant's mandatory COVID-19 vaccine policy required employees to receive at least the first dose of a two-dose vaccine by December 8, 2021, and to be fully vaccinated by January 4, 2022 (or have an approved medical or religious accommodation by that date).

12.    Employees denied accommodation were automatically placed on unpaid leave of absence until termination on January 5, 2022.

13.    Defendant's accommodation process was arbitrary and woefully inconsistent.

14.    Defendant's Director of Employee and Labor Relations, Bart Feinbaum, was responsible for deciding which employees received religious and medical accommodations to be exempt from the COVID-19 vaccine.

15.    Mr. Feinbaum told other employees in management that he doubted the validity of any religious accommodation request.

16.    Indeed, during a human resources meeting, Mr. Feinbaum indicated that after performing personal research, and without consulting any religious leaders,

4

that he believed that the three major religions (Christianity, Judaism, and Islam) all allow for vaccination against COVID-19.

17.     During the same human resources meeting, Mr. Feinbaum declared that Defendant's religious accommodation interviews would be conducted like "mini depositions."

18.     Mr. Feinbaum stated that the goal of Defendant's interview process was to pressure employees to get vaccinated against COVID-19.

19.     Defendant's management directed the employees who would be conducting the religious accommodation interviews that Defendant was not allowed to accept all religious accommodation requests.

20.     Defendant conducted a series of ambush-style interrogations with employees who submitted religious and medical accommodation requests.

21.     Defendant's employees were not informed of questions ahead of time.

22.     Attorneys for Defendant questioned employees, but employees were not allowed to be represented by legal counsel during questioning.

23.     The interviewees were told that the interviews had a maximum time of fifteen (15) minutes in duration.

24.     When employees asked questions, they were warned to just "answer the questions" or else they would be denied accommodation.

25.     The interviewees were threatened to keep their answers short and to the

point because time was "running out" and time was "limited."

26.　Defendant told interviewees that it had not reviewed their written accommodation requests.

27.　Defendant denied accommodation to interviewees with language barriers and/or difficulty answering questions due to medical conditions.

28.　Defendant asked employees the following questions:

　　a.　Do you feel like the COVID-19 vaccines were rushed?
　　b.　What do you do when you are in physical pain?
　　c.　Do you take Aspirin, Sudafed, Tums, or Tylenol?
　　d.　Do your beliefs prevent you from receiving medical treatments?
　　e.　Do you have a primary care physician?
　　f.　Has your doctor ever prescribed medication?
　　g.　What would you do if your doctor prescribed medication?
　　h.　What medication have you taken?
　　i.　Have you always followed this religious belief?
　　j.　When was the last time you received a vaccination?

29.　Employees were told that over-the-counter medications like Tylenol and Tums were developed and manufactured using stem cells.

30.　However, the over-the-counter medications referenced by Defendant were developed decades before stem cell research was conducted.

31.　Moreover, many of Defendant's employees were objecting to the COVID-19 for religious reasons that had nothing to do with stem cell research.

32.　Defendant terminated approximately 250 employees who requested a religious accommodation to the COVID-19 vaccine on January 5, 2022.

33.　Defendant incentivized employees to retire early in 2020 in order to

reduce staffing costs, but Defendant did not have to eliminate jobs in 2021 because it terminated unvaccinated employees.

34.    Defendant touted on job recruiting websites that it required COVID-19 vaccination with "no exemptions."

35.    Employees denied accommodation to the vaccine mandate were forced into the horrible position of choosing between vaccination or termination:

> Forcing individuals to choose between their faith and their livelihood imposes an obvious and substantial burden on religion . . . vaccine mandates . . . presents a crisis of conscience for many people of faith.  It forces them to choose between the two most profound obligations they will ever assume—holding true to their religious commitments and feeding and housing their children.  To many, this is the most horrifying of Hobson's choices.

*Sambrano v. United Airlines, Inc.*, 19 F.4th 839, 841 (5th Cir. 2021).

36.    Defendant terminated remote employees who remained unvaccinated despite those employees posing no discernible risk to their coworkers.

**Plaintiff's Religious Accommodation Request**

37.    Plaintiff seeks to make all decisions through faith-based discernment and prayer.

38.    Plaintiff is a member of the Catholic Church.

39.    Plaintiff submitted a religious exemption request to Defendant's mandatory COVID-19 vaccine policy.    **Ex. A**, Plaintiff's Written Religious Accommodation Request.

40.   Plaintiff's religious accommodation request states:

I am not able to receive this vaccine due to my sincerely held personal religious beliefs and the sanctity of my conscience.   I have provided reasons why this policy violates my Christian faith and why I cannot, in good conscience, take part in it.

**It is my sincere personal religious belief that human life begins at conception, that the sanctity of life is precious to God and that it is a moral sin to destroy innocent human life.**

The three **COVID vaccines were either developed or tested using fetal cells that originated in abortion**.  My religious view has always been and continues to be that **abortion is murder and a sin against God. I must consider the moral aspects of the use of all vaccines that have connection to fetal cell lines obtained from an abortion**.

As a Christian, **I live life everyday through my faith in God and the Bible, which I believe to be God's revealed and inspired Word** (2 Timothy 3:12-17).   In 1 Corinthians 6:19-20, the **Apostle Paul addresses Christians about the importance of their bodies: "Or do you not know that your body is the temple of the Holy Spirit who is in you, whom you have from God? You are not your own, for you were bought with a price.  Therefore, glorify God in your body."**  It is my utmost belief that **my body belongs to God and my sincerely held personal religious belief that God will heal my temple by living my faith and trusting in God—not man.**

These scriptures and my personal religious beliefs are a few examples of why I must honor God with my body, mind, and spirit.  I have been a Christian for many years and my beliefs are genuine and sincere.  I have done my best to live by the Bible's teachings my entire life. **I firmly**

> **believe that to go against these teachings, would be a terrible sin and distance my relationship with God.**
>
> Through the power of the prayer and the guidance of the Holy Spirit, I have prayed about how to respond to the COVID-19 vaccine requirement. The Holy Spirit has spoken to me through my heart that I must not accept the vaccine. **If I go against the guidance of the Holy Spirt I would be sinning and violating the sanctity of my conscience**.
>
> Therefore, I am requesting a religious accommodation to my sincerely held personal religious beliefs that I cannot take part in any the available COVID-19 vaccines.

41.    Plaintiff's accommodation request incorporated Christian scripture, 2 Timothy 3:12-17, to explain that Plaintiff believes in God and the Bible.

42.    Plaintiff derives her morals and conscience from Jesus Christ the Bible.

43.    Plaintiff believes that "human life begins at conception" and "the sanctity of life is precious to God."

44.    Plaintiff's accommodation request makes it clear that she believes injecting her body with the COVID-19 vaccine, which contains aborted fetal cells, is an immoral "sin" against God because "abortion is murder," and Plaintiff sincerely holds that belief with the strength of her religious views.

45.    Plaintiff informed Defendant that her Christian beliefs oppose abortion and the use of aborted fetal tissue in the COVID-19 vaccines. Plaintiff believes it is a sin to inject her body with a vaccine that was developed using aborted fetuses.

46.    Plaintiff's accommodation request cited 1 Corinthians 6:19-20 to

explain her religious belief that her body is a "temple of the Holy Spirit," and she "must honor God with [her] body."

47.    Plaintiff's religious beliefs forbid her from accepting any medical product or vaccine with knowledge that it was developed or tested using aborted fetal cell lines.

48.    Plaintiff's religious practice to refuse vaccination constitutes a moral and ethical belief in her own scheme of things that is sincerely held through her Christian faith.

49.    Plaintiff's religious beliefs therefore conflict with Defendant's employment policy requiring vaccination from COVID-19.

50.    Plaintiff's religious accommodation request did not seek to avoid other employment requirements or COVID-19 safety protocols.   Plaintiff only sought accommodation from the COVID-19 vaccine requirement.

51.    Plaintiff gave Defendant as much notice as it requested of the conflict between her religious beliefs and its vaccine requirement.

52.    Defendant interviewed Plaintiff regarding her religious beliefs.

53.    Ultimately, Defendant denied Plaintiff's religious accommodation request, claiming she did not "meet the criteria for an exemption due to a sincerely held religious belief, practice, or observance[.]"

54.    Defendant subjectively cast doubt on Plaintiff's religious beliefs.

55.     Plaintiff, maintaining her sincerely held religious beliefs, did not receive the vaccine, and was subsequently placed on unpaid leave.

56.     Plaintiff was ultimately terminated effective January 5, 2022.

57.     The religious accommodation process mandates "bilateral cooperation" between employer and employee. *Ansonia Bd. of Educ. v. Philabrook*, 479 U.S. 60, 69 (1986).

58.     No such "bilateral cooperation" occurred during Defendant's interrogation of its employees or otherwise during the process.

59.     The United States Equal Employment Opportunity Commission tells employers that a prototypical example of reasonable accommodation to the vaccine is being "given the opportunity to telework." U.S. EQUAL EMPL. OPPORTUNITY COMM'N, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (May 28, 2021). "If the employer denies the employee's proposed accommodation, the employer should explain to the employee why the preferred accommodation is not being granted." *Id*. (Mar. 1, 2022).

60.     President Daniel J. Loepp announced on or about December 7, 2021: "I want to thank all employees who are or are in the process to become fully vaccinated and encourage any employee who is not vaccinated to consider doing so."

61.     President Daniel J. Loepp told Defendant's employees in the weeks prior to the vaccination deadline that he anticipated denying accommodation

11

requests and terminating many employees.

62.    Plaintiff was an excellent performer of her job duties.

63.    Title VII's statutory definition of "religion" includes "all aspects of religious observance and practice, as well as belief."  42 U.S.C. § 2000e(j).

64.    The U.S. Equal Employment Opportunity Commission ("EEOC") advises employers to "ordinarily assume that an employee's request for religious accommodation is based on sincerely held religious belief, practice, or observance." U.S. EQUAL EMPL. OPPORTUNITY COMM'N, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (May 28, 2021).

65.    An individual's testimony about his or her belief "must be given great weight" and is enough to demonstrate sincerity. *Seeger*, 380 U.S. at 184 (1965).

66.    Plaintiff's religious conviction is highlighted by the fact she remained unvaccinated in the face of termination, losing her livelihood in the process.

**Defendant Did Not Base Its Decision on Undue Hardship,
Nor Could It Establish Undue Hardship**

67.    The prohibition against religious discrimination imposes a "duty" on employers to accommodate the sincere religious observances of employees, absent a showing of "undue hardship."  *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977).

68.    An employer does not satisfy its burden of proving undue hardship "merely by showing that an accommodation would be bothersome to administer."

*Draper v. United States Pipe & Foundry Co.*, 527 F.2d 515, 520 (6th Cir.1975).

69.   Defendant is not claiming undue hardship.

70.   Defendant cannot allege undue hardship when other employees performing similar job duties were granted religious and medical accommodations to the vaccine.

**COUNT I**
**Violation of Title VII, 42 U.S.C. § 2000e, *et seq*.**
**RELIGIOUS DISCRIMINATION – FAILURE TO ACCOMMODATE**

71.   Plaintiff restates the foregoing paragraphs as set forth fully herein.

72.   At all times relevant hereto, Plaintiff was an employee and Defendant was her employer for the purposes of 42 U.S.C. § 2000e, *et seq*.

73.   Title VII of the Civil Rights act of 1964, 42 U.S.C. § 2000e *et seq*., makes it unlawful for an employer to fail or refuse to reasonably accommodate the religious beliefs and practices of an employee or prospective employee.

74.   Title VII prohibits an employer from discriminating against an employee "because of such individual's... religion." 42 U.S.C. § 2000e-2(a)(1).

75.   This "includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that [it] is unable to reasonably accommodate an employee's... religious observance or practice without undue hardship on the conduct of the employer's business." *Id*. § 2000e(j).

76.   After receiving an accommodation request, "the employer is obligated

13

by law to engage in interactive process – a meaningful dialogue with the employee[.]" *Chevron Phillips Chem. Co.*, 570 F.3d at 621 (5th Cir. 2009).

77.     The employer must act in "good faith," *Id*., and the employee must "make a good faith attempt to satisfy his needs through means offered by the employer," *Brener v. Diagnostic Ctr. Hosp*., 671 F.2d 141, 146 (5th Cir. 1982).

78.     Title VII makes it unlawful for an employer to retaliate against an employee who engaged in protected activity.

79.     Plaintiff holds sincere *bona fide* religious beliefs that preclude her from receiving a COVID-19 vaccine.  Ex. A.

80.     Plaintiff informed Defendant of those beliefs and requested religious accommodation from the vaccine mandate.  *Id*.

81.     Defendant refused to engage in the interactive process with Plaintiff regarding her religious accommodation requests.

82.     Under Title VII, Plaintiff can establish a *prima facie* case of religious discrimination based on a failure to accommodate by showing: (1) she has a *bona fide* religious belief that conflicts with an employment requirement; (2) about which she informed the [Defendant]; and (3) she suffered an adverse employment action for failing to comply with the conflicting employment requirement. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986).

83.     Multiple accommodations could have been offered to Plaintiff.  They

include mask wearing and periodic testing for COVID-19—the very same accommodations being offered to virtually every public and private employee in the State of Michigan.

84.    A "[r]easonable accommodation is by its terms most logically construed as that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question." *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995).

85.    Defendant would not suffer undue hardship by granting Plaintiff accommodation.  42 U.S.C. § 2000e(j).

86.    The issue became moot when Defendant failed to engage each employee in "a meaningful dialogue" about the accommodation request and learn whether an acceptable accommodation would impose undue hardship. *Chevron Phillips Chem. Co.*, 570 F.3d at 621 (5th Cir. 2009).

87.    Instead, Defendant announced a one-size-fits all approach to accommodation that deprived Plaintiff of the conversation necessary to discover what accommodations were possible. *Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281, 1285 (7th Cir. 1996) ("courts should look for signs of failure to participate in good faith or failure by one of the parties to help the other party determine what specific accommodations are necessary" and "[a] party that fails to communicate... may also be acting in bad faith").

15

88.     Irrespective of the interactive process, Defendant failed to provide Plaintiff with reasonable accommodations for her religious beliefs.

89.     Defendant thereby discriminated against Plaintiff because of her religious beliefs.

90.     Defendant's failure to provide religious accommodations has harmed and will continue to harm Plaintiff.

91.     As a direct and proximate result of Defendant's violation of Title VII Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

92.     As a further direct and proximate result of Defendant's violation of Title VII, Plaintiff has been denied employment and placed in financial distress and have suffered a loss of earnings and benefits, and a loss of and impairment of their earning capacity and ability to work and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

93.     By failing to engage in the interactive process or offer any reasonable accommodation, Defendant's discriminatory actions were intentional and/or reckless and in violation of Title VII.

**COUNT II**
**Violation of Title VII, 42 U.S.C. § 2000e, *et seq*.**

## **DISPARATE TREATMENT DISCRIMINATION**

94.    Plaintiff restates the foregoing paragraphs as set forth fully herein.

95.    "To assert a successful claim of religious discrimination . . . a plaintiff must either present direct evidence of discrimination, or, in the absence of direct evidence, present a prima facie case of indirect discrimination by showing (1) they were a member of a protected class, (2) they experienced an adverse employment action (3) they were qualified for the position, and (4) they were replaced by a person outside of the protected class or were treated differently than similarly situated employees."  Tepper v. Potter, 505 F.3d 508, 515 (6th Cir. 2007).

96.    Plaintiff espoused religious beliefs and is therefore a member of a protected class.

97.    Defendant directly discriminated against Plaintiff by terminating her after she stated her sincerely held religious beliefs that conflicted with Defendant's subjected standard of religiosity.

98.    Defendant allowed other unvaccinated employees without Plaintiff's same religious beliefs to be exempted from Defendant's vaccine mandate policy.

99.    Defendant placed Plaintiff on unpaid suspension before ultimately terminating employment.

100.    It is undisputed that Plaintiff was qualified for the position.

101.    Plaintiff was treated differently than similarly situated employees with

different religious beliefs who were allowed to continue working despite not being vaccinated.

102.   Plaintiff was terminated and replaced with a person of different religious beliefs.

103.   Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the denial of their requests and will so suffer in the future.

## COUNT III
## VIOLATION OF ELCRA, MCL 37.2101, *et seq.*
## DISPARATE TREATMENT AND INTENTIONAL DISCRIMINATION

104.   Plaintiff incorporates the foregoing paragraphs by reference herein.

105.   Plaintiff holds sincere religious beliefs that conflict with Defendant's COVID-19 vaccine mandate.

106.   Plaintiff informed Defendant how these sincerely held religious beliefs conflicted with Defendant's COVID-19 vaccine mandate.

107.   "To assert a successful claim of religious discrimination . . . a plaintiff must either present direct evidence of discrimination, or, in the absence of direct evidence, present a *prima facie* case of indirect discrimination by showing that the employee (1) was a member of a protected class; (2) experienced an adverse employment action; (3) was qualified for the position; and (4) was replaced by a

person outside of the protected class or that the employee was treated differently than similarly situated employees." *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007).

108.   Defendant directly discriminated against Plaintiff based on termination after the employee espoused sincerely held religious beliefs that conflicted with Defendant's policy.

109.   Defendant allowed other unvaccinated employees without Plaintiff's same religious beliefs to be exempted from Defendant's vaccine mandate policy.

110.   Plaintiff's sincerely held religious beliefs qualify the employee as a member of a protected class.

111.   Defendant placed Plaintiff on unpaid suspension before ultimately terminating Plaintiff.

112.   Plaintiff was qualified for the position.

113.   Plaintiff was treated differently than similarly situated employees with different religious beliefs who were allowed to continue working despite being unvaccinated.

114.   Plaintiff was terminated and replaced with a person of different religious beliefs.

115.   Defendant also terminated Plaintiff based on Defendant's own subjective standard of religiosity, thus directly discriminating against Plaintiff's

unique sincerely held spiritual beliefs.

116.   EEOC Guidance states that ("[t]he definition of 'religion' under Title VII protects both traditional and nontraditional religious beliefs . . . including those that may be unfamiliar to employers.")

117.   The law on religious discrimination states that religious beliefs need not be "acceptable, logical, consistent or comprehensible to others" and the law "leaves little room for a party to challenge the religious nature of an employee's professed beliefs."). *E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 56 (1st Cir. 2002).

118.   Defendant defied the law when it determined that some religious beliefs of its employees were valid and while others were bogus.

119.   In discovery, Plaintiff will be able to investigate which types of religious beliefs Defendant found were acceptable and which types of religious beliefs Defendant discriminated against, thereby establishing evidence probative of discriminatory intent.

120.   Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the termination and will so suffer in the future.

## **<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff requests the following relief:

a.      Compensatory damages for monetary and non-monetary loss;

b.      Exemplary and punitive damages;

c.      Prejudgment interest;

d.      Attorneys' fees and costs; and

e.      Such other relief as in law or equity may pertain.

Respectfully Submitted,

HURWITZ LAW PLLC

/s/ *Noah S. Hurwitz*
Noah Hurwitz (P74063)
*Attorney for Plaintiff*
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com

Dated: January 19, 2024

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LISA DOMSKI,

        Plaintiff,                Case No. 2:23-cv-12023

v.                             Hon. David M. Lawson

BLUE CROSS BLUE SHIELD          Mag. Elizabeth A. Stafford
OF MICHIGAN,

        Defendant.

| | |
|---|---|
| Noah S. Hurwitz (P74063) | Scott R. Knapp (P61041) |
| Grant M. Vlahopoulos (P85633) | Brandon C. Hubbard (P71085) |
| HURWITZ LAW PLLC | Nolan J. Moody (P77959) |
| *Attorney for Plaintiff* | Maureen J. Moody (P85032) |
| 340 Beakes St., Ste. 125 | DICKINSON WRIGHT PLLC |
| Ann Arbor, Michigan 48104 | *Attorneys for Defendant* |
| (844) 487-9489 | 123 W. Allegan St., Ste. 900 |
| noah@hurwitzlaw.com | Lansing, Michigan 48933 |
| grant@hurwtizlaw.com | (517) 371-1730 |
| | sknapp@dickinsonwright.com |
| | bhubbard@dickinsonwright.com |
| | nmoody@dickinsonwright.com |
| | mmoody@dickinsonwright.com |
| | |
| | Michelle R. Heikka (P66122) |
| | Rudolph P. Makupson (P73646) |
| | 600 E. Lafayette Blvd., Ste. 1925 |
| | Detroit, Michigan 48266 |
| | (313) 983-2554 |
| | mheikka@bcbsm.com |
| | rmakupson@bcbsm.com |
| | *Attorneys for Defendant* |

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff, Lisa Domski, by and through her attorneys, HURWITZ LAW PLLC, hereby demands a trial by jury in the above-captioned matter for all issues triable.

Respectfully Submitted,

HURWITZ LAW PLLC

*/s/ Noah S. Hurwitz*
Noah S. Hurwitz (P74063)
*Attorney for Plaintiff*

Dated: January 19, 2024

2

Ex. A

11/10/2021

# Employee Request for Religious Accommodation to COVID-19 Vaccine

To Whom It May Concern,

I am writing to formally request a religious accommodation from Blue Cross Blue Shield of Michigan's COVID-19 vaccination requirement. I am not able to receive this vaccine due to my sincerely held personal religious beliefs and the sanctity of my conscience. I have provided reasons why this policy violates my Christian faith and why I cannot, in good conscience, take part in it.

It is my sincere personal religious belief that human life begins at conception, that the sanctity of life is precious to God and that it is a moral sin to destroy innocent human life. The three COVID vaccines were either developed or tested using fetal cells that originated in abortion. My religious view has always been and continues to be that abortion is murder and a sin against God. I must consider the moral aspects of the use of all vaccines that have connection to fetal cell lines obtained from an abortion.

As a Christian, I live life everyday through my faith in God and the Bible, which I believe to be God's revealed and inspired Word (2 Timothy 3:12-17). In 1 Corinthians 6:19-20, the Apostle Paul addresses Christians about the importance of their bodies: "Or do you not know that your body is the temple of the Holy Spirit who is in you, whom you have from God? You are not your own, for you were bought with a price. Therefore, glorify God in your body." It is my utmost belief that my body belongs to God and my sincerely held personal religious belief that God will heal my temple by living my faith and trusting in God—not man.

These scriptures and my personal religious beliefs are a few examples of why I must honor God with my body, mind, and spirit. I have been a Christian for many years and my beliefs are genuine and sincere. I have done my best to live by the Bible's teachings my entire life. I firmly believe that to go against these teachings, would be a terrible sin and distance my relationship with God.

Through the power of prayer and the guidance of the Holy Spirit, I have prayed about how to respond to the COVID-19 vaccine requirement. The Holy Spirit has spoken to me through my heart that I must not accept the vaccine. If I go against the guidance of the Holy Spirit I would be sinning and violating the sanctity of my conscience.

Therefore, I am requesting a religious accommodation to my sincerely held personal religious beliefs that I cannot take part in any of the available COVID-19 vaccines.

Respectfully,