# Exhibit 1

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF MICHIGAN**

**SOUTHERN DIVISION**

**Case No. 2:23-cv-12023**

**LISA DOMSKI,**

**Plaintiff,**

**v.**

**BLUE CROSS BLUE SHIELD OF MCIHIGAN,**

**Defendant**

**EXPERT REPORT OF JEFFREY T. BAGALIS CPA/ABV, CFF**

**July 18, 2024**



**Jeffrey Bagalis, CPA/ABV, CFF**
Direct Dial: 248-599-0351
Email: jbagalis@accuritygroup.com
280 N. Old Woodward Ave.
Suite 100
Birmingham, MI 48009
www.accuritygroup.com

**Table of Contents**

I.     Scope of Opinion and Disclosures ................................................................3
II.    Qualifications ................................................................................................4
III.   Relevant Background ....................................................................................5
IV.    Summary of Opinions ...................................................................................6
V.     Analysis of Economic Damages ...................................................................7
VI.    Assumptions and Limiting Conditions .......................................................12

DOMSKI 0002

**Exhibits**

Exhibit A…….…..……………………………………………………………Documents Considered
Exhibit B…..……………………………………………………………...…..….………Curriculum Vitae
Exhibit C…………..…………………………………………………………...............Summary of Damages
Exhibit D……………………………………..……………….…Calculation of Lost Earnings and Benefits
Exhibit E……………….…………………..…………………......…Calculation of Lost Retirement Benefits
Appendix A…………..………………………………Summary of Past and Future Economic Damages

DOMSKI 0003

## I.  Scope of Opinion and Disclosures

1.  I was retained by Lisa Domski ("Domski" or "Plaintiff") to review and analyze information and to provide expert witness testimony and opinions on economic damages.

2.  This report presents my opinions regarding the economic damages incurred by Plaintiff as a result of the allegations presented in the January 19, 2024, amended complaint against Blue Cross Blue Shield of Michigan ("Defendant").

3.  Over the course of my engagement, I and/or others working under my direction reviewed pleadings and financial records exchanged between the parties.

4.  Additionally, this report includes a listing of the documents that I and/or others at Accurity have received, reviewed, and/or considered in forming the bases for my opinions. A detailed list of the sources of information considered is presented at **Exhibit A.**

5.  Accurity Group, LLC is compensated at a rate of $425 per hour for time incurred by me. Other individuals from Accurity Group, LLC also provided assistance in this matter; their hourly rates range from $375 per hour to $185 per hour.

6.  My opinions, detailed herein, are based on the data available to me as summarized in this report. Should additional information be made available to me, I reserve the right to revise, supplement, or change my opinions set forth herein.

DOMSKI 0004

## II.  Qualifications

7.   I am the Managing Member of Accurity Group, LLC ("Accurity"), a Certified Public Accountant (CPA), Accredited in Business Valuations (ABV), and Certified in Financial Forensics (CFF) with over 20 years of experience providing a wide range of professional service.

8.   I have consulted with lawyers and their clients throughout the United States regarding economic and financial issues. A majority of my consulting assignments on dispute issues are related to the assessment and estimation of economic damages, including the preparation and evaluation of lost earnings and employment claims across a variety of industries and businesses.

9.   I received a Bachelor of Business Administration with a concentration in Accounting from the University of Michigan – Dearborn in 2000.

10.   Prior to joining Accurity, I was a Director of a national dispute consulting firm for over 14 years, providing services in the areas of Investment Banking; Valuations & Financial Opinions; and Dispute Advisory & Forensic Services.

11.   I am a member of the American Institute of Certified Public Accountants ("AICPA"), a Member of the Association of Certified Fraud Examiners ("ACFE") and a Member of the Michigan Association of Certified Public Accountants ("MACPA").

12.   With the aforementioned education, training, and experience I am well established to offer the opinions contained herein. Furthermore, as additional information is provided through the course of discovery, my qualifications enable me to offer opinions regarding the measurement of damages in the context of this matter. A copy of my curriculum vitae, which includes a list of my testimony over the past four years, written publications, and speaking engagements over the last ten years, is attached as **Exhibit B.**

4

DOMSKI 0005

## III.  Relevant Background[1]

**Relevant Parties**

13. Plaintiff Lisa Domski is an individual residing in Wyandotte, Michigan.

14. Defendant Blue Cross Blue Shield of Michigan ("BCBSM" or "Defendant") is a domestic nonprofit organization with a principal place of business located in Detroit, Michigan.

**Background of Dispute**

15. On or around November 1, 2021, Defendant announced a mandatory COVID-19 vaccine policy ("Vaccine Policy") for all employees and contractors, including those working remotely.

16. The Vaccine Policy required employees to be fully vaccinated by January 4, 2022 (or have an approved medical or religious accommodation by that date).

17. On November 10, 2021, Plaintiff submitted a religious exemption request to Defendant.

18. Defendant interviewed Plaintiff regarding her religion beliefs and denied Plaintiff's religious accommodation request.

19. Plaintiff, maintaining her sincerely held religious beliefs, did not receive the vaccine, and was subsequently placed on unpaid leave.

20. Plaintiff was ultimately terminated effective January 5, 2022.

21. As a result of the alleged wrongful conduct of Defendant, and in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e and the Elliot-Larson Civil Rights Act ("ELCRA") 28 U.S.C. § 1367, Plaintiff is seeking economic damages in the form of lost earnings, benefits, and out of pockets costs.

---

[1] Unless noted otherwise, Amended Complaint dated January 19, 2024.

DOMSKI 0006

## IV.   Summary of Opinions

22.   I was asked to prepare an analysis of economic damages incurred by the Plaintiff as a result of the alleged actions of the Defendant. At the time of alleged wrongful conduct, Plaintiff was 55 years of age and was employed by BCBSM as an IT Process Specialist. Assuming a finding of liability in favor of Plaintiff, a summary of economic damages is as follows:

| | Description | Undiscounted Amount | Present Value as of June 30, 2024 | Reference |
|---|---|---|---|---|
| 1 | Lost Earnings & Benefits | $ 1,285,417 | $ 1,081,919 | Exhibit D |
| 2 | Lost Retirement Benefits | 288,660 | 126,315 | Exhibit E |
| 3 | **Total Damages** | **$ 1,574,077** | **$ 1,208,235** | |

23.   The following sections of my report describe the documents relied upon, analyses, conclusions, and basis of my opinions.

6

**V.   Analysis of Economic Damages**

**Lost Earnings & Benefits**

24. An assessment of economic damages must consider all earnings (e.g. base salary, salary increases, bonuses, allowances) and fringe benefits Plaintiff would have expected to realize but-for the alleged actions of Defendant ("Expected Earnings").

25. In order to determine lost earnings ("Lost Earnings") due to Plaintiff, Expected Earnings are reduced by the amount of actual earnings ("Actual Earnings") recognized from January 5, 2022, the date Plaintiff was terminated from BCBSM ("Termination Date") through the remaining work/life expectancy of Plaintiff.
    ***Damages Period – Lost Earnings & Benefits***

26. For purposes of this report, I was asked to assume Plaintiff would have expected to continue employment at BCBSM until the age of 67; becoming eligible for full social security benefits.

27. As a result, the damages period to measure lost earnings and benefits is from January 5, 2022, Termination Date, through November 25, 2033, the expected retirement date ("Retirement Date") of Plaintiff, ("Damages Period").
    ***Expected Earnings – Past & Future***

28. I analyzed past and future Expected Earnings by considering historical earnings records of Plaintiff detailing base wages, bonus/incentive payments, allowances, employee benefit guides, and summaries detailing each element of compensation, earnings and benefits due to Plaintiff.

29. I determined the annual base salary ("Base Salary") of Plaintiff was $92,300 at the time Plaintiff was terminated.  Through client inquiry and review of historical wage increases, I calculated the Base Salary of Plaintiff in future years by applying a wage rate adjustment of 3% per annum beginning in 2023 through an expected Retirement Date of November 25, 2033.

30. In addition to Base Salary compensation, I understand Plaintiff was entitled to an annual incentive bonus payment equivalent to 5-7% of the prior year Base Salary.  For the purposes of this report, I utilized a rate of 6% of prior year Base Salary to determine the incentive bonus payment due, consistent with the most recent bonus incentive payment made by Defendant.

31. Moreover, I understand Plaintiff was entitled to an employer match of up to 50% of 401K contributions made by Plaintiff; up to a maximum of 5%. Based on my review of historical contributions credited to Plaintiff, I calculated a 401K employer match of 3% of Base Salary and 0.5% of incentive bonus payment.

32. As of the Termination Date, Plaintiff was participating in the Dependent Scholarship Program through BCBSM[2] and I understand was entitled to a $1,000 annual payment over the duration her daughter attends undergraduate school. Based on financial records provided for my review, Plaintiff received an annual payment beginning in 2021 and was expected to receive three additional payments for years 2022 through 2024.

---

[2] Eligibility:  Student must be enrolled as a full-time undergraduate student in an accredited Michigan college/university and must have a 3.0 GPA from prior school year. Benefit equal to $1,000 per student per year. Should additional information become available regarding eligibility, I reserve the right to update my calculation.

DOMSKI 0008

33. After consideration of the aforementioned elements of earnings and benefits, I determined the Expected Earnings due to Plaintiff are **$1,401,463** over the Damages Period**.**  Details for my analysis are attached at **Exhibit D, Schedule 1**.

### Actual Earnings – Past & Future

34. To determine Actual Earnings, I reviewed the tax returns and pay statements provided by Plaintiff through the date of this report.

35. Subsequent to termination, Plaintiff received a final PTO payout and incentive bonus payment from BCBSM, and a 401K match commensurate to the bonus payment. Additionally, Plaintiff received unemployment benefits and compensation from Henry Ford and Ward Church for part-time employment over the period May 30, 2022 through January 7, 2023. However, as of the date of this report, Plaintiff remains unemployed.

36. Subsequent to the Termination Date, Plaintiff elected to begin receiving pension annuity payments from the BCBSM NBU Retirement Plan ("Retirement Plan") effective April 1, 2024.  Based on the payment option elected by Plaintiff, monthly annuity payments of $876.30 are due over the remaining life expectancy of Plaintiff ("Actual Monthly Annuity"). [3]

37. Based on my analysis, I determined Actual Earnings from Termination Date through Retirement Date to be **$122,179.** Details are attached at **Exhibit D, Schedule 2.**

### Lost Earnings – Past & Future

38. Lost Earnings are calculated by reducing Expected Earnings by Actual Earnings over the Damages Period.

39. After deducting Actual Earnings recognized by Plaintiff from Expected Earnings, I determined Lost Earnings of **$1,279,283** from the Termination Date through Retirement Date. Details of my analysis are attached at **Exhibit D, Summary.**

### Lost Benefits – Past & Future

40. In addition to Lost Earnings, it is necessary to consider any lost fringe benefits ("Lost Benefits") incurred by the Plaintiff but-for the alleged wrongful conduct of Defendant.

41. In order to measure Lost Benefits, I analyzed actual benefits received by Plaintiff *prior* to the period of any alleged wrongful conduct and compared the benefits Plaintiff received *after* the alleged wrongful conduct as a reduction from Lost Benefits, Past and Future.

42. It is my understanding Plaintiff was entitled to a company-paid life insurance policy through BCBSM, for an amount equal to two (2) times her Base Salary.

43. Subsequent to the Termination Date, Plaintiff remains unemployed and is unable to secure any fringe benefits, including a life insurance benefit due and payable to Plaintiff had employment at BCBSM continued through an expected Retirement Date of November 25, 2033. As a result, it is necessary to consider the replacement cost of a life insurance policy which would provide the same level of benefit that Plaintiff would have received prior to the Termination Date.

---

[3] Source - Retirement statement for Plaintiff reflecting monthly lifetime annuity payments of $876.30 beginning April 1, 2024 (Plaintiff elected payment option *50% to Contingent Annuity*).

DOMSKI 0009

44. As of the date of this report, I determined a 10-year term life insurance policy for $250,000 to be a commensurate benefit, equal to two (2) times expected Base Salary for Plaintiff from Termination Date to Retirement Date.

45. Based on publicly available information, and consideration of other factors as of the Termination Date (female, 55 years of age, average health, and residence zip code 48192), I determined the cost to purchase a 10-year term life insurance policy for $250,000 to be approximately **$43** per month. [4] [5]

46. As of the date of this report, I determined the total replacement t cost of Lost Benefits to be **$6,133** over the Damages Period. Details of my calculation are attached at **Exhibit D, Summary.**

47. After consideration of the aforementioned, I determined Plaintiff incurred Lost Earnings and Benefits of **$1,285,417**, before present value. Details of my calculation are attached at **Exhibit D, Summary.**

**Lost Retirement Benefits**

48. In addition to Lost Earnings, Plaintiff incurred economic damages in the form of lost retirement benefits ("Retirement Benefits").

49. While employed with BCBSM, Plaintiff participated in the BCBSM NBU Retirement Plan.  The Blue Cross Blue Shield of Michigan Employees' Retirement Account Plan Summary Plan Description ("Plan Summary"), details how the Retirement Plan is funded and the manner in which employee account credits are determined based on adjusted W-2 wage ("Total Wages")[6] for employees hired after January 1, 2007[7]:

- 100% employer funded

- Basic credit of 3% annually

- Age credit of 1% for ages 40-44

- Age credit of 2% for ages 45 and above

- Interest credit of 4% annual minimum[8]

50. Participants in the Retirement Plan are entitled to a benefit upon retirement or otherwise terminate employment after completing a three (3) year eligibility period.

---

[4] Source:  https://www.marketwatch.com/guides/life-insurance/best-term-life-insurance/term-life-insurance-rates/
[5] Additional factors such as smoking history, family medical history, driving record and lifestyle impact premium rates for life insurance.  For purposes of this report, I conservatively estimated life insurance premiums; should additional factors need to be considered I reserve the right to update my calculation.
[6] Adjusted W-2 pay, or Total Wages is equal to base salary plus bonus. It does not include 401K match or other allowances such as Dependent Scholarship Program.
[7] Plaintiff date of hire is March 10, 2008 (Source – Amended Complaint).
[8] Greater of 4% or the return on a one-year Treasury bill interest rate as of August of the preceding year, as published by Federal Reserve Board.

DOMSKI 0010

### *But-For Interest and Basic/Age Credits*

51. But-for the alleged wrongful conduct of Defendant, Plaintiff would not have elected to begin receiving pension annuity payments effective April 1, 2024. Instead, Plaintiff would have deferred retirement benefits until an anticipated Retirement Date of November 25, 2033.

52. As such, I calculated the but-for interest credit ("But-For Interest Credits") which would have accumulated and been credited to the Retirement Plan cash balance ("Retirement Balance") from the Termination Date through an expected Retirement Date of **$80,693** (excluding But-For Interest Credits of expected Total Wages which is calculated separately) .[9] Details of my calculation can be found at **Exhibit E, Schedule 2.**

53. In addition, I calculated the but-for basic and age credits ("But-For Basic/Age Credits") Plaintiff would have expected Defendant to contribute to the Retirement Balance based on expected Total Wages and the But-For Interest Credits commensurate with expected Total Wages over the Damages Period of **$88,475**.

54. With the inclusion of But-for Interest Credits and But-For Basic/Age Credits, the Retirement Balance as of November 25, 2033, is expected to be **$313,413** ("Expected Retirement Balance"). Details of my calculation are attached at **Exhibit E, Schedules 2 and 3.**

### *Expected Monthly Annuity Payments*

55. After consideration of But-for Interest and Basic/Age Credits, I also determined the expected Retirement Plan monthly annuity payment ("Expected Monthly Annuity") due to the Plaintiff over the estimated remaining lifetime of Plaintiff. Based on life expectancy tables published by the National Center for Health Statistics on November 7, 2023, I determined the life expectancy for Plaintiff to be 83.1 years of age, or December 31, 2049[10].

56. I examined the Actual Monthly Annuity payable to Plaintiff effective April 1, 2024 **($876**[11]), relative to the actual Retirement Balance as of March 31, 2024 **($151,622**[12]). Based on a life expectancy of 83.1 years, I determined an implied discount rate of **5.0%** to determine the Actual Monthly Annuity payment.

57. Assuming a life expectancy of 83.1 years of age, discount rate of 5.0%, and Expected Retirement Balance of **$313,413** as of the Retirement Date, I determined the Expected Monthly Annuity payable to Plaintiff effective December 1, 2033 (first day of the month following retirement) through an estimated life expectancy of Plaintiff of December 31, 2049 to be **$2,372** per month. Details of my analysis are attached at **Exhibit E, Schedule 1**.

58. To calculate Lost Retirement Benefits, I deducted the Actual Monthly Annuity from the Expected Monthly Annuity over the period of December 1, 2033 through an estimated life expectancy date of December 31, 2049 and determined Lost Retirement Benefits of be **$288,660**. Details of my calculation can be found at **Exhibit E, Summary**.

---

[9] Accurity is unable to determine Retirement Plan cash balance as of Termination Date; Therefore, Accurity utilized a report dated February 1, 2023, which identified the Retirement Plan cash balance for Plaintiff to be $144,244. Accurity calculated the interest credit from February 1, 2023, through Retirement Date, (November 25, 2033).

[10] Based on Plaintiff's age as of Termination Date. Source - National Vital Statistics Reports, Vol. 72, No 12, November 7, 2023 (Table 18 – White, Non-Hispanic Females in United States)

[11] Source - Retirement statement for Plaintiff reflecting monthly lifetime annuity payments of $876.30 beginning April 1, 2024.

[12] See Exhibit E, Schedule 2 for calculation.

DOMSKI 0011

**Application of Present Value**

59. After determining Lost Earnings and Lost Benefits, and Lost Retirement Benefits, it is necessary to discount to present value as of the date of this report The application of present value refers to the concept that a dollar received today is worth more than the right to receive a dollar in the future. In addition, present value application accounts for future uncertainty.

60. Based on MCL 600.6306, all future economic damages are to be reduced by a discount rate of 5.0% per year for each year economic damages accrue. Utilizing the mid period convention, compounded annually, the present value of Plaintiff's Lost Earnings and Benefits and Lost Retirement Benefits as of June 30, 2024, is **$1,081,919** and **$126,315**, respectively. Details of my analysis are presented in **Exhibit C**.

11

## VI.   Assumptions and Limiting Conditions

61. My conclusions are based on the information received to date. I reserve the right to change those conclusions should additional information be provided subsequent to the date of this report.

62. No one that worked on this engagement has any known financial interest in any parties to this litigation or the outcome of the analysis. Further, compensation is neither based nor contingent on the results of the analysis.

63. My conclusions are applicable for the stated date and purpose only and may not be appropriate for any other date or purpose. This report is solely for use in the cited dispute, for the purpose stated herein, and is not to be referred to or distributed, in whole or in part, without prior written consent.

Submitted By:

Jeffrey T. Bagalis CPA/ABV, CFF
Accurity Group, LLC

DOMSKI 0013

# EXHIBIT A
# Document Index

DOMSKI 0014

**Lisa Domski v Blue Cross Blue Shield of Michigan**                                          **Exhibit A**
**Documents Considered**

1  2019 Lisa Domski Tax Return
2  2020 Lisa Domski Tax Return
3  2021 Lisa Domski Tax Return
4  2022 Lisa Domski Tax Return
5  2023 Lisa Domski Tax Return
6  2021 BCBSM W-2
7  2022 BCBSM W-2
8  2022 W2 - Henry Ford-Ward Church
9  2023 W-2 (Ward Church)
10  L. Domski Cover Letter.pdf
11  2022 L. Domski Resume.pdf
12  2023 L. Domski Resume.pdf
13  2023 L. Domski_Cover Letter.pdf
14  2023 L. Domski-Cover Letter.pdf
15  Fw_ Interview details from General RV.pdf
16  Fw_ Operations Coordinator- Ryder.pdf
17  Fw_ Part Time Administrative Assistant.pdf
18  Fw_ Part-time Elementary Secretary.pdf
19  Fw_ Teachers Aide position.pdf
20  L. Domski Cover Letter-Grosse Ile.docx
21  L. Domski Resume.docx
22  L. Domski_Cover Letter-John Paul.docx
23  L. Domski-Cover Letter-All Saints.docx
24  Ward Church-offer email.jpeg
25  Employment emails-H4H_Henry Ford_Ward Church.docx
26  Fw_ Elementary Secretary-Grosse Ile.eml
27  Fw_ Interview details- General RV.eml
28  Fw_ Operations Coordinator- Ryder.eml
29  Fw_ Part Time Admin Assistant-All Saints.eml
30  Fw_ Teacher's Aide position-John Paul II.eml
31  Global Outreach Admin 2022-10-18.docx
32  Habitat for Humanity-rejection.jpeg
33  John Paul II-rejection.jpeg
34  **Pay Statements:**
35    Ward Church pay stub 5.pdf

DOMSKI 0015

**Lisa Domski v Blue Cross Blue Shield of Michigan**                    **Exhibit A**
**Documents Considered**

36   2022 Unemployment pay.pdf
37   henry ford- 6.13-6.26_pay.jpg
38   henry ford--5.30-6.12_pay.jpg
39   henry ford-6.27-7.10_pay.jpg
40   henry ford-7.11-7.24_pay.jpg
41   Statement for Apr 7, 2022.pdf
42   Statement for Apr 8, 2021.pdf
43   Statement for Apr 22, 2021.pdf
44   Statement for Aug 12, 2021.pdf
45   Statement for Aug 26, 2021.pdf
46   Statement for Dec 2, 2021.pdf
47   Statement for Dec 16, 2021.pdf
48   Statement for Dec 29, 2021.pdf
49   Statement for Feb 11, 2021.pdf
50   Statement for Feb 25, 2021.pdf
51   Statement for Jan 13, 2022.pdf
52   Statement for Jan 14, 2021.pdf
53   Statement for Jan 28, 2021.pdf
54   Statement for Jul 1, 2021.pdf
55   Statement for Jul 15, 2021.pdf
56   Statement for Jul 29, 2021.pdf
57   Statement for Jun 3, 2021.pdf
58   Statement for Jun 17, 2021.pdf
59   Statement for Mar 11, 2021.pdf
60   Statement for Mar 25, 2021.pdf
61   Statement for May 6, 2021.pdf
62   Statement for May 20, 2021.pdf
63   Statement for Nov 4, 2021.pdf
64   Statement for Nov 18, 2021.pdf
65   Statement for Oct 7, 2021.pdf
66   Statement for Oct 21, 2021.pdf
67   Statement for Sep 9, 2021.pdf
68   Statement for Sep 23, 2021.pdf
69   Ward Church pay stub 1.pdf
70   Ward Church pay stub 2.pdf

DOMSKI 0016

**Lisa Domski v Blue Cross Blue Shield of Michigan**  **Exhibit A**
**Documents Considered**

71   Ward Church pay stub 3.pdf
72   Ward Church pay stub 4.pdf
73  Verification of income-pension.png
74  401K Employee and Employer Contributions.docx
75  BCBSM pension statement.pdf
76  Compensation 1.heic
77  Compensation 2.heic
78  Compensation 3.heic
79  Compensation 4.heic
80  Compensation 5.heic
81  Feb 2023 pension detail.msg
82  Pension payment options_Domski1.PNG
83  Pension payment options_Domski2.PNG
84  Retirement Account_Summary Plan Description.pdf
85  Retirement Account_Summary Plan Description
86  2024.01.19 Doc 18- AMENDED COMPLAINT with Jury Demand
87  Vital statistics report CDC_life expectancy
88  HistoricalPrices- 1 year T Bill
89  The Retirement Account Plan for NBU Employees at a Glance.pdf
90  2022 BCBSM NBU Healthcare Plan Booklet.pdf
91  SPD NBU Retiree Medical.pdf
92  SPD Retiree Health Reimbursement Arrangement HRA.pdf
93  https://www.marketwatch.com/guides/life-insurance/best-term-life-insurance/term-life-insurance-rates/

DOMSKI 0017

# EXHIBIT B
# Curriculum Vitae

DOMSKI 0018



# JEFFREY BAGALIS, CPA/ABV, CFF
## MANAGING DIRECTOR

 280 N Old Woodward Ave, Suite 100
Birmingham, MI 48009

 Office:   (248) 599-0351
Mobile:  (248) 470-0799

 jbagalis@accuritygroup.com

 accuritygroup.com

### EDUCATION
B.B.A., Accounting
University of Michigan - Dearborn

### DESIGNATIONS
Certified Public Accountant Accredited in Business Valuation (CPA/ABV)

Certified Public Accountant Certified in Financial Forensics (CFF)

### PRACTICE AREAS
Complex Business Litigation
Labor & Employment Disputes
Intellectual Property Disputes
Shareholder Disputes
Trade Secrets & Restrictive Covenants
Transaction Disputes

### INDUSTRY FOCUS
Automotive
Consumer, Retail, Food & Beverage
Financials
Healthcare & Life Sciences
Technology
Media & Telecommunications

### PROFESSIONAL MEMBERSHIPS
Michigan Association of Certified Public Accountants
American Institute of Certified Public Accountants
Fellow of the Oakland County Bar Foundation
Treasurer for the Society of Automotive Analysts

Jeffrey Bagalis is a Managing Director of Accurity Group. He has extensive litigation consulting experience, including breach of contract and tort actions related to financial reporting fraud, professional malpractice, automotive industry OEM and supplier claims, business interruption claims, post-acquisition disputes, trade secret disputes, shareholder disputes, employment and labor disputes, probate, and insurance claims.

Mr. Bagalis has significant expertise in financial and forensic accounting. He has assisted clients with fact finding and discovery assistance, lost profit calculations, business valuations, lost earnings and wages computations, and other financial analyses related to trade secret and restrictive covenant claims. Mr. Bagalis has presented before the Department of Justice, boards of directors, and various regulatory agencies as a financial expert or as an independent financial monitor related to financial reporting fraud, accounting issues and forensic audits as well as compliance related issues involving design and implementation of financial and operational controls.

## EXPERIENCE

Prior to joining Accurity Group, Mr. Bagalis was a director with Stout (formerly SRR), a national valuation and consulting firm, in their Dispute Consulting practice. His background also includes auditing financial and operational Sarbanes Oxley implementations as well as compliance and control testing within manufacturing industries in his capacity as an auditor at Arthur Andersen, Ernst & Young and as a co-founder of an internal audit co-sourcing firm. As a leading expert in the field, Mr. Bagalis has also presented continuing education seminars on forensic accounting and fraud. Mr. Bagalis's experience as a testifying expert witness encompasses a wide range of industries and engagements including manufacturing, automotive, financial institutions, life sciences, professional practices, retail, software, real estate, food manufacturing, agriculture, physician & professional practices, private equity funds and energy.

DOMSKI 0019

**JEFFREY BAGALIS, CPA/ABV, CFF**
**MANAGING DIRECTOR**

## TESTIMONY EXPERIENCE

- Hensel v. Hensel, Circuit Court for the County of Wayne, Michigan, March 2024

- Morasso v. Local 636 of the United Association of Journeymen and Joint Apprenticeship Committee of Pipefitters Local No. 636 of the United Association of Journeymen, United States District Court, Eastern District of Michigan, Southern Division, March 2024

- Franco Parodi, M..D. v. Ravinder Gandhi, M.D. and Ravinder Gandhi, M.D. P.C. Circuit Court for the County of Wayne, Michigan, December 2023

- Broadnax v. Broadnax, Circuit Court for the County Wayne, Michigan, Arbitration November 2023

- Foundation for Behavioral Resources v. W.E. Upjohn Unemployment Trustee Corporation et al., Circuit Court For the County of Kalamazoo, Michigan, November 2023

- Wave Investment, LLC v. SecurCapital Corp et al., Superior Court of the State of California, Central District, October 2023

- Terry Langston v. Center for Family Health, United States District Court for the Eastern District of Michigan, October 2023

- Al-Mawiri vs. Mawiri, Circuit Court for the County of Wayne, Michigan, September 2023

- Sizzling Black Rock Steak House Franchising Inc. v. Harold L. Kestenbaum, P.C., and Harold L. Kestenbaum. United States District Court of Michigan Southern Division, August 2023

- West Virginia Automobile and Truck Dealers' Association, Thornhill Auto Group, Inc., Moses Ford, Inc., Astorg Ford of Parkersburg, Inc. United States District Court Southern District of West Virginia, July 2023

- Full Tilt Boogie, LLC, v. Kep Fortune, LLC. United States District Court for the Central District of California March 2023

- Camino Village, LLC., v. Red Fit, LLC, Josh Epstein, Sarah Epstein, Hayden Epstein, Melissa Epstein, et al., Superior Court of the County  of San Diego, California September 2022

- Camino Village, LLC., v. Red Fit, LLC, Josh Epstein, Sarah Epstein, Hayden Epstein, Melissa Epstein, et al., Superior Court of the County  of San Diego, California September 2022

- Case Management Consultants, LLC and CMC Holding Company, LLC v. McLaren Healthcare Corporation, Circuit Court of Genessee County, Michigan, September 2022

- Pancho's Food Mart, Inc. v. Primeone Insurance Company, United States District Court, Eastern District of Michigan, - Eastern Division, August 2022

- Best Value Auto Parts Distributors, Inc. v. Quality Collision Parts, Inc., Nathir Hermez, and Jose Ojeda, United States District Court,  Eastern District of Michigan - Southern Division, August 2022

- PulsePoint, Inc. v. Thomas Shae and Doceree, Inc. JAMS Arbitration, May 2022

- Colliers International USA, LLC, and ParaCom, LLC v. Advantage Commercial Real Estate LLC, American Arbitration Association, January 2022

**JEFFREY BAGALIS, CPA/ABV, CFF**
**MANAGING DIRECTOR**

## TESTIMONY EXPERIENCE

- Carol J. Werthmann v. B.S.T. LTD, Metroline Inc., and Metroline Aviation, LLC, Circuit Court for the County of Oakland, Michigan, March  2022

- Dianna Hilgendorf v. Patricia LaBarge, Lynette LeBarge, David McLean, Mahmoud Zaki, John Earl, and Cooper Commercial Group, Ltd., Circuit Court for the County of Genesee December 2020

- Lloyd E. Schultz, LLC, v. Sterling Mortgage & Investment Co., and the Estate of Maurice Janowicz, Circuit Court for the County of Macomb, Michigan, November 2020

- Stryker Sales Corporation v. Balt USA, LLC, Jason Downing, and James Phelps, United States District Court, Western District of Michigan – Southern Division, January 2020

- Lucerne International, Inc., v. Dura Automotive Systems, LLC, Milan Metal Systems, LLC, and Asia Forging Supply Co., Ltd., Circuit Court  for the County of Wayne, Michigan, July 2020

- Block Communications, Inc. and BCI Mississippi Broadband, LLC d/b/a MaxxSouth Broadband v. Moorgate Capital Partners, LLC and Moorgate Securities, LLC and LMC Southeast Capital Partners, LLC, United States District Court, Northern District of Ohio - Western Division, May 2019

- Peter M. Peer D.O. v. West Shore Medical Center et al., United States District Court, Western District of Michigan, 2018

- Thomas Mackley v. D-M Tool & Fab., et al., Circuit Court for the County of Macomb, Michigan 2018

- Robert Near, Karen Near, The Robert R. Near Revocable Living Trust UAD 10/12/89, Purushottam Deo, and Emerson Properties Corporation, vs. CTI and Associates, Inc., et al., Circuit Court for the County of Livingston, Michigan 2017

- Family Wireless #1, LLC, et al., v. Automotive Technologies, Inc., United States District Court, District of Connecticut New Haven, 2016

- David C. Brown Funeral Home, Inc. v. Federated Mutual Insurance Company, Federated Service Insurance Company and Brandon Van Tiem, Circuit Court for the County of Wayne, Michigan, 2015

- Arcadia Health Services, Inc. v. Charles Symes II and Health Care Partners, Inc., Circuit Court for the County of Oakland, Michigan 2015

- Reichenbach v. Reichenbach, Circuit Court for the County of Clinton, Michigan 2014

- Mehl v. Mehl, Circuit Court for the County of Wayne, Michigan 2014

- Mashni v. Mashni, Circuit Court for the County of Wayne, Michigan 2013

## SPEECHES AND SEMINARS

- "Protecting Business Assets 2018" - Webinar: Co-presented with James Giszczak and Timothy Lowe of McDonald Hopkins, March 13, 2018

- "Financial Statement Fraud – Case Studies", presented to Michigan Association of Certified Public Accountants, December 12, 2013

- "Financial Statement Fraud – Case Studies", presented to Michigan Association of Certified Public Accountants, October 29, 2013

- "Financial Statement Fraud – Case Studies" presented to the Michigan Association of Certified Public Accountants, June 24, 2010

- "What is Your Fraud IQ" presented to the Michigan Association of Certified Public Accountants, May 16, 2013

- "Fraud and Forensic Accounting", presented to Institute of Management Accountants – Eastern Michigan University Chapter, April 4, 2013

EXHIBIT C
Summary of
Damages

DOMSKI 0023

**Lisa Domski v Blue Cross Blue Shield of Michigan**  
**Summary of Damages**  
**For the Period January 5, 2022 through December 31, 2049**

**Exhibit C**  
**Summary**

| | Description | | Undiscounted Amount | | Present Value as of June 30, 2024 | Reference |
|---|---|---|---|---|---|---|
| 1 | Lost Earnings & Benefits | $ | 1,285,417 | $ | 1,081,919 | Exhibit D |
| 2 | Lost Retirement Benefits | | 288,660 | | 126,315 | Exhibit E |
| 3 | **Total Damages** | **$** | **1,574,077** | **$** | **1,208,235** | |

DOMSKI 0024

# EXHIBIT D
# Calculation of Lost Earnings and Benefits

DOMSKI 0025

**Lisa Domski v Blue Cross Blue Shield of Michigan**      **Exhibit D**
**Calculation of Lost Earnings & Benefits**      **Summary**
**For the Period January 5, 2022 through November 25, 2033**

| | Start Date | End Date | Expected<br>Expected<br>Earnings [a] | Actual<br>Actual<br>Earnings [b] | Difference<br><br>Lost Earnings | Lost Benefit -<br>Life Insurance<br>[c] | Lost<br>Earnings &<br>Benefits | PV<br>Factor [d] | Present<br>Value |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 1/5/2022 | 12/31/2022 | $ 100,903 | $ 19,663 | $ 81,240 | $ 510 | $ 81,750 | 1.102 | $ 90,080 |
| 2 | 1/1/2023 | 12/31/2023 | 103,723 | 865 | 102,858 | 516 | 103,374 | 1.050 | 108,514 |
| 3 | 1/1/2024 | 6/30/2024 | 55,592 | 2,629 | 52,963 | 257 | 53,219 | 1.012 | 53,872 |
| 4 | 7/1/2024 | 12/31/2024 | 50,869 | 5,258 | 45,611 | 258 | 45,869 | 0.988 | 45,313 |
| 5 | 1/1/2025 | 12/31/2025 | 108,607 | 10,516 | 98,092 | 516 | 98,608 | 0.952 | 93,887 |
| 6 | 1/1/2026 | 12/31/2026 | 111,866 | 10,516 | 101,350 | 516 | 101,866 | 0.907 | 92,370 |
| 7 | 1/1/2027 | 12/31/2027 | 115,221 | 10,516 | 104,706 | 516 | 105,222 | 0.864 | 90,870 |
| 8 | 1/1/2028 | 12/31/2028 | 118,678 | 10,516 | 108,163 | 516 | 108,679 | 0.823 | 89,398 |
| 9 | 1/1/2029 | 12/31/2029 | 122,238 | 10,516 | 111,723 | 516 | 112,239 | 0.783 | 87,918 |
| 10 | 1/1/2030 | 12/31/2030 | 125,906 | 10,516 | 115,390 | 516 | 115,906 | 0.746 | 86,467 |
| 11 | 1/1/2031 | 12/31/2031 | 129,683 | 10,516 | 119,167 | 516 | 119,683 | 0.710 | 85,034 |
| 12 | 1/1/2032 | 12/31/2032 | 133,573 | 10,516 | 123,058 | 516 | 123,574 | 0.677 | 83,628 |
| 13 | 1/1/2033 | 11/25/2033 | 124,603 | 9,639 | 114,964 | 464 | 115,428 | 0.646 | 74,568 |
| 14 | Total | | $ 1,401,463 | $ 122,179 | $ 1,279,283 | $ 6,133 | $ 1,285,417 | | $ 1,081,919 |

[a]  Source: Exhibit D, Schedule 1.

[b]  Source: Exhibit D, Schedule 2.

[c]  Represents the cost to replace lost benefit provided by BCBSM for life insurance at a level equal to 2x base salary.  Calculated based on monthly premium of $43 for a 10 year term life policy for $250,000 (Source:  https://www.marketwatch.com/guides/life-insurance/best-term-life-insurance/term-life-insurance-rates/ (Assumptions: 55 year old female in average health and zip code 48192).

[d]  Present value calculated as of June 30, 2024 at a discount rate of 5% (MCL 600.6306), utilizing the mid-period convention.

**Lisa Domski v Blue Cross Blue Shield of Michigan**  **Exhibit D**
**Calculation of Expected Earnings**  **Schedule 1**
**For the Period January 5, 2022 through November 25, 2033**

| | Age | Start | End | | BCBS - Salary [c] | BCBS - Bonus [c] | Total Wages | BCBS Retirement - Match [d] | Dependent Scholarship Program [e] | Total Compensation |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 56.1 | 1/5/2022 | 12/31/2022 | [a] | $ 91,274 | $ 5,861 | $ 97,135 | $ 2,768 | $ 1,000 | $ 100,903 |
| 2 | 57.1 | 1/1/2023 | 12/31/2023 | | 94,013 | 5,861 | 99,874 | 2,850 | 1,000 | 103,723 |
| 3 | 57.6 | 1/1/2024 | 6/30/2024 | | 48,148 | 5,970 | 54,117 | 1,474 | | 55,592 |
| 4 | 58.1 | 7/1/2024 | 12/31/2024 | | 48,417 | - | 48,417 | 1,452 | 1,000 | 50,869 |
| 5 | 59.1 | 1/1/2025 | 12/31/2025 | | 99,461 | 6,132 | 105,593 | 3,014 | | 108,607 |
| 6 | 60.1 | 1/1/2026 | 12/31/2026 | | 102,445 | 6,316 | 108,761 | 3,105 | | 111,866 |
| 7 | 61.1 | 1/1/2027 | 12/31/2027 | | 105,518 | 6,505 | 112,023 | 3,198 | | 115,221 |
| 8 | 62.1 | 1/1/2028 | 12/31/2028 | | 108,684 | 6,700 | 115,384 | 3,294 | | 118,678 |
| 9 | 63.1 | 1/1/2029 | 12/31/2029 | | 111,944 | 6,901 | 118,846 | 3,393 | | 122,238 |
| 10 | 64.1 | 1/1/2030 | 12/31/2030 | | 115,303 | 7,108 | 122,411 | 3,495 | | 125,906 |
| 11 | 65.1 | 1/1/2031 | 12/31/2031 | | 118,762 | 7,322 | 126,083 | 3,599 | | 129,683 |
| 12 | 66.1 | 1/1/2032 | 12/31/2032 | | 122,324 | 7,541 | 129,866 | 3,707 | | 133,573 |
| 13 | 67.0 | 1/1/2033 | 11/25/2033 | [b] | 113,395 | 7,768 | 121,162 | 3,441 | | 124,603 |
| 14 | **Total** | | | | $ 1,279,687 | $ 79,986 | $ 1,359,672 | $ 38,791 | $ 3,000 | $ 1,401,463 |

[a] Start date is based on the date Plaintiff terminated from BCBSM.

[b] End date based on Plaintiff's expected retirement age (full social security benefits - age 67).

[c] Source: 2022 BCBSM pay statement for Plaintiff; wages calculated to increase at 3% per annum and Bonus calculated at 6% of prior year annual salary based on historical earnings and client inquiry (2024 based on actual bonus from pay statement). Bonuses paid around end of Q1 annually.

[d] Match calculated at 3% of salary and 0.5% of bonus based on a review of historical earnings and Plaintiff's historical contribution rate of 6% of salary and 1% of bonus.

[e] In 2021 Plaintiff began participating in BCBSM Dependent Scholarship Program for her college student daughter ($1,000/year/student). Plaintiff expects to receive payment for 2022 through 2024 while daughter attends college. 2021 allowance paid in Q42021.

DOMSKI 0027

**Lisa Domski v Blue Cross Blue Shield of Michigan**  **Exhibit D**
**Calculation of Actual Earnings**  **Schedule 2**
**For the Period January 5, 2022 through November 25, 2033**

| | Age | | Start | End | | BCBS - PTO Payout [b] | BCBS - Bonus [b] | Unemployment [c] | Henry Ford [c] | Ward Church [c] | Total Wages | BCBS Retirement - Match [d] | Retirement Income [e] | Total Compensation |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 56.1 | [a] | 1/5/2022 | 12/31/2022 | | $ 737 | $ 5,861 | $ 7,240 | $ 1,560 | $ 4,237 | $ 19,634 | $ 29 | $ - | $ 19,663 |
| 2 | 57.1 | | 1/1/2023 | 12/31/2023 | | - | - | - | - | 865 | 865 | - | - | 865 |
| 3 | 57.6 | | 1/1/2024 | 6/30/2024 | | - | | - | - | - | - | - | 2,629 | 2,629 |
| 4 | 58.1 | | 7/1/2024 | 12/31/2024 | | - | | - | - | - | - | - | 5,258 | 5,258 |
| 5 | 59.1 | | 1/1/2025 | 12/31/2025 | | - | - | - | - | - | - | - | 10,516 | 10,516 |
| 6 | 60.1 | | 1/1/2026 | 12/31/2026 | | - | - | - | - | - | - | - | 10,516 | 10,516 |
| 7 | 61.1 | | 1/1/2027 | 12/31/2027 | | - | - | - | - | - | - | - | 10,516 | 10,516 |
| 8 | 62.1 | | 1/1/2028 | 12/31/2028 | | - | - | - | - | - | - | - | 10,516 | 10,516 |
| 9 | 63.1 | | 1/1/2029 | 12/31/2029 | | - | - | - | - | - | - | - | 10,516 | 10,516 |
| 10 | 64.1 | | 1/1/2030 | 12/31/2030 | | - | - | - | - | - | - | - | 10,516 | 10,516 |
| 11 | 65.1 | | 1/1/2031 | 12/31/2031 | | - | - | - | - | - | - | - | 10,516 | 10,516 |
| 12 | 66.1 | | 1/1/2032 | 12/31/2032 | | - | - | - | - | - | - | - | 10,516 | 10,516 |
| 13 | 67.0 | | 1/1/2033 | 11/25/2033 | [f] | - | - | - | - | - | - | - | 9,639 | 9,639 |
| 14 | **Total** | | | | | $ 737 | $ 5,861 | $ 7,240 | $ 1,560 | $ 5,102 | $ 20,499 | $ 29 | $ 101,651 | $ 122,179 |

[a]  Start date is based on the date Plaintiff terminated from BCBSM.

[b]  Source: 2022 BCBSM paystubs and BCBSM W-2 for Plaintiff (represents PTO payout).

[c]  Source: 2022 Tax Return for Plaintiff and Forms 1099 and W-2s

[d]  Calculated at 0.5% match.  Source: 2022 BCBSM paystub for Plaintiff reflecting a 1% contribution rate for Plaintiff on incentive pay.  BCBSM match is 50% of employee contribution, up to 5%.

[e]  Source: Pension statement for Plaintiff reflecting monthly lifetime annuity payments of $876.30 beginning April 1, 2024

[f]  End date based on Plaintiff's eligibility for full social security income (age 67) - expected retirement.

DOMSKI 0028

# EXHIBIT E
# Calculation of Lost Retirement Benefits

DOMSKI 0029

**Lisa Domski v Blue Cross Blue Shield of Michigan**
**Calculation of Lost Retirement Benefits**
**For the Period December 1, 2033 through December 31, 2049**

**Exhibit E**
**Summary**

| | Age at Year End | | Start Date | End Date | | Years | Expected Retirement Benefits [c] | Actual Retirement Benefits [d] | Lost Retirement Benefits | PV Factor [e] | Present Value |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 68.0 | [a] | 12/1/2033 | 11/30/2034 | | 1.0 | $ 28,463 | $ 10,516 | $ 17,948 | 0.616 | $ 11,062 |
| 2 | 69.0 | | 12/1/2034 | 11/30/2035 | | 2.0 | 28,463 | 10,516 | 17,948 | 0.587 | 10,535 |
| 3 | 70.0 | | 12/1/2035 | 11/30/2036 | | 3.0 | 28,463 | 10,516 | 17,948 | 0.559 | 10,035 |
| 4 | 71.0 | | 12/1/2036 | 11/30/2037 | | 4.0 | 28,463 | 10,516 | 17,948 | 0.532 | 9,556 |
| 5 | 72.0 | | 12/1/2037 | 11/30/2038 | | 5.0 | 28,463 | 10,516 | 17,948 | 0.507 | 9,101 |
| 6 | 73.0 | | 12/1/2038 | 11/30/2039 | | 6.0 | 28,463 | 10,516 | 17,948 | 0.483 | 8,667 |
| 7 | 74.0 | | 12/1/2039 | 11/30/2040 | | 7.0 | 28,463 | 10,516 | 17,948 | 0.460 | 8,256 |
| 8 | 75.0 | | 12/1/2040 | 11/30/2041 | | 8.0 | 28,463 | 10,516 | 17,948 | 0.438 | 7,861 |
| 9 | 76.0 | | 12/1/2041 | 11/30/2042 | | 9.0 | 28,463 | 10,516 | 17,948 | 0.417 | 7,487 |
| 10 | 77.0 | | 12/1/2042 | 11/30/2043 | | 10.0 | 28,463 | 10,516 | 17,948 | 0.397 | 7,131 |
| 11 | 78.0 | | 12/1/2043 | 11/30/2044 | | 11.0 | 28,463 | 10,516 | 17,948 | 0.378 | 6,792 |
| 12 | 79.0 | | 12/1/2044 | 11/30/2045 | | 12.0 | 28,463 | 10,516 | 17,948 | 0.360 | 6,468 |
| 13 | 80.0 | | 12/1/2045 | 11/30/2046 | | 13.0 | 28,463 | 10,516 | 17,948 | 0.343 | 6,160 |
| 14 | 81.0 | | 12/1/2046 | 11/30/2047 | | 14.0 | 28,463 | 10,516 | 17,948 | 0.327 | 5,866 |
| 15 | 82.0 | | 12/1/2047 | 11/30/2048 | | 15.0 | 28,463 | 10,516 | 17,948 | 0.311 | 5,588 |
| 16 | 83.0 | | 12/1/2048 | 11/30/2049 | | 16.0 | 28,463 | 10,516 | 17,948 | 0.296 | 5,321 |
| 17 | 83.1 | | 12/1/2049 | 12/31/2049 | [b] | 16.1 | 2,372 | 876 | 1,496 | 0.289 | 432 |
| 18 | Total | | | | | | $ 457,786 | $ 169,126 | $ 288,660 | | $ 126,315 |

[a] Retirement payments begin on the first of the month following date of retirement. Expected Retirement = Age 67 = November 25, 2033.
[b] Calculated based on life expectancy of 83.1 years. Source: National Vital Statistics Reports, Vol. 72, No 12, November 7, 2023 (Table 18).
[c] Source: Exhibit E, Schedule 1
[d] Source: Retirement statement for Plaintiff reflecting monthly lifetime annuity payments of $876.30 beginning April 1, 2024
[e] Present value calculated as of June 30, 2024 at a discount rate of 5% (MCL 600.6306), utilizing the mid-period convention.

**Lisa Domski v Blue Cross Blue Shield of Michigan**   **Exhibit E**
**Calculation of Expected Retirement Annuity Payments**   Schedule 1
**For the Period December 1, 2033 through December 31, 2049**

**Assumptions:**

| | | |
|---|---|---|
| # of Years | 16.1 | [a] |
| # of Months | 193 | [a] |
| Pension Cash Balance 11/25/2033 | $ 313,413 | [b] |
| Implied Discount Rate | 5.0% | [c] |
| Calculated Monthly Annuity | $ 2,372 | |

| | Age at Year End | | Start Date | End Date | | Years | | Expected Retirement Benefits |
|---|---|---|---|---|---|---|---|---|
| 1 | 68.0 | [d] | 12/1/2033 | 11/30/2034 | | 1.0 | | 28,463 |
| 2 | 69.0 | | 12/1/2034 | 11/30/2035 | | 2.0 | | 28,463 |
| 3 | 70.0 | | 12/1/2035 | 11/30/2036 | | 3.0 | | 28,463 |
| 4 | 71.0 | | 12/1/2036 | 11/30/2037 | | 4.0 | | 28,463 |
| 5 | 72.0 | | 12/1/2037 | 11/30/2038 | | 5.0 | | 28,463 |
| 6 | 73.0 | | 12/1/2038 | 11/30/2039 | | 6.0 | | 28,463 |
| 7 | 74.0 | | 12/1/2039 | 11/30/2040 | | 7.0 | | 28,463 |
| 8 | 75.0 | | 12/1/2040 | 11/30/2041 | | 8.0 | | 28,463 |
| 9 | 76.0 | | 12/1/2041 | 11/30/2042 | | 9.0 | | 28,463 |
| 10 | 77.0 | | 12/1/2042 | 11/30/2043 | | 10.0 | | 28,463 |
| 11 | 78.0 | | 12/1/2043 | 11/30/2044 | | 11.0 | | 28,463 |
| 12 | 79.0 | | 12/1/2044 | 11/30/2045 | | 12.0 | | 28,463 |
| 13 | 80.0 | | 12/1/2045 | 11/30/2046 | | 13.0 | | 28,463 |
| 14 | 81.0 | | 12/1/2046 | 11/30/2047 | | 14.0 | | 28,463 |
| 15 | 82.0 | | 12/1/2047 | 11/30/2048 | | 15.0 | | 28,463 |
| 16 | 83.0 | | 12/1/2048 | 11/30/2049 | | 16.0 | | 28,463 |
| 17 | 83.1 | | 12/1/2049 | 12/31/2049 | [a] | 16.1 | | 2,372 |
| | | | | | | | | |
| 18 | **Total** | | | | | | $ | 457,786 |

[a]   Calculated based on life expectancy of 83.1 years.  Source: National Vital Statistics Reports, Vol. 72, No 12, November 7,  2023 (Table 18).

[b]   Source: Exhibit E, Schedule 2.

[c]   Implied discount rate calculated based on Plaintiff's actual annuity payment schedule ($876.30/mo), assuming life expectancy of 83.1 years and retirement cash balance of $151,622 as of March 31, 2024 (Refer to Exhibit E, Schedule 2).

[d]   Retirement payments begin on the first of the month following date of retirement.

DOMSKI 0031

**Lisa Domski v Blue Cross Blue Shield of Michigan**　　　　　　　　　　　　　　　**Exhibit E**
**Calculation of Expected Retirement Cash Balance at Retirement**　　　　　　　　　　**Schedule 2**

| | Age at Year End | | Start Date | End Date | | Interest Rate [c] | Beginning Retirement Balance | | Interest Credit [e] | | Ending Retirement Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 57.1 | [a] | 2/1/2023 | 12/31/2023 | | 4.00% | $ 144,244 | [d] $ | 5,360 | $ | 149,604 |
| 2 | 57.4 | | 1/1/2024 | 3/31/2024 | | 5.40% | $ 149,604 | $ | 2,018 | $ | 151,622 |
| 3 | 58.1 | | 4/1/2024 | 12/31/2024 | | 5.40% | $ 151,622 | $ | 6,219 | $ | 157,841 |
| 4 | 67.0 | | 1/1/2025 | 11/25/2033 | [b] | 4.00% | $ 157,841 | $ | 67,096 | $ | 224,937 |
| 5 | Total | | | | | | | $ | 80,693 | $ | 224,937 |

| | | |
|---|---|---|
| 6 | Retirement Cash Balance at November 25, 2033 | $ 224,937 |
| 7 | Retirement Contribution & Interest Credit on Lost Earnings | $ 88,475 [f] |
| 8 | **Expected Retirement Cash Balance at November 25, 2033** | **$ 313,413** |

[a] Start date based on screen shot of Plaintiff's payment options and benefit payable options under her BCBSM Retirement Plan as of February 1, 2023.

[b] End date based on Plaintiff's expected retirement date (age 67).

[c] Calculated at 4%, except for 2024 which was calculated at 5.4% based on 1 Year Treasury Bill as of August 31, 2023.   Source: BCBSM Employees Retirement Account Plan Summary Plan Description

[d] Beginning Retirement Balance - Source: Screen shot of Plaintiff's payment options and benefits amounts under her BCBSM Cash Balance Retirement Plan as of February 1, 2023.

[e] Calculated using interest rate for period, compounded quarterly.  Source: BCBSM Employees Retirement Account Plan Summary Plan Description

[f] Source: Exhibit E, Schedule 3

DOMSKI 0032

**Lisa Domski v Blue Cross Blue Shield of Michigan**  **Exhibit E**
**Calculation of Retirement Basic/Age Credit & Interest Credit on Lost Earnings**  **Schedule 3**
**For the Period January 5, 2022 through November 25, 2033**

| | Age at Year End | | Start Date | End Date | | Expected Wages [c] | | Retirement Basic/Age Credit [d] | | Interest Credit [e] | | Total Retirement Credit |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 56.1 | [a] | 1/5/2022 | 12/31/2022 | $ | 97,135 | $ | 4,857 | $ | 2,939 | $ | 7,796 |
| 2 | 57.1 | | 1/1/2023 | 12/31/2023 | | 99,874 | | 4,994 | | 2,712 | | 7,706 |
| 3 | 57.6 | | 1/1/2024 | 6/30/2024 | | 54,117 | | 2,706 | | 1,894 | | 4,600 |
| 4 | 59.1 | | 7/1/2024 | 12/31/2024 | | 48,417 | | 2,421 | | 1,586 | | 4,007 |
| 5 | 59.1 | | 1/1/2025 | 12/31/2025 | | 105,593 | | 5,280 | | 2,244 | | 7,524 |
| 6 | 60.1 | | 1/1/2026 | 12/31/2026 | | 108,761 | | 5,438 | | 2,009 | | 7,447 |
| 7 | 61.1 | | 1/1/2027 | 12/31/2027 | | 112,023 | | 5,601 | | 1,770 | | 7,371 |
| 8 | 62.1 | | 1/1/2028 | 12/31/2028 | | 115,384 | | 5,769 | | 1,527 | | 7,296 |
| 9 | 63.1 | | 1/1/2029 | 12/31/2029 | | 118,846 | | 5,942 | | 1,280 | | 7,222 |
| 10 | 64.1 | | 1/1/2030 | 12/31/2030 | | 122,411 | | 6,121 | | 1,028 | | 7,148 |
| 11 | 65.1 | | 1/1/2031 | 12/31/2031 | | 126,083 | | 6,304 | | 771 | | 7,075 |
| 12 | 66.1 | | 1/1/2032 | 12/31/2032 | | 129,866 | | 6,493 | | 510 | | 7,003 |
| 13 | 67.0 | | 1/1/2033 | 11/25/2033 | [b] | 121,162 | | 6,058 | | 221 | | 6,279 |
| 14 | **Total** | | | | $ | **1,359,672** | $ | **67,984** | $ | **20,492** | $ | **88,475** |

[a] Start date is based on the date Plaintiff terminated from BCBSM.

[b] End date based on Plaintiff's eligibility for full social security income (age 67) - expected retirement.

[c] Source: Exhibit D, Schedule 1

[d] Basic credit and age credit calculated at 3% and 2%, respectively, of expected wages (salary + bonus).  Source: BCBSM Employees Retirement Account Plan Summary Plan Description.

[e] Calculated at 4%, except for 2024 which was calculated at 5.4% based on 1 Year Treasury Bill as of  August 31, 2023. Source: BCBSM Employees Retirement Account Plan Summary Plan Description.

DOMSKI 0033

# APPENDIX A
# Summary of Past and Future
# Ecomonic Damages

DOMSKI 0034

**Lisa Domski v Blue Cross Blue Shield of Michigan**                    **Appendix A**
**Summary of Damages - Past and Future**
**For the Period January 5, 2022 through December 31, 2049**

| | Description | | Undiscounted Amount | | Present Value as of June 30, 2024 | Reference |
|---|---|---|---|---|---|---|
| 1 | Lost Earnings & Benefits - Past | [a] | $  238,343 | $  252,466 | | Exhibit D |
| 2 | **Total Past Damages** | | $  238,343 | $  252,466 | | |
| | | | | | | |
| 3 | Lost Earnings & Benefits - Future | [b] | $  1,047,073 | $  829,453 | | Exhibit D |
| 4 | Lost Retirement Benefits - Future | [c] | 288,660 | 126,315 | | Exhibit E |
| 5 | **Total Future Damages** | | $  1,335,734 | $  955,768 | | |
| | | | | | | |
| 6 | **Total Damages** | | $  1,574,077 | $  1,208,235 | | |

[a] Calculated from Termination Date (January 5, 2022) to Report Date (June 30, 2024 for purposes of this calculation).

[b] Calculated from July 1, 2024 through November 25, 2033 (Retirement Date).

[c] Calculated from December 1, 2033 (First day of the month following Retirement Date) through December 31, 2049 (life expectancy).

DOMSKI 0035