# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

LISA DOMSKI,

       Plaintiff,                  Case No. 2:23-cv-12023

v.                                 Hon. David M. Lawson

BLUE CROSS BLUE SHIELD
OF MICHIGAN,

       Defendant.

| | |
|---|---|
| Noah S. Hurwitz (P74063) | Scott R. Knapp (P61041) |
| HURWITZ LAW PLLC | Brandon C. Hubbard (P71085) |
| *Attorneys for Plaintiff* | Nolan J. Moody (P77959) |
| 340 Beakes St., Suite 125 | Maureen J. Moody (P85032) |
| Ann Arbor, MI 48104 | Davina A. Bridges (P85597) |
| (844) 487-9489 | DICKINSON WRIGHT PLLC |
| noah@hurwitzlaw.com | Attorneys for Defendant |
| | 123 W. Allegan Street, Suite 900 |
| Jonathan R. Marko (P72450) | Lansing, MI 48933 |
| MARKO LAW, PLLC | (517) 371-1730 |
| *Attorneys for Plaintiff* | sknapp@dickinsonwright.com |
| 220 W. Congress, Fourth Floor | bhubbard@dickinsonwright.com |
| Detroit, MI 48226 | nmoody@dickinsonwright.com |
| (313) 777-7529 | mmoody@dickinsonwright.com |
| jon@markolaw.com | dbridges@dickinsonwright.com |

## PLAINTIFF'S OMNIBUS MOTION *IN LIMINE*
## TO EXCLUDE AND INCLUDE CERTAIN EVIDENCE

Plaintiff Lisa Domski, by and through her attorneys, HURWITZ LAW PLLC,

hereby submits this Motion *in Limine* to Exclude and Include Certain Evidence

described below.  Undersigned sought concurrence for this motion with defense

counsel on September 9, 2024, via written email explaining the basis for the motion and relief requested. (**Ex. 25**, Email Requesting Concurrence.) Plaintiff's concurrence email attached a draft of the instant motion for Defendant's review. (Ex. 25.) Defendant responded the next day, on September 10, 2024, and indicated that Defendant did "not concur with the relief sought in [Plaintiff's] omnibus motion. (**Ex. 26**, Email Denying Concurrence.)

### Evidence to Exclude

**A.**   **Undue Hardship**: Exclude any argument, evidence, testimony, or reference to, or mention of undue hardship as a defense against Plaintiff's claims.

**B.**   **Public Harm:** Exclude any argument, evidence, testimony, or reference to the verdict causing a public harm, including but not limited to the verdict hurting the economy, increasing taxes, that there is a litigation crisis in Michigan, that anyone can file a lawsuit by going down to the courthouse and paying a filing fee, that good cases settle without trial, enriching Plaintiff's attorneys, or reference to Plaintiff's counsel in any derogatory fashion, or any similar argument.

**C.**   **Blaming Fault on Anyone Else:** Exclude any argument, evidence, testimony, reference to, or mention of fault of any third-party, or Plaintiff, including but not limited to assigning blame to the "COVID-19 virus," the "global pandemic," government vaccine mandates, the Centers for Disease Control and Prevention (the "CDC"), or any similar argument.

2

**D. Mention of Defendant's "Good" Character and/or Philanthropic Endeavors**: Exclude any argument, evidence, testimony, or reference to, or mention of Defendant's "good" character and/or philanthropic endeavors, including but not limited to Defendant preventing transmission or mutation of the COVID-19 virus, protecting the public, stopping the "global pandemic," protecting employees or the public, following government vaccine mandates, following instructions from the Centers for Disease Control and Prevention (the "CDC"), or any similar argument.

**E. Template COVID-19 Accommodation Request:** Exclude what Defendant alleges to be a "template" religious accommodation request that lacks authenticity and that Defendant has no basis to allege has any relevance to this case.

**F. Mention of Defendant Insuring Jurors:** Exclude any argument, evidence, testimony, reference to, or mention of Defendant providing health insurance to jurors.

**G. Collateral Sources/Insurance:** Exclude any argument, evidence, testimony, reference to, or mention of collateral sources, such as insurance benefits, including by expert witnesses and/or counsel.

<u>**Evidence to Include**</u>

**A. Medical Journals:** Include medical journal articles discussing use of fetal stem cells in COVID-19 vaccine development and manufacturing. (**Exs. 1-7**.)

**B.**     **Religious Teachings:**   Include religious teachings from established sources and scripture.  (**Exs. 8-12**.)

**C.**     **Pharmaceutical Company Information on Fetal Stem Cells:** Include historical information and frequently asked questions of pharmaceutical companies, which are probative of whether fetal stem cells are used in over-the-counter medication.  (**Exs. 13-19**.)

**D.**     **Periodicals:** Include newspaper articles regarding Plaintiff and her family hosting charity Christmas dinners.   (**Exs. 20-23**.)

**E.**     **Approved Accommodation Requests:**   Include accommodation requests that were approved by Defendant, which is probative of religious discrimination.

**F.**     **Audio Transcripts:** Include all officially transcribed audio transcripts for which an audio recording has been produced to Defendant and which Defendant cannot deny the authentication of.

Respectfully submitted,

HURWITZ LAW PLLC

*/s/  Noah S. Hurwitz*
Noah S. Hurwitz (P74063)
HURWITZ LAW PLLC
*Attorney for Plaintiff*
noah@hurwitzlaw.com

Dated: September 13, 2024

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

LISA DOMSKI,

        Plaintiff,

v.

BLUE CROSS BLUE SHIELD
OF MICHIGAN,

        Defendant.

Case No. 2:23-cv-12023

Hon. David M. Lawson

---

| | |
|---|---|
| Noah S. Hurwitz (P74063) | Scott R. Knapp (P61041) |
| HURWITZ LAW PLLC | Brandon C. Hubbard (P71085) |
| *Attorneys for Plaintiff* | Nolan J. Moody (P77959) |
| 340 Beakes St., Suite 125 | Maureen J. Moody (P85032) |
| Ann Arbor, MI 48104 | Davina A. Bridges (P85597) |
| (844) 487-9489 | DICKINSON WRIGHT PLLC |
| noah@hurwitzlaw.com | Attorneys for Defendant |
| | 123 W. Allegan Street, Suite 900 |
| Jonathan R. Marko (P72450) | Lansing, MI 48933 |
| MARKO LAW, PLLC | (517) 371-1730 |
| *Attorneys for Plaintiff* | sknapp@dickinsonwright.com |
| 220 W. Congress, Fourth Floor | bhubbard@dickinsonwright.com |
| Detroit, MI 48226 | nmoody@dickinsonwright.com |
| P: (313) 777-7529 / F: (313) 470-2011 | mmoody@dickinsonwright.com |
| jon@markolaw.com | dbridges@dickinsonwright.com |

---

## BRIEF IN SUPPORT OF PLAINTIFF'S OMNIBUS MOTION *IN LIMINE* TO EXCLUDE AND INCLUDE CERTAIN EVIDENCE

## <u>TABLE OF CONTENTS</u>

INDEX OF AUTHORITIES..................................................................iii

INDEX OF EXHIBITS........................................................................v

INTRODUCTION..................................................................................1

ARGUMENT .........................................................................................1

    I.      MOTIONS *IN LIMINE* FOR EXCLUSION OF EVIDENCE. ......1

          A.     Undue Hardship. ........................................................2

          B.     Public Harm.................................................................5

          C.     Blaming Fault on Anyone Else. .................................7

          D.     Mention of Defendant's "Good" Character and/or Philanthropic Endeavors.............................................8

          E.     Template COVID-19 Accommodation Request.................9

          F.     Mention of Defendant Insuring Jurors................................10

          G.     Collateral Sources. ...................................................11

    II.     MOTIONS *IN LIMINE* FOR INCLUSION OF EVIDENCE. ......12

          A.     Medical Journals. .....................................................13

          B.     Pharmaceutical Company Statements on Fetal Stem Cells. ..........................................................................13

          C.     Religious Teachings. .................................................14

          D.     Periodicals.................................................................15

          E.     Approved Accommodation Requests. ......................15

          F.     Transcripts of Business Audio Recordings.............................17

## <u>INDEX OF AUTHORITIES</u>

**Cases**

*Barrette Outdoor Living, Inc. v. Michigan Resin Representatives*, No. 11-CV-13335, 2015 WL 356996, at *12 (E.D. Mich. Jan. 27, 2015) .............................14

*Blacha v. Gagnon*, 47 Mich. App. 168 (1973) .........................................12

*Bledsoe v. Tennessee Valley Auth. Bd. of Directors*, 42 F.4th 568 (6th Cir. 2022) 18

*Bourdon v. Read*, 30 Mich. App. 681 (1971) ...........................................12

*Clark v Grand Trunk Western Railroad* Co, 367 Mich 396 (1962).....................8

*Draper v. Airco, Inc*. 580 F2d 91 (3rd Cir. 1978) ........................................6

*Eichel v. New York Cent. R. Co.*, 375 U.S. 253 (1963) ............................13

*Gorski v. Ascension St. John Hosp*., 2024 WL 1327904, at *3 (E.D. Mich. Mar. 25, 2024) ...............................................................................................18

*Hall v. Freese*, 735 F2d 956 (5th Cir. 1984).............................................6

*Maldonado v. Missouri Pac. Ry. Co.*, 798 F2d 764 (5th Cir. 1986)...........................6

*Moore v. King County Fire Prot.*, 2006 U. S. Dist. LEXIS 50092 (W.D. Wash., 2006) ...............................................................................................8

*N. Tr. Co v. Comm'r*, 116 F.2d 96, 98 (7th Cir. 1940) .............................16

*Old Line Life Ins. Co. of Am. v. Garcia*, 418 F.3d 546 (6th Cir. 2005)....................3

*Robinson v. Southeastern Pennsylvania Transportation Authority*, 982 F2d 892 (3rd Cir. 1993) .................................................................................8

*Smith v. Chrysler Corp*., 155 F.3d 799, 807 (6th Cir. 1998)....................19

*Toth v. Grand Trunk R.R*., 306 F.3d 335, 349 (6th Cir. 2002) ................15

*United States v. Whittington*, 455 F.3d 736 (6th Cir. 2006) ....................2

*Varkonyi v. United Launch All., LLC*, No. 2:23-CV-00359-SB-MRW, 2024 WL 1677523, at *6 (C.D. Cal. Feb. 21, 2024).....................................5

*Wilcox v. Clinchfield Railroad Co.*, 747 F.2d 1059 (6th Cir. 1984).......................13

*Williams v Wheels, Inc,* 407 Mich 417 (1979) ...................................7, 8

*Willmar Gas Co. v. Duinick*, 58 N.W.2d 197 (Minn. 1953)....................6

**Statutes**

MCL 600.6303(4) ..................................................................................13

**Rules**

FRE 402 ...............................................................................................7

FRE 404 ............................................................................................7, 9

FRE 802 .............................................................................................10

FRE 801 ........................................................................................ 11, 19

FRE 901 .............................................................................................10

FRE 401 ...............................................................................................7

FRE 403 ...............................................................................................7

## <u>INDEX OF EXHIBITS</u>

1.      UCLA Health Article - COVID-19 Vaccine: Addressing Concerns.

2.      History of Fetal Tissue Research and Transplants Article.

3.      History of Stem Cell Use Article.

4.      Stem Cell Reports Article.

5.      The First 3,500 Years of Aspirin History from its Roots Article.

6.      Setting the Stage: Fetal Research, Fetal Tissue Research, and Historical Timeline of Regulation and Legislation Article.

7.      Advancing Health Article.

8.      Catechism of the Catholic Church – To Choose in Accord with Conscience.

9.      Catechism of the Catholic Church – The Judgment of Conscience.

10.     Congregation for the Doctrine of Faith – Instruction *Dignitas Personae* on Certain Bioethical Questions.

11.     Letters to Pharmaceutical Companies.

12.     Conscience Exemption for Vaccines Based on Fetal Tissue from Abortions Article.

13.     Frequently Asked Questions about Tylenol.

14.     FDA Sends Claritin over the Counter Article.

15.     Ibuprofen History Article.

16.     Motrin and Ibuprofen Frequently Asked Questions.

17.    Sudafed Frequently Asked Questions.

18.    The History of Pepto Bismol Article.

19.    Tums – America's #1 Heartburn Medicine Article.

20.    Community Invited to Free Christmas Dinner Article.

21.    "True Meaning of Christmas" Dinner Serves Largest Crowd ever in Taylor Article.

22.    Domski Family Hosting Annual Free Dinner Article.

23.    Domski Family Does it Again, Sharing the "True Meaning of Christmas" to 400 in Taylor Article.

24.    Defendant's Responses to Plaintiff's First Set of Discovery Requests.

25.    Email Requesting Concurrence.

26.    Email Denying Concurrence.

## INTRODUCTION

This is an employment case scheduled for trial on October 29, 2024.  Plaintiff brings this motion *in limine* to streamline the trial process and exclude certain evidence that Defendant will attempt to use to muddy the waters of this remarkably straightforward case in which the jury should be laser focused on whether Defendant violated Title VII of the Civil Rights Act and Michigan's Elliott-Larsen Civil Rights Act by denying Plaintiff's religious accommodation request to be exempt from Defendant's COVID-19 vaccine requirement.  Plaintiff also requests that this Court adjudicate whether certain evidence may be included in the trial.

## ARGUMENT

## I.   MOTIONS *IN LIMINE* FOR EXCLUSION OF EVIDENCE.

> The Federal Rules of Evidence do[ ] not explicitly authorize in limine rulings, but the practice was developed pursuant to a district court's inherent authority to manage the course of trials. It is within the district court's discretion to make an in limine ruling on evidentiary matters, but there is no right to an in limine ruling. A motion in limine ruling  is  nothing  more  than  a preliminary opinion which allows the parties to formulate trial strategy.  The trial court is not bound by an in limine ruling and can change its determination during the trial where sufficient facts have developed to warrant the change or even if nothing unexpected happens at trial.

*Aetna, Inc. v. Blue Cross Blue Shield of Mich*., No. 11-15346, 2015 WL 1646464, at *1 (E.D. Mich. Apr. 14, 2015).  "In analyzing [ ] motion[s] *in limine*, the trial court [generally] first considers issues of relevance, admissibility and prejudice."  *Id*. at

*1.  Federal Rule of Evidence 401 provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Federal Rule of Evidence 402 provides that "[i]rrelevant evidence is not admissible."

"The standard for relevance is extremely liberal":

> Evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence is relevant. Even if a district court believes the evidence is insufficient to prove the ultimate point for which it is offered, it may not exclude the evidence [as irrelevant] if it has the slightest probative worth.

*United States v. Whittington*, 455 F.3d 736, 738–39 (6th Cir. 2006).  Still, Federal Rule of Evidence 403 provides that "[t]he Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

### A.   Undue Hardship.

This motion seeks to exclude any argument, evidence, testimony, reference to, or mention of undue hardship as a defense to Plaintiff's claims.  Federal Rule of Civil Procedure 8(c) "requires that affirmative defenses be set forth in a party's pleading to a preceding pleading."  *Old Line Life Ins. Co. of Am. v. Garcia*, 418 F.3d 546, 549 (6th Cir. 2005).  "As a general rule, failure to plead an affirmative defense

2

results in a waiver of that defense." *Id.* Here, it is undisputed that Defendant never raised undue hardship as an affirmative defense. [ECF No. 19]. Moreover, Defendant explicitly conceded to Plaintiff that it would not rely on undue hardship in its answer to Plaintiff's Amended Complaint. [ECF No. 19 at ¶69].

Further, Defendant has waived the undue hardship defense in numerous discovery responses. For example, Defendant stated in response to Plaintiff's Interrogatory No. 19 that "[m]oreover, Plaintiffs' complaints pertain to their individual requests for a religious and/or medical accommodation to Defendants' Vaccine Policy, and ***Defendants are not asserting "undue hardship" as a defense***. And in response to Plaintiff's Requests for Admission No. 6, Defendant stated, "Defendants further object to this RFA because Defendants did not deny any request for an accommodation on the basis of the requested accommodation posing an 'undue hardship,' making this RFA entirely irrelevant." In response to Request for Admission No. 1, Defendant stated "Defendants further object to this RFA because Defendants did not deny any request for an accommodation on the basis of the requested accommodation posing an "undue hardship[.]" **Ex. 24**, Defendant's Responses to Plaintiff's First Discovery Requests.

Defendant did not raise undue hardship in their Affirmative Defenses and waived any reliance on undue hardship in its Answer and discovery responses, so Defendant is clearly barred from any mention of the defense at trial. However,

3

Plaintiff anticipates that Defendant will rely on the principles of an undue hardship defense without actually saying the phrase "undue hardship."  It is that type of evidence also that should be precluded from being introduced.  Evidence that takes on the character of the undue hardship defense would include references to Defendant safeguarding the health of its employees, following a government mandate, and having to accelerate its decision-making due to a global pandemic. However, such evidence is only proper for presentation of an undue hardship defense and bears no relevance to Plaintiff's claims or Defendant's defenses.

Safeguarding employee health is irrelevant because Plaintiff was a remote worker at the time of her termination and fully capable of working remotely had she kept her job.  Moreover, Defendant granted roughly 200 religious accommodation requests and therefore voluntarily exposed its employees to unvaccinated coworkers. Likewise, references to a government mandate are unnecessary because any government mandate required employers to accommodate religious and/or medical accommodations provided the accommodation did not pose an undue hardship.  See *Varkonyi v. United Launch All., LLC*, No. 2:23-CV-00359-SB-MRW, 2024 WL 1677523, at *6 (C.D. Cal. Feb. 21, 2024) (Federal Task Force guidelines requiring employer to implement a COVID vaccination policy and to certify to its governmental clients that all its employees are vaccinated still "expressly contemplate that a government contractor 'may be required to provide an

accommodation to covered contractor employees who communicate to the covered contractor that they are not vaccinated against COVID-19' because of a sincerely held religious belief, practice or observance").  As such, Defendant cannot assign any sort of blame to government regulation as the impetus for its termination decision.  Finally, Defendant should not be permitted to conflate the early periods of the global pandemic with November 2021, when the crisis had been abated to the extent that the University of Michigan was hosting full capacity football games.

### B.   Public Harm.

Defendant cannot argue that there is a litigation crisis in Michigan, that a large verdict will hurt the local economy, increase taxes, enrich Plaintiff's attorneys, increase the cost to consumers, or other such arguments.  Such arguments are improper as they would encourage the jury to disregard the law. *Maldonado v. Missouri Pac. Ry. Co.*, 798 F2d 764, 770–771 (5th Cir. 1986); *Willmar Gas Co. v. Duinick*, 58 N.W.2d 197 (Minn. 1953) (holding that arguing a verdict will cause prices to go up for consumers is improper).  Furthermore, it would play on the jury's passions and prejudices, which is likewise improper.  This includes any comments regarding a litigation crisis or that organizations like Defendant cannot exist if there are big verdicts against them.

Similarly, Defendant cannot introduce any evidence or make any statements attempting to vilify opposing counsel claiming this case is a lottery, a money grab,

or other such arguments. *Draper v. Airco, Inc*. 580 F2d 91, 96–97 (3rd Cir. 1978); *Hall v. Freese*, 735 F2d 956, 960–61 (5th Cir. 1984) (finding reversible where the defense strategy was clearly to characterize Plaintiff as "trying to take advantage of the good people of rural Northern Mississippi"). This includes references to "billboard attorneys" and/or well-known plaintiff-attorneys. FRE 403, 404(b). Such types of inflammatory comments and public policy arguments are improper under *Williams v Wheels, Inc*, 407 Mich 417 (1979), not to mention completely irrelevant and improper under FRE 401 and 402. Even if there was a scintilla of probative value—which there is not—this type of argument is barred under FRE 403.

In *Williams,* the Michigan Supreme Court held that a defense attorney's remarks during closing argument concerning the impact of the case on the No-Fault scheme in Michigan were improper and denied the plaintiff a fair trial. *Id. at 418*. During closing argument, the defense attorney in *Williams* told jurors that a finding against the defendant would have a "broad effect" on residents of the county. *Id.* at 420. The *Williams* court held:

> [T]he remarks set forth served to deny the plaintiff a fair trial. The issue for the jury's consideration in this case was not the continued viability of the no-fault legislation . . . We cannot agree with the Court of Appeals that defense counsel's remarks were a simple admonition to the jury to follow the law. We believe that defense counsel's remarks may well have influenced the jury to decide this matter on the basis of

> considerations not germane to the issue which was
> presented to them.

*Id. at 421.* Further, it is reversible error for the defense to ask the jury to consider the effect which their judgment will have on them personally. *Clark v Grand Trunk Western Railroad* Co, 367 Mich 396, 400 (1962).

### C.   Blaming Fault on Anyone Else.

This motion seeks to exclude any argument, evidence, testimony, reference to, or mention of fault of anyone other than Defendant. Comparative fault does not apply to employment discrimination claims. See *Robinson v. Southeastern Pennsylvania Transportation Authority*, 982 F2d 892, 898-99 (3rd Cir. 1993) (finding no authority for allowing Plaintiff to be held comparatively at fault for a deteriorating relationship with his employer); See also *Moore v. King County Fire Prot.*, 2006 U. S. Dist. LEXIS 50092, at 44-45 (W.D. Wash., 2006). *Moore* is directly on point. The Court in *Moore* stated:

> Defendants argue that [Plaintiff] Mr. Moore's damages are the result of his own negligence or fault, or the negligence and fault of third parties. Defendants have alleged that Mr. Moore is "at fault" because he contributed to a poor work atmosphere, failed to timely get medical assistance, and worked at the District while taking pain medication.
>
> **The court agrees with Plaintiffs that the fault of Mr. Moore or any third party is irrelevant in considering whether the District or its employees discriminated against Mr. Moore or retaliated against him for engaging in protected activity.** Defendants cite no law in

support of this proposition, and the court reaches the obvious conclusion that whether or not Mr. Moore contributed to a poor work atmosphere, failed to get medical assistance while a District employee, or worked at the District while taking pain medication is irrelevant to whether the District discriminated against him. The District's fault-based affirmative defenses are inapplicable to the question of discrimination.

*Id.* at 44 – 45.  Here, there is risk on Defendant suggesting to the jury that fault lies with third parties, which would be inappropriate because Defendant accommodated the religious beliefs of other employees.   The only appropriate analysis here is whether the Defendant violated the law.

**D.    Mention of Defendant's "Good" Character and/or Philanthropic Endeavors.**

"Good character" of Defendant is not a relevant consideration for the jury in this case.  FRE 404 prohibits character evidence, good or bad.  It states: "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."  FRE 404(a)(1). Defendant's "good character" cannot be used to prove that Defendant did not discriminate against Plaintiff.  Therefore, this Court should exclude evidence of Defendant's good character, including philanthropic efforts and charitable giving because it is not pertinent to the claims at issue in this case.  This would also include arguments that Defendant is a "good company" or that it was protecting the well-being of Michigan citizens.

8

### E.     Template COVID-19 Accommodation Request.

Defendant includes BCBSM0070085-86 as a trial exhibit.  On its face, BCBSM0070085-86 appears to be a template religious accommodation request. However, the document is unauthenticated under Federal Rule of Evidence 901, and inadmissible and irrelevant hearsay, under Federal Rule of Evidence 802.  Defendant may try to show that this document originated on the internet somewhere and that Plaintiff used it as a template from which to draft her religious accommodation.  Yet, when BCBSM0070085-86 is compared with Plaintiff's actual religious accommodation request, the documents have very little in common.  Comparing the two documents, only a handful of common phrases are similar and that is limited to (a) "I am writing to formally request a"; (b) "Christians about the importance of their bodies: Or do you not know that your body is the temple of the Holy Spirit who is in you, whom you have from God? You are not your own, for you were bought with a price.  Therefore, glorify God in your body"; and (c) the words, "I firmly believe . . . ."  The second quote is from scripture.  Hence, there is no indicia of reliability for the proposition that Plaintiff copied her accommodation request from a template.

The Federal Rules require "authentication or identification" of evidence "as a condition precedent to admissibility . . . sufficient to support a finding that the matter in question is what its proponent claims."  Fed. R. Evid. 901.  Under the federal rules, hearsay is inadmissible unless subject to an exception.  Fed. R. Evid. 802.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801. Here, the internet template accommodation form is devoid of authentication or identification and is being offered for the truth of the matter asserted, *i.e.*, that Plaintiff relied on it in drafting her accommodation request. Accordingly, the document should be stricken. While some court documents are self-authenticating, simply printing something from the internet does not come close to telling this Court whether the document "is what the proponent claims it is." Fed. R. Civ. P. 901(a).

F.     **Mention of Defendant Insuring Jurors.**

Defendant is the largest healthcare insurance provider in the State of Michigan and may appeal to jurors that it insures them and has a duty to protect them from illness. Such evidence is not relevant to the question of whether Defendant discriminated against Plaintiff on the basis of her religion and otherwise fails to pass muster under the balancing test of Federal Rule of Evidence 403. *United States v. Seymour*, 468 F.3d 378, 385 (6th Cir. 2006) ("Rule 403 . . . balances the probative value of relevant evidence against the danger of unfair prejudice, confusion of the issues, or misleading the jury."). Again, it is critical to remember that Defendant allowed hundreds of unvaccinated employees to continue working when Plaintiff was terminated. Thus, any mention of Defendant taking any actions to protect its

10

insureds would have no relevance and instead serve only to create unfair prejudice and confuse the jury.  Fed. R. Evid. 403.

### G.    Collateral Sources.

This motion seeks to exclude any argument, evidence, testimony, reference to, or mention of collateral sources given that both Michigan and federal law bar introduction of collateral sources.   Michigan's Collateral Source Rule bars a defendant from reducing its liability based on Plaintiff's receipt of independent third-party payments. *Blacha v. Gagnon*, 47 Mich. App. 168, 209 (1973); *Bourdon v. Read*, 30 Mich. App. 681 (1971).  This does not bar the third-party from seeking indemnification from the plaintiff if the third-party has a right to indemnification; it simply removes that aspect from a determination of the defendant's liability at trial.

The United States Supreme Court, in *Eichel v. New York Central Railroad Co.*, held that a plaintiff's receipt of collateral benefits was substantially likely to prejudice a jury. *Eichel v. New York Cent. R. Co.*, 375 U.S. 253, 255 (1963).  The Sixth Circuit adopted the *Eichel* collateral benefits rule in *Wilcox v. Clinchfield Railroad Co.* and held that it was reversible error for the trial court to inform the jury about plaintiff's collateral compensation. *Wilcox v. Clinchfield Railroad Co.*, 747 F.2d 1059, 1061 (6th Cir. 1984).  The defendant's sole contribution to the plaintiff is injury or harm, and no other form of contribution should be admissible at trial.

"Collateral source" is defined in MCL 600.6303(4), which states:

> (4) As used in this section, "collateral source" means benefits received or receivable from an insurance policy; benefits payable pursuant to a contract with a health care corporation, dental care corporation, or health maintenance organization; employee benefits; social security benefits; worker's compensation benefits; or medicare benefits. Collateral source does not include life insurance benefits or benefits paid by a person, partnership, association, corporation, or other legal entity entitled by law to a lien against the proceeds of a recovery by a plaintiff in a civil action for damages.

This means that Defendant may not tell the jury that Plaintiff's insurance paid for anything or will indemnify against her loss and/or injuries, including unemployment benefits and medical insurance.

## II.   **MOTIONS *IN LIMINE* FOR INCLUSION OF EVIDENCE.**

While motions *in limine* are more frequently used to exclude evidence, courts also permit motions *in limine* to include evidence before trial. *Barrette Outdoor Living, Inc. v. Michigan Resin Representatives*, No. 11-CV-13335, 2015 WL 356996, at *12 (E.D. Mich. Jan. 27, 2015). At issue in this case is whether Defendant discriminated against Plaintiff on the basis of her religious beliefs. In the interest of judicial efficiency, Plaintiff is requesting pretrial admission of six categories of evidence, including (a) medical journals; (b) pharmaceutical company statements on fetal stem cells; (c) periodicals regarding fetal stem cells; (d) religious teachings; (e) approved accommodation requests; and (f) transcripts of business audio recordings.

### A.    Medical Journals.

Plaintiff intends to proffer medical journal articles for proposition that the COVID-19 vaccines available to Plaintiff in November 2021 were developed and/or manufactured with the aid of fetal stem cells.  Such evidence falls under the learned-treatise exception to the hearsay rule. *See* Fed. R. Evid. 803(18). A statement in "learned treatises, periodicals, or pamphlets" falls under this exception if (a) the statement is called to the attention of an expert witness on cross-examination or relied on by the expert on direct examination; and (b) the publication is established as a reliable authority by the expert's admission or testimony, by another expert's testimony, or by judicial notice. *Id*. Here, it is appropriate for this Court to take judicial notice of medical journal articles if Defendant contests whether the COVID-19 vaccines were developed and/or manufactured with the aid of fetal stem cells. **Exs. 1-7**.

### B.    Pharmaceutical Company Statements on Fetal Stem Cells.

Plaintiff avers that she refused the COVID-19 vaccine based on her aversion to a medical treatment that was developed and manufactured with contributions from fetal stem cell research.  Accordingly, this Court should take judicial notice of admissions by the manufacturers of both over-the-counter medications and the COVID-19 vaccines regarding fetal stem cells, which establish evidence supporting the factual context of the case, as opposed to stating the governing law. *Toth v.*

13

*Grand Trunk R.R.*, 306 F.3d 335, 349 (6th Cir. 2002) ("judicial notice is available only for 'adjudicative facts,' or the 'facts of the particular case,' as opposed to . . . facts 'which have relevance to legal reasoning.'").  The evidence regarding whether over-the-counter medications were developed and/or manufactured with the aid of fetal stem cells is relevant because Defendant made a bogus claim to employees during religious accommodation interviews that Tums, Benadryl, Pepto Bismo, Motrin and other medications were connected to fetal stems cells, which is obviously false and probative of Defendant's religious bias.  **Exs. 13-19**.

### C.    Religious Teachings.

At issue in this case is whether Plaintiff holds sincerely-held religious beliefs that prevent her from receiving the COVID-19 vaccine.  Accordingly, Plaintiff seeks to include religious teachings that validate Plaintiff's beliefs and lend support for the proposition that she holds a religious conflict with receiving the COVID-19 vaccine. Rule 201 of the Federal Rules of Evidence permits a court, either by motion of a party or on its own motion, to "judicially notice a fact that is not subject to reasonable dispute because it" either "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Plaintiff requests that this Court take judicial notice of religious teachings because they satisfy both elements of judicial notice.  *N. Tr. Co v. Comm'r*, 116 F.2d 96, 98 (7th Cir. 1940) (judicial notice of

religious teachings that are "widely known" is appropriate). Indeed, the Catholic belief that life begins at conception is generally known and restated in articles found on the internet and Defendant has no basis to question the accuracy of such teachings. Judicial notice of articles regarding religious teachings is therefore appropriate. **Exs. 8-12**.

### D.    Periodicals.

Plaintiff intends to introduce into evidence periodical, *i.e.*, news articles, that establish Plaintiff's religiosity and contain evidence that is probative as to whether Plaintiff's religion prevents her from receiving the COVID-19 vaccine. Such articles are self-authenticating "newspapers and periodicals" under Federal Rule of Evidence 902 (6). *Houchins v. Jefferson Cty. Bd. of Educ.*, No. 3:10-CV-147, 2013 WL 811723, at *2 (E.D. Tenn. Mar. 5, 2013); *Foos v. City of Delaware*, No. 2:08-CV-0873, 2010 WL 3489384, at *4 (S.D. Ohio Aug. 31, 2010). Plaintiff does not anticipate that Defendant will contest such facts, but the articles are necessary for the jury to understand that the Plaintiff holds sincere religious beliefs and that those sincere religious beliefs play an importance in her life. **Exs. 20-23**.

### E.    Approved Accommodation Requests.

Plaintiff will potentially introduce accommodation requests submitted by her similarly situated coworkers that were granted by Defendant. Such evidence is appropriate because this Court has held that Plaintiff can pursue disparate treatment

claims through direct or indirect evidence. *Gorski v. Ascension St. John Hosp*., 2024 WL 1327904, at *3 (E.D. Mich. Mar. 25, 2024) ("[Plaintiff] has sufficiently alleged disparate treatment based on her religion, ***implicating both an unfavorable treatment compared to those seeking exemptions for secular reasons and a nuanced argument suggesting differential treatment among various religious beliefs***.").  Since Defendant did not base accommodation denials on a purported undue hardship and, instead, attacked the *religious nature* of the beliefs asserted, Plaintiff can submit evidence, such as approved religious accommodation requests, to demonstrate to the jury that Defendant either made an arbitrary decision or acted with religious bias.  Defendant's COVID-19 vaccine policy applied to all employees regardless of their supervisor, department, position, or in-person working status; therefore, Plaintiff and her coworkers all engaged in the same conduct of submitting an accommodation request.

Further, Defendants have indicated they will rely on the "honest belief rule" as an affirmative defense and at trial.  "The honest belief rule, however, does not command blind deference to an employer's business judgment in any employment-discrimination action." *Bledsoe v. Tennessee Valley Auth. Bd. of Directors*, 42 F.4th 568, 585 (6th Cir. 2022).  In the Sixth Circuit, "in order for an employer's proffered non-discriminatory basis for its employment action to be considered honestly held, ***the employer must be able to establish its reasonable reliance on the particularized***

**facts that were before it at the time the decision was made.  If the employer is unable to produce such evidence to support its employment action, then the 'honest belief' rule does not apply**." *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998).  As such, evidence that Defendant granted accommodations to other employees will assist the trier of fact in determining whether Defendant consistently relied on particularized facts or simply terminated employees arbitrarily.

### F.    Transcripts of Business Audio Recordings.

Finally, Plaintiff intends to introduce official transcripts of audio recordings taken from Defendant's workplace.  The audio recordings will demonstrate direct evidence of religious discrimination and will fall within the hearsay exception for prior inconsistent statements by an opposing party under Fed. R. Evid. 801(d)(2)(A).  A statement qualifies as a party statement under Rule 801(d)(2)(A) if the statement's proponent provides adequate proof to support a finding that the statement was made by the party. Plaintiff intends to call Defendant's employees as witnesses to authenticate the voices on the audio recording.  Of course, Defendant's witnesses may testify in a manner that contradicts the audio recordings.  As such, the audio transcriptions and the audio itself are admissible. *Lee v. The City of Columbus, Ohio*, No. 2:07-CV-1230, 2010 WL 420034, at *4 (S.D. Ohio Jan. 28, 2010) ([i]mpeachment testimony is always admissible.").

17

Respectfully submitted,

HURWITZ LAW PLLC

*/s/ Noah S. Hurwitz*
Noah S. Hurwitz (P74063)
HURWITZ LAW PLLC
*Attorney for Plaintiff*
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com

Dated:  September 13, 2024

**<u>PROOF OF SERVICE</u>**

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each attorney of record on **September 13, 2024**, via:

| | |
|---|---|
| ☐ U.S. Mail | ☐ Fax |
| ☐ Hand Delivered | ☐ Overnight Carrier |
| ☐ Certified Mail | ☐ Other: <u>Mi-FILE Truefiling</u> |
| ☒ ECF System | ☐ Email |

*/s/  Noah S. Hurwitz*