# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

LISA DOMSKI,

      Plaintiff,

v.

BLUE CROSS BLUE SHIELD
OF MICHIGAN,

      Defendant.

Case No. 2:23-cv-12023

Hon. David M. Lawson

| | |
|---|---|
| Noah S. Hurwitz (P74063)<br>HURWITZ LAW PLLC<br>*Attorneys for Plaintiff*<br>340 Beakes St., Suite 125<br>Ann Arbor, MI 48104<br>(844) 487-9489<br>noah@hurwitzlaw.com<br><br>Jonathan R. Marko (P72450)<br>MARKO LAW, PLLC<br>*Attorneys for Plaintiff*<br>220 W. Congress, Fourth Floor<br>Detroit, MI 48226<br>(313) 777-7529<br>jon@markolaw.com | Scott R. Knapp (P61041)<br>Brandon C. Hubbard (P71085)<br>Nolan J. Moody (P77959)<br>Maureen J. Moody (P85032)<br>Davina A. Bridges (P85597)<br>DICKINSON WRIGHT PLLC<br>Attorneys for Defendant<br>123 W. Allegan Street, Suite 900<br>Lansing, MI 48933<br>(517) 371-1730<br>sknapp@dickinsonwright.com<br>bhubbard@dickinsonwright.com<br>nmoody@dickinsonwright.com<br>mmoody@dickinsonwright.com<br>dbridges@dickinsonwright.com |

**PLAINTIFF'S EMERGENCY MOTION TO COMPEL THE
*DE BENE ESSE* DEPOSITION OF BRUCE HENDERSON AND
SANCTION DEFENDANT FOR VIOLATING RULE 45**

Plaintiff Lisa Domski, by and through her attorneys, HURWITZ LAW PLLC, hereby submits this Emergency Motion to Compel the *De Bene Esse* Deposition of Bruce Henderson and Sanction Defendant for Violating Rule 45. Bruce Henderson

is Defendant's in-house attorney who conducted interviews with religious accommodation applicants, albeit not in his capacity as a lawyer, and critically made the decision to terminate Plaintiff. However, after failing to object to Plaintiff's September 12, 2024 trial subpoena, Defendant suddenly and surprisingly informed Plaintiff that ***Mr. Henderson has a serious illness and cannot testify at trial***.

Defendant cannot legally make Mr. Henderson unavailable after failing to object to his trial subpoena. Accordingly, Plaintiff requests sanctions against Defendant in the form of this Court compelling Defendant to produce Mr. Henderson for a *de bene esse* deposition and awarding Plaintiff attorney fees arising out of this motion. Alternatively, if Mr. Henderson is now too ill to participate in a *de bene esse* deposition due to Defendant hiding his health status, Plaintiff will be severely prejudiced, and this Court should grant Plaintiff an adverse jury instruction that states:

> ***Bruce Henderson is the Defendant's in-house attorney who made the decision to terminate the Plaintiff and he is unavailable to testify. Because he is unable to testify due to Defendant's actions, you can infer that the testimony of Mr. Henderson would have been adverse to the Defendant.***

On October 3, 2024, Plaintiff expressly sought concurrence from Defendant for the relief requested in this Motion and Defendant refused to concur the next day. *See* Exhibit 7. In support of her motion, Plaintiff states the following:

2

## ARGUMENT

1.  Bruce Henderson is an in-house lawyer[1] for Defendant who conducted a religious accommodation interview with Plaintiff and has been identified by Defendant as the individual who made the decision to terminate Plaintiff. **Ex. 1**, Defendants' Responses and Objections to Plaintiffs' Template First Interrogatories, p. 21.

2.  Specifically Defendant averred that Mr. Henderson had "knowledge and information regarding Plaintiffs' requests for religious accommodation to Defendants' COVID-19 vaccination policy and Plaintiffs' interview with Defendants relative to their accommodation request[.]" *Id*.

3.  On December 1, 2021, it was Bruce Henderson who sent an email to Defendant's in-house counsel, Rudy Makupson, providing the reasons that Plaintiff was terminated. **Ex. 2**, Email from Bruce Henderson Denying Religious Accommodation.

4.  To further illustrate Mr. Henderson's importance, Defendant's Manager of Employee & Labor Relations, Jana Lance, testified that she was trained and prepared to interview employees regarding religious accommodation requests ***by Bruce Henderson***. **Ex. 3**, Jana Lance Identifies Bruce Henderson as Trainer.

---

[1] Although an attorney, Mr. Henderson advised all interviewees that he was not conducting interviews in his "capacity" as a lawyer, so there is no attorney/client privilege at issue here. Ex. 8, Interview Transcript.

3

5. Among the training that Ms. Lance received was that an employee does not "hold sincere religious beliefs" if the employee has "an inconsistent lifestyle compared to their professed religious beliefs." *Id*. at 32.

6. It is incredibly important that Mr. Henderson testify in this matter because the training described by Jana Lance, if true, ***would constitute a per se disparate treatment violation of well-established Title VII and ELCRA law*** that was most recently emphasized by the Sixth Circuit in the published and binding *Sturgill v. Am. Red Cross*, 114 F.4th 803, 809–10 (6th Cir. 2024), which held "that there may be both religious and secular reasons for an act does not elevate the latter over the former." See also *Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894, 901 (8th Cir. 2024) (adopting EEOC Compliance Manual § 12-I(A)(1) (Jan. 15, 2021) that says, "overlap between a religious and [a secular] view does not place it outside the scope of Title VII's religious protections, as long as the view is part of a comprehensive religious belief system."); *Callahan v. Woods*, 658 F.2d 679, 684 (9th Cir. 1981) ("[A] coincidence of religious and secular claims in no way extinguishes the weight appropriately accorded the religious one.").

7. Ms. Lance's testimony about religious accommodation denials being premised on "lifestyle conflict" also overlooks Supreme Court authority that "[a] religious belief need not be consistent or rational to be protected under Title VII, and an assertion of a sincere religious belief is generally accepted." *Thomas v. Review*

4

*Bd.*, 450 U.S. 707, 714 (1981) ("[T]he resolution of [whether a belief is religious] is not to turn upon a judicial perception of the particular belief or practice in question; religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection.")); *Hernandez v. Comm'r*, 490 U.S. 680, 699, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989) ("It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds.").

8. Moreover, Ms. Lance testified that Bruce Henderson trained her to deny religious accommodations to employees who refused to take the COVID-19 because it was developed with fetal stem cell research, **but then admitted to using aspirin** because it was developed in a "similar manner" as the COVID-19 vaccine. *Id*. at 32. Iit is insane for anyone, let alone Mr. Henderson (a lawyer), to fire employees for taking aspirin, which unequivocally has nothing to do with fetal stem cells because it is an organic compound that was first synthesized in 1899. https://www.bayer.com/en/products/aspirin. However, it is even more horrifying (and ironic) that the largest healthcare insurer in Michigan would publicly take the position that aspirin was developed with fetal stem cells, when (a) the organic medicine was invented before the Food and Drug Administration was even

created (*i.e.*, 1906); and (b) scientists only began studying embryonic stem cells (first in mice) in the "early 1980s."[2]

9. Based on Bruce Henderson not only firing Plaintiff but being in charge of training the other religious accommodation decision-makers, Mr. Henderson's testimony is extraordinarily important. That is why Plaintiff *identified Mr. Henderson as a witness in her August 13, 2024 Mandatory Disclosures* Pursuant to FRCP 26(a)(3). *See* ECF No. 27, PageID.282.

10. That is also why Plaintiff *issued a trial subpoena to Mr. Henderson* through his employer, Blue Cross Blue Shield of Michigan, on September 12, 2024. **Ex. 4**, Bruce Henderson Trial Subpoena.

11. Rule 45 (c)(2)(B) governs objections to a subpoena and provides that written objection "must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed.R.Civ.P. 45(c)(2)(B).

12. Defendant neither objected to the Bruce Henderson trial subpoena nor notified Plaintiff that Mr. Henderson was unavailable within "14 days after the subpoena [was] served."

---

[2] https://www.pewresearch.org/religion/2008/07/17/the-science-behind-stem-cell-research/

13. Instead, Defendant informally told Plaintiff's counsel on October 3, 2024, during the parties' joint pretrial order meetup, that Mr. Henderson was "severely ill and will not be available for trial."

14. Totally shocked, Plaintiff furnished Defendant with a letter requesting answers to the following questions:

    a. Why is Mr. Henderson unavailable to testify?

    b. When did BCBSM learn that Mr. Henderson was ill?

    c. When did Mr. Henderson stop working for BCBSM?

    d. Why did BCBSM not notify Plaintiff of Mr. Henderson availability prior to today?

    e. Is Mr. Henderson immediately available for a de bene esse deposition?

    f. Why was Mr. Henderson not immediately made available for a *de bene esse* deposition when BCBSM learned of his health issues?

**Ex. 5**, 2024.10.03 Email Request for Information.

15. Defendant refused to answer the questions or otherwise provide any details about Mr. Henderson's illness.

16. To ensure that there was no confusion as to how problematic Defendant's surprise news about Bruce Henderson was, Plaintiff issued Defendant a formal letter regarding Defendant's "refus[al] to produce Bruce Henderson at trial." **Ex. 6**, Letter Re Bruce Henderson. The October 3, 2024 letter notes that Defendant failed to file any objection to the Bruce Henderson subpoena and cited

legal authority for the proposition that a party who intentionally dodges a subpoena faces sanctions.

17. On October 4, 2024, Defendant responded, as follows:

> As I explained during our meeting, Mr. Henderson will not be available during trial due to a serious medical condition. I also explained that I am inquiring as to whether I am permitted to share that medical condition, and will let you know as soon as I can. Otherwise, your suggestion of an adverse jury instruction or an immediate deposition is not well taken, and be advised that both will be opposed and we do not concur in your forthcoming motion. Accordingly, you may attach this e-mail correspondence as having satisfied your LR 7.1 obligations. As an aside, you should know that we likewise desired for Mr. Henderson to testify at trial. But our respect for his health and privacy will prevail.

**Ex. 7**, October 4, 2024 Bruce Henderson Email.

18. Suspiciously, ***Defendant did not identify Bruce Henderson in its August 13, 2024 Pretrial Disclosures*** (ECF No. 26), so either Defendant (a) knew about Mr. Henderson's unavailability as early as August 13, 2024 and sandbagged Plaintiff; or (b) Defendant unequivocally lied about its "likewise desire[] for Mr. Henderson to testify at trial." Either scenario means that Defendant engaged in the very serious misconduct of obstructing Plaintiff from access to the most important witness in Defendant's possession from testifying at trial.

19. Trial subpoenas are governed by Rule 45 of the Federal Rules of Civil Procedure. Rule 45 provides that a court "may hold in contempt a person who,

8

having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g). "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court . . . must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." Fed. R. Civ. P. 45(d)(1).

20. Rule 32 of the Federal Rules of Civil Procedure states that a party may use for any purpose the deposition of a witness, whether or not a party, if the court finds "that the witness cannot attend or testify because of age, illness , infirmity, or imprisonment." Fed. R. Civ. P. 32(a)(4). "[L]eave to take a deposition *de bene esse* is within a court's discretion to grant." *Glass v. Metro. Washington Airport Auth.*, 2024 WL 1558712, at *1 (E.D. Va. Apr. 10, 2024).

21. Based on Defendant's failure to timely object to Mr. Henderson's deposition that the incredible prejudice it will cause to Plaintiff, this Court should sanction Defendant by compelling Defendant to produce Mr. Henderson for a *de bene esse* deposition and awarding Plaintiff attorney fees arising out of this motion.

22. Alternatively, if Mr. Henderson is now too ill to participate in a *de bene esse* deposition due to Defendant hiding his health status, Plaintiff will be severely

9

prejudiced, and this Court should grant Plaintiff an adverse jury instruction that states:

> Bruce Henderson is the Defendant's in-house attorney who made the decision to terminate the Plaintiff and he is unavailable to testify. Because he is unable to testify due to Defendant's actions, you can infer that the testimony of Mr. Henderson would have been adverse to the Defendant.

23. With Defendant refusing to answer any questions about Bruce Henderson's status and flouting Rule 45, Plaintiff had no option but to immediately file this Motion in the hope of staving off total disaster.

Respectfully submitted,

HURWITZ LAW PLLC

*/s/ Noah S. Hurwitz*
Noah S. Hurwitz (P74063)
HURWITZ LAW PLLC
*Attorney for Plaintiff*
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com

Dated: October 5, 2024

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LISA DOMSKI,

    Plaintiff,

v.

BLUE CROSS BLUE SHIELD
OF MICHIGAN,

    Defendant.

Case No. 2:23-cv-12023

Hon. David M. Lawson

| | |
|---|---|
| Noah S. Hurwitz (P74063) | Scott R. Knapp (P61041) |
| HURWITZ LAW PLLC | Brandon C. Hubbard (P71085) |
| *Attorneys for Plaintiff* | Nolan J. Moody (P77959) |
| 340 Beakes St., Suite 125 | Maureen J. Moody (P85032) |
| Ann Arbor, MI 48104 | Davina A. Bridges (P85597) |
| (844) 487-9489 | DICKINSON WRIGHT PLLC |
| noah@hurwitzlaw.com | Attorneys for Defendant |
| | 123 W. Allegan Street, Suite 900 |
| Jonathan R. Marko (P72450) | Lansing, MI 48933 |
| MARKO LAW, PLLC | (517) 371-1730 |
| *Attorneys for Plaintiff* | sknapp@dickinsonwright.com |
| 220 W. Congress, Fourth Floor | bhubbard@dickinsonwright.com |
| Detroit, MI 48226 | nmoody@dickinsonwright.com |
| P: (313) 777-7529 / F: (313) 470-2011 | mmoody@dickinsonwright.com |
| jon@markolaw.com | dbridges@dickinsonwright.com |

**BRIEF IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION TO COMPEL THE *DE BENE ESSE* DEPOSITION OF BRUCE HENDERSON AND SANCTION DEFENDANT FOR VIOLATING RULE 45**

1

# ARGUMENT

For her Brief in Support of Plaintiff's Emergency Motion to Compel the *De Bene Esse* Deposition of Bruce Henderson and Sanction Defendant for Violating Rule 45, Plaintiff relies on the facts and law set forth within her Motion.

WHEREFORE, Plaintiff requests that this Honorable Court grant her Motion so that Mr. Henderson can be produced for a *de bene esse* deposition prior to the October 29, 2024 trial.

                        Respectfully submitted,

                        HURWITZ LAW PLLC

                        */s/ Noah S. Hurwitz*
                        Noah S. Hurwitz (P74063)
                        HURWITZ LAW PLLC
                        *Attorney for Plaintiff*
                        340 Beakes St., Ste. 125
                        Ann Arbor, MI 48104
                        (844) 487-9489
                        noah@hurwitzlaw.com

Dated: October 5, 2024

## PROOF OF SERVICE

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each attorney of record on **October 5, 2024**, via:

| | |
|---|---|
| ☐ U.S. Mail | ☐ Fax |
| ☐ Hand Delivered | ☐ Overnight Carrier |
| ☐ Certified Mail | ☐ Other: <u>Mi-FILE Truefiling</u> |
| ☒ ECF System | ☐ Email |

<u>/s/ Noah S. Hurwitz</u>

2