UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LISA DOMSKI,

   Plaintiff,

v.

BLUE CROSS BLUE SHIELD
OF MICHIGAN,

   Defendant.

Case No. 2:23-cv-12023

Hon. David M. Lawson

Mag. Elizabeth A. Stafford

| | |
|---|---|
| Noah S. Hurwitz (P74063)<br>HURWITZ LAW PLLC<br>*Attorneys for Plaintiff*<br>340 Beakes St., Suite 125<br>Ann Arbor, MI 48104<br>(844) 487-9489<br>noah@hurwitzlaw.com<br><br>Jonathan R. Marko (P72450)<br>MARKO LAW, PLLC<br>*Attorneys for Plaintiff*<br>220 W. Congress, Fourth Floor<br>Detroit, MI 48226<br>(313) 777-7529<br>jon@markolaw.com | Scott R. Knapp (P61041)<br>Brandon C. Hubbard (P71085)<br>Nolan J. Moody (P77959)<br>Maureen J. Moody (P85032)<br>Davina A. Bridges (P85597)<br>DICKINSON WRIGHT PLLC<br>Attorneys for Defendant<br>123 W. Allegan Street, Suite 900<br>Lansing, MI 48933<br>(517) 371-1730<br>sknapp@dickinsonwright.com<br>bhubbard@dickinsonwright.com<br>nmoody@dickinsonwright.com<br>mmoody@dickinsonwright.com<br>dbridges@dickinsonwright.com |

**PLAINTIFF LISA DOMSKI'S NOTICE OF AUTHORITY REGARDING DEFENDANT'S PROPOSED JURY INSTRUCTIONS**

  Plaintiff Lisa Domski ("Plaintiff") provides the following Notice of Authority regarding Defendant Blue Cross Blue Shield of Michigan's ("Defendant") proposed jury instructions, and states as follows:

1

In reviewing jury instructions, the Court assesses "whether, taken as a whole, the instructions adequately inform the jury of the relevant considerations and provide the jury with *a sound basis in law* with which to reach a conclusion." *McCombs v. Meijer, Inc.*, 395 F.3d 346, 357 (6th Cir. 2005). For the reasons below, Defendant's proposed jury instructions below are substantially unlawful, prejudicial, confusing and misleading. *See King v. Ford Motor Co.*, 209 F.3d 776, 897 (6th Cir. 2000) (holding that the "district court had discretion to instruct the jury in any manner it deemed appropriate, so long as it correctly stated [the appropriate] substantive law, instructed on the issues relevant to the case at hand, and did not mislead the jury").

It is important to note that while Defendant proposes novel and legal unsupported jury instructions for this matter, Plaintiff adapted its jury instructions from the jury instructions used in a recent case against Blue Cross Blue Shield of Tennessee. Those jury instructions are attached for this Court's reference as **Exhibit 1**.

**I.  Defendant's Proposed Jury Instruction on "Disparate Treatment Direct Evidence Claim Element."**

Defendant's proposed jury instruction on "Disparate Treatment Direct Evidence Claim Element" provides (with problematic language in **bold**):

> To be "direct" evidence, you must find that the evidence establishes actual discriminatory intent by one of Defendant's decision-makers, **such as an explicit statement that the decision-maker was acting on illegal grounds when the employment decision was made**.

2

> **This means that direct evidence is composed of only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor (here, religion). To be "direct evidence," the evidence must establish not only that Defendant was predisposed to discriminate on the basis of religion, but also that it acted on that predisposition. Evidence of discrimination is not considered direct unless an improper motivation is explicitly expressed**. **Direct evidence of discrimination is rare**.

This confusing and hyperbolic explanation of "direct evidence" runs afoul *of* the Supreme Court's express instruction on what constitutes direct evidence of disparate treatment religious discrimination in *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015), *i.e.*, any conduct that "prohibits actions taken with the *motive* of avoiding the need for accommodating a religious practice." To insert direct evidence sound bites from other genres of discrimination and then muddy the water with phrases like "***explicit statement***," "***illegal grounds***," and "***blatant remark***" certainly strays from the well-established law in *Abercrombie*. Even if we stray from the confines of religious discrimination law, "direct evidence" is not what Defendant describes. For example, "a corporate decision maker's express statement of a desire to remove employees in the protected group is direct evidence of discriminatory intent." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). That is certainly the case here where the jury will hear evidence that Defendant proclaimed prior to religious accommodation requests were received that it would not accommodate all employees. Case in point, the Honorable Judith E.

3

Levy opined in a sister case to this one that "statements from the Director of Employee and Labor Relations display disregard or animus towards certain religious beliefs." *Eder v. Blue Cross Blue Shield of Michigan*, No. 23-12024, 2024 WL 4132669, at *5 (E.D. Mich. Sept. 10, 2024). And the Honorable Gershwin A. Drain held in a related case that:

> Here, [Blue Cross Blue Shield of Michigan's] Director of Employee Relations, Mr. Feinbaum, told other employees in management that he doubted the validity of "any" religious accommodation request; stated in human resources meetings that he believes Christianity . . . allows for vaccination against COVID-19; and asserted that religious accommodation interviews would be conducted like "mini depositions" to "pressure" employees to get vaccinated against COVID-19. Indeed, [Blue Cross Blue Shield of Michigan] allegedly instructed employees conducting religious accommodation interviews not to accept "all" religious accommodation requests, even though Defendant did not base denials on a purported undue hardship (*i.e.*, substantially increased costs in relation to the conduct of the business). ***When taken together and accepted as true, these allegations require the conclusion that unlawful discrimination was at least a motivating factor in [Blue Cross Blue Shield of Michigan's] decision to deny Plaintiff's accommodation request***.

*Williams v. Blue Cross Blue Shield of Michigan*, No. 23-CV-12066, 2024 WL 1994258, at *5 (E.D. Mich. May 6, 2024). Accordingly, Defendant's proposed jury instruction would place a higher bar on "direct evidence" that what is legally required.

4

Further, Defendant's claim that "***direct evidence of discrimination is rare***" is a bizarre overreach instruction indicative of how Defendant does not wish to play by the rules in this jury trial. No appellate court has proclaimed that direct evidence is rare. Instead, where the Supreme Court has thoughtfully opined on a topic, the binding precedent is established and it is easy to determine what instructions should be communicated to the jury.

**II.     Defendant's Proposed Jury Instruction on the "Honest Belief Rule"**

Defendant's proposed jury instruction on the "Honest Belief" rule is not legally applicable in a religious discrimination and failure to accommodate case. As stated in Plaintiff's Response to Defendant's Notice of Authority on the Honest Belief Rule, none of the cases Defendant cites either involve religious discrimination claims or support the proposition that an "honest belief" affirmative defense can be raised in a religious discrimination case. ECF No. 95, PageID.2894-2896; *see also Wright v. Murray Guard, Inc.,* 455 F.3d 702 (6th Cir. 2006) (race discrimination claim); *Blizzard v. Marion Tech. College*, 698 F.3d 275 (6th Cir. 2012) (age discrimination claim); *Graham v. Best Buy Stores, L.P.*, 298 Fed. App'x. 487 (6th Cir. 2008) (race discrimination claim); *Clay v. United Parcel Service*, 501 F.3d 695 (6th Cir. 2007) (race discrimination claim). Defendant fails to cite a single Title VII religious discrimination and/or religious accommodation case to support its "honest belief" instruction. That is because religious discrimination cases are legally unlike

other discrimination cases (race, age, gender, etc.). "Title VII does not demand mere neutrality with regard to religious practices—that they be treated no worse than other practices. Rather, it gives them *favored treatment*, affirmatively obligating employers not to . . . discharge any individual . . . because of such individual's 'religious observance and practice.'". *Abercrombie*, 575 U.S. 768, 775.[1] Indeed, liability is firmly established where an employer merely makes religious practice a "motivating factor in an employment decision." *Id*. at 773. Defendant, like other employers across the county, cannot be acquitted of liability upon claiming that they "honest believed" that their employees harbored insincere religious beliefs. Only the jury gets the final say on whether Plaintiff's religious beliefs were sincere— "credibility issues such as the sincerity of an employee's religious beliefs are quintessential fact questions [and] they ordinarily should be reserved for the factfinder at trial[.]" *Equal Emp. Opportunity Comm'n v. Publix Super Markets, Inc.*, 481 F. Supp. 3d 684, 700 (M.D. Tenn. 2020).

### III. Defendant's Proposed Jury Instruction on the Definition of "Sincerely Held."

---

[1] Defendant acknowledges that "the law gives employees with religious beliefs favored treatment, affirmatively obligating employers not to discharge any individual because of such individual's religious observance and practice" and that "[t]he law requires otherwise-neutral policies to give way to the need for an accommodation" in Defendant's proposed jury instruction on "Prohibitions Against Religious Discrimination in the Workplace."

Defendant's proposed jury instruction on the definition of "Sincerely Held" provides (with problematic language in **bold**):

> If you find that Plaintiff's professed opposition to COVID-19 vaccination is religious, you must then determine whether her beliefs are sincerely held. **An employee's sincerity is largely a matter of credibility. You need not take Plaintiff at her word that she is sincere in her beliefs.**

To instruct the jury that it need not take Plaintiff at her word is confusing, misleading, and prejudicial because no other proposed instructions tell jurors not to take other witnesses at their word. In fact, the parties have submitted a Joint Proposed Jury Instruction on the "Credibility of Witnesses" that outlines seven questions for jurors to ponder as to credibility:

1. Did the witness impress you as one who was telling the truth?

2. Did the witness have any particular reason not to tell the truth?

3. Did the witness have a personal interest in the outcome of the case?

4. Did the witness seem to have a good memory?

5. Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

6. Did the witness appear to understand the questions clearly and answer them directly?

      7.     Did the witness's testimony differ from other testimony or other evidence?

Once again, we need not argue contentiously about the meaning of "sincerely held" because the Supreme Court requires juries to give "great weight" to an individual's testimony about their religious beliefs, which is alone adequate to demonstrate sincerity. *United States v. Seeger*, 380 U.S. 163, 184 (1965).

Additionally, Defendant butchers *Ackerman v. Washington* in an attempt to get the jury to "undermine" Plaintiff's sincerity, but Defendant omits the critical *Ackerman* language that is required in any "sincerely held" instruction, *i.e.*, that the jury may consider the "length of adherence, knowledge about the belief system, and the existence of religious literature and teachings supporting the belief." 16 F.4th 170, 181 (6th Cir. 2021) (citing *Fox v. Washington*, 949 F.3d 270, 277-78 (6th Cir. 2020)). It would therefore be unlawful to pass on Defendant's proposed instruction to the jury.

**IV.    Defendant's Proposed Jury Instruction on "An Employer's Right To Make A Limited Inquiry Into An Employee's Beliefs."**

Defendant cites two non-binding cases, *Bushouse v. Local Union 2209, United Auto., Aerospace & Agric. Implement Workers of Am.*, 164 F.Supp.2d 1066 (N.D. Ind. 2001) and *E.E.O.C. v. Papin Enterprises, Inc.*, No. 6:07CV1548ORL28GJK, 2009 WL 2256023 (M.D. Fla. July 28, 2009), for the flawed instruction that an employer is "permitted by law to make a limited factual

inquiry into the ***religious nature"*** of the employee's beliefs. Again, it is wildly inappropriate to grasp for unpublished cases from 2001 and 2009 when the Supreme Court has given us a definitive roadmap for how to treat religious discrimination cases. Namely, in assessing whether a belief is sufficiently *religious* to merit protection, the Supreme Court instructs: (a) "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others" (*Thomas v. Rev. Bd.*, 450 U.S. 707, 714 (1981)); (b) courts should "not presume to determine the place of a particular belief in a religion or the plausibility of a religious claim" (*Emp. Div. Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 887 (1990)); and (c) "it is not for the Court to say that the religious belief of the plaintiffs are mistaken or unreasonable" (*Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 686 (2014)). "It is not the Court's role to question the religious validity of sincerely-held beliefs, including in the context of claims of religious discrimination in violation of Title VII." *Bass v. T-Mobile USA, Inc.*, No. 22-11975, 2024 WL 1315843, at *6 (E.D. Mich. Mar. 27, 2024). "In such an intensely personal area, of course, the claim of the registrant that his belief is an essential part of a religious faith must be given great weight. . . . The validity of what he believes cannot be questioned." *Mohamed v. 1st Class Staffing, LLC*, 286 F. Supp. 3d 884, 901 (S.D. Ohio 2017). All of which is to say, "**the truth of a belief is not open to question**." *Ackerman*, 436 F. Supp. 3d 1002, 1012. Accordingly, Defendant's proposed jury instruction must be stricken.

**V.      Defendant's Proposed Jury Instruction on the "Duty of Cooperation."**

Defendant's proposed jury instruction on the "Duty of Cooperation" misstates the legal framework of a religious accommodation case. The proper framework for analyzing "cooperation" in the religious accommodation context requires the employer to *first* establish that it offered the employee a "reasonable accommodation" *before* assessing whether the employee cooperated with the employer's accommodation process. That is super important because Defendant does not claim that it made any effort to accommodate Plaintiff's religious beliefs. Meaning, cooperation is not a jury question in this matter.

It is also noteworthy that Defendant is engaging in deceptive tactics, substituting in and out legal authority as a last second effort to swing this case in its favor. Defendant's prior "Notice of Authority Regarding Cooperation" cited *Bass v. T-Mobile USA, Inc.*, No. 22-11975, 2024 WL 1315843 (E.D. Mich. Mar. 27, 2024) and *Smith v. Pyro Min. Co.*, 827 F.2d 1081 (6th Cir. 1987). Now, Defendant's proposed jury instructions on the "Duty of Cooperation" dropped those cases because they cut against Defendant's position. In *Bass*, the court began its analysis by acknowledging that "***Title VII places the affirmative duty to reasonably accommodate on the employer***." *Bass*, No. 22-11975, 2024 WL 1315843, at *7. "An employer meets its obligation under Title VII when it demonstrates that it has offered a reasonable accommodation to the employee." *Id*. (quoting *Ansonia Bd. of*

10

*Educ. v. Philbrook*, 479 U.S. 60, 69 107 S. Ct. 367, 372, 93 L. Ed. 2d 305 (1986)). While it is true that the *Bass* court noted that "[e]mployees are expected to make some effort to cooperate with an employer's attempt at accommodation", *Id.*, the court did not analyze whether the employee made an effort to cooperate with the employer's accommodation because the court held that "T-Mobile has not met its burden to prove it offered [the employee] a reasonable accommodation." *Id.* at *8. Hence, it is improper to scrutinize the employee's efforts to "cooperate" until the employer first satisfies its burden to prove that it offered a reasonable accommodation. Meaning, in order for a jury to receive an instruction on Plaintiff's "duty" to cooperate, it must first find that Defendant offered Plaintiff a reasonable accommodation.

Further, in *Smith*, the Sixth Circuit affirmed the district court's judgment that the employer "has not met its **obligation** under Title VII" to reasonably accommodate the employee's sincerely held religious beliefs. *Smith*, 827 F.2d at 1088. The Sixth Circuit observed that, following Congress' amendment to Title VII in 1972, "courts no longer dispute that Title VII **mandated** reasonable accommodation" for the religious needs of their employees. *Id*. Further, the Court noted that, with respect to what is a "reasonable accommodation", it "comes down to a determination of 'reasonableness' under the unique circumstances of the individual employer-employee relationship" and "[t]he trier of fact is in the best

11

position to weigh these considerations." *Id*. at 1085 (quoting *United States v. Albuquerque*, 545 F.2d 100, 114 (10th Cir. 1976). Hence, **the employer in Smith did not act reasonably to accommodate its employee** by forcing him arrange a shift trade "when the employee considers it a sin to arrange such a swap." *Id*. at 1088.

As for the two cases that Defendant cites for "Duty of Cooperation," *Riselay v. Sec'y of Health & Hum. Servs.*, 929 F.2d 701 (6th Cir. 1991) and *Weeden v. Frank*, 16 F.3d 1223 (6th Cir. 1994), they are inapposite. The *Riselay* court first determined that the employer reasonably attempted to accommodate the employee's religious objections. Then the court found that the employer's reasonable attempt to accommodate was "impeded by [the employee's] refusal to cooperate." *Riselay*, 929 F.2d 701 (Table), 19941 WL 44319 at *6. That is because the employee "did not respond" to the employer's letter seeking from the employee a "third-party statement of the condition which prevented him from working" when the employee outright refused to provide certifications from his Christian Science practitioner regarding his need for extended sick leave. *Id*. The *Riselay* employee refused an opportunity to explain his "condition." That did not occur here. Plaintiff unambiguously put Defendant on notice of her religious beliefs because she communicated a detailed religious conflict based on fetal stem cell research. Defendant indisputably did not offer any sort of accommodation.

Likewise, in *Weeden*, the employer first established that the accommodation procedure at issue "was not unreasonable, nor was it unduly burdensome toward [the employee's] attempt to have her religious practice accommodated." *Weeden*, 16 F.3d 1223 (Table), 1994 WL 47137, at *2. Next, the court observed that the employee refused to sign a privacy waiver permitting the defendant to "collect information about whether she was actually exercising her religious beliefs", and the privacy waiver was necessary because the employee was required to waive her rights under the Privacy Act, 5 U.S.C. § 552a(e)(7), which is not at issue in this case. *Id*.

## CONCLUSION

Accordingly, this Court should reject Defendant's proposed jury instructions.

Respectfully submitted,

HURWITZ LAW PLLC

*/s/ Noah S. Hurwitz*
Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
HURWITZ LAW PLLC
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
grant@hurwitzlaw.com
*Attorneys for Plaintiff*

Dated: October 28, 2024

13

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of October 2024, a copy of the foregoing document was filed electronically. Notice of this filing is sent by operation of the Court's electronic filing system to below counsel of record indicated on the electronic receipt.

/s/ *Noah S. Hurwitz*
Counsel for Plaintiff
