UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LISA DOMSKI,

        Plaintiff,

v.

BLUE CROSS BLUE SHIELD
OF MICHIGAN,

        Defendant.

Case No. 2:23-cv-12023

Hon. David M. Lawson

Hon. Mag. Elizabeth A. Stafford

---

Noah S. Hurwitz (P74063)
HURWITZ LAW PLLC
340 Beakes Street, Suite 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
*Attorneys for Plaintiff*

Jonathan R. Marko (P72450)
MARKO LAW, PLLC
220 W. Congress, Fourth Floor
Detroit, MI 48226
(313) 777-7529
jon@markolaw.com
*Attorneys for Plaintiff*

Scott R. Knapp (P61041)
Brandon C. Hubbard (P71085)
Nolan J. Moody (P77959)
Maureen J. Moody (P85032)
DICKINSON WRIGHT PLLC
123 W. Allegan Street, Suite 900
Lansing, MI 48933
(517) 371-1730
sknapp@dickinsonwright.com
bhubbard@dickinsonwright.com
nmoody@dickinsonwright.com
mmoody@dickinsonwright.com
*Attorneys for Defendant*

---

# DEFENDANT BLUE CROSS BLUE SHIELD OF MICHIGAN'S
# <u>TRIAL BRIEF</u>

## I.   STATEMENT OF FACTS

### A.   The Policy

As a result of the COVID-19 pandemic, Blue Cross Blue Shield of Michigan ("BCBSM") on October 31, 2021, implemented a COVID-19 vaccination policy ("Policy"). Pursuant to the Policy, all employees were required to have at least the first dose of a two-dose vaccine (or be fully vaccinated) by December 8, 2021, or have an approved religious or medical accommodation to the Policy by that date, to avoid being separated from the company. Employees who neither qualified for an accommodation to the Policy, nor received the vaccine, were placed on unpaid leave effective December 9, 2021, and terminated pursuant to the Policy on January 5, 2022. ECF No. 19, PageID.137, ¶¶ 10–11.

### B.   The Accommodation Process

The religious accommodation process consisted of employees: (i) completing an application formally requesting a religious accommodation; and (ii) participating in an interview in which BCBSM made a limited factual inquiry into, and sought information regarding the request for an accommodation. ECF No. 66-2, PageID.1943.

After each employee's interview was conducted, the interviewers would "come together to discuss what the interviewee had shared" during the interview (ECF No. 66-4, PageID.1954, 30: 12 – 14), and make a decision to grant or deny the employee's accommodation request.

1

### C.    Plaintiff's Accommodation Request

Plaintiff submitted an application on November 10, 2021, formally requesting a religious accommodation to the Policy. Plaintiff's application attached a short letter. BCBSM Trial Exhibit 6. The letter stated that Plaintiff "would be sinning and violating the sanctity of [her] conscience" if she received the vaccine because they were "either developed or tested using fetal cells that originated in abortion," and Plaintiff believes that "human life begins at conception." *Id.* Plaintiff's letter incorporated material pulled from the internet.

On December 1, 2021, Plaintiff was invited to participate in an interview with BCBSM to further explain her beliefs, and the reason(s) why she requested an accommodation to the Policy. ECF No. 66-3, PageID.1949-50. Plaintiff's accommodation interview was conducted by BCBSM's Human Resources Manager, Jeffrey Walters, and Assistant General Counsel, Bruce Henderson. *Id.*

When Messrs. Walters and Henderson attempted to ask Plaintiff questions about her accommodation request and religious beliefs, however, Plaintiff declined to answer, repeating instead that she would "rely on her letter that was submitted with her request for an accommodation." *Id.*

### D.    Plaintiff's Termination

Based on the particularized facts presented to Messrs. Walters and Henderson, Plaintiff's accommodation request was denied on December 2, 2021. Plaintiff did

not thereafter become vaccinated (ECF No. 19, PageID.150, ¶ 55), and her employment was terminated pursuant to the Policy on January 5, 2022. *Id.* ¶ 56.

## II.   STATUS OF LITIGATION AS IT RELATES TO TRIAL

BCBSM filed multiple pre-trial motions seeking *in limine* rulings on evidentiary matters. The Court resolved a number of these pre-trial motions with orders that will impact trial proceedings.  Those pre-trial orders are as follows:

1.   Plaintiff may not present expert witness testimony (ECF No. 57).

2.   Plaintiff may call lay witnesses to testify about the sincerity of Plaintiff's alleged religious beliefs, but the witnesses may not testify that Plaintiff's religion motivated BCBSM's employment decision. Plaintiff may not offer overly cumulative lay testimony regarding the sincerity of her beliefs. ECF No. 33 (BCBSM's Motion); ECF No. 80, PageID.2279-80 (Court's ruling).

3.   Plaintiff's counsel may not ask BCBSM's witnesses questions about staff reductions or reductions-in-force. ECF No. 34 (BCBSM's Motion); ECF No. 80, PageID.2304-05 (Court's ruling).

4.   Plaintiff may not introduce into evidence the following 5 documents:

   a.   Catechism of the Catholic Church

   b.   Catechism of the Catholic Church pt. 2

   c.   Letters to Pharmaceutical Companies

   d.   Secretariat Conscience Exemption Letter

   e.   Instruction Dignitas Personae. ECF No. 35 (BCBSM's Motion); ECF No. 80, PageID.2298-2300 (Court's ruling).

5.   Plaintiff may not call Bruce Henderson to testify. ECF No. 68 (BCBSM's Motion); ECF No. 80, PageID.2362 (Court's ruling).

6.   Plaintiff may not call Jana Lance for her case-in-chief, but may call Ms. Lance for rebuttal if "it becomes relevant[.]" ECF No. 97, PageID.3008.

3

Plaintiff may seek permission outside the jury's presence to call her and make an offer of proof. ECF No. 99, PageID.3047.

7. As described in the chart below, Plaintiff may not introduce various documents in her case-in-chief, but may use them for impeachment "if the proper foundation is laid." ECF No. 97, 3000.

| Plaintiff's Proposed Exhibit Number in JFPTO | Description | Bates No. | Ruling |
|---|---|---|---|
| 60. | Administrator, George Rieveschl, Inventor of Benadryl, Dies (Sep. 27, 2007) | | Plaintiff shall not offer for her case-in-chief. ECF No. 99, PageID.3046. |
| 61. | Community Invited To Free Christmas Dinner In Taylor, CBS News (2011) | | Plaintiff shall not offer for her case-in-chief. ECF No. 99, PageID.3046. |
| 62. | Confirmation Certificate | | Plaintiff may seek admission as part of her case-in-chief. ECF No. 99, PageID.3046. |
| 63. | Covid-19 Vaccines & Fetal Cells, MDHHS | | Plaintiff shall not offer for her case-in-chief. ECF No. 99, PageID.3046. |
| 64. | Dave Gorgon, "True meaning of Christmas" dinner, The News Herald (2019) | | Plaintiff shall not offer for her case-in-chief. ECF No. 99, PageID.3046. |
| 65. | Domski family hosting annual free dinner, Times-Herald Newspapers (2013) | | Plaintiff shall not offer for her case-in-chief. ECF No. 99, PageID.3046. |

| 66. | Extraordinary Minister of Holy Communion Certificate | | Plaintiff may seek admission as part of her case-in-chief. ECF No. 99, PageID.3046. |
|---|---|---|---|
| 67. | FAQs About TYLENOL® | | Plaintiff shall not offer for her case-in-chief. ECF No. 99, PageID.3046. |
| 68. | FDA Sends Claritin Over the Counter, CNN (Nov. 27, 2002) | | Plaintiff shall not offer for her case-in-chief. ECF No. 99, PageID.3046. |
| 69. | Health COVID-19 Vaccine Addressing Concerns, UCLA (Sep. 4, 2024) | | Plaintiff shall not offer for her case-in-chief. ECF No. 99, PageID.3046. |
| 70. | History of Fetal Tissue Research and Transplants, Charlotte Lozier Institute (Nov. 30, 2016) | | Plaintiff shall not offer for her case-in-chief. ECF No. 99, PageID.3046. |
| 71. | History of Stem Cell Use, University of Nebraska Medical Center | | Plaintiff shall not offer for her case-in-chief. ECF No. 99, PageID.3046. |
| 72. | Ibuprofen History, West Virginia University | | Plaintiff shall not offer for her case-in-chief. ECF No. 99, PageID.3046. |
| 73. | Jessica D'Alfonso, Domski family does it again, The News Herald (2018) | | Plaintiff shall not offer for her case-in-chief. ECF No. 99, PageID.3046. |
| 74. | Justin Brumbaugh, Brian A. Aguado, Tamra Lysaght, Lawrence S.B. Goldstein, Stem Cell | | Plaintiff shall not offer for her case-in-chief. ECF No. 99, PageID.3046. |

| | | | |
|---|---|---|---|
| | Reports (Dec. 13, 2023) | | |
| 75. | Maria Rosa Montinari; Sergio Minelli; Raffaele De Caterina, The first 3500 Years of Aspirin History from its Roots- A Concise Summary (Sep. 4, 2024) | | Plaintiff shall not offer for her case-in-chief. ECF No. 99, PageID.3046. |
| 76. | Motrin and Ibuprofen FAQs | | Plaintiff shall not offer for her case-in-chief. ECF No. 99, PageID.3046. |
| 77. | Setting the Stage Fetal Research, Fetal Tissue Research, and Historical Timeline of Regulation and Legislation, National Library of Medicine | | Plaintiff shall not offer for her case-in-chief. ECF No. 99, PageID.3046. |
| 78. | SUDAFED® Frequently Asked Questions (FAQ) SUDAFED® | | Plaintiff shall not offer for her case-in-chief. ECF No. 99, PageID.3046. |
| 79. | The 2017 "True Meaning of Christmas" dinner, City of Taylor | | Plaintiff shall not offer for her case-in-chief. ECF No. 99, PageID.3046. |
| 80. | The History of Pepto Bismol, Pepto Bismol | | Plaintiff shall not offer for her case-in-chief. ECF No. 99, PageID.3046. |
| 81. | True Meaning of Christmas Dinner, Explore Taylor, MI | | Plaintiff shall not offer for her case-in-chief. ECF No. 99, PageID.3046. |

| 82. | TUMS- America's #1 Heartburn Medicine | | Plaintiff shall not offer for her case-in-chief. ECF No. 99, PageID.3046. |
|---|---|---|---|
| 83. | You Asked, We Answered Do the COVID-19 Vaccines Contain Aborted Fetal Cells Nebraska Medicine (Aug. 18, 2021) | | Plaintiff shall not offer for her case-in-chief. ECF No. 99, PageID.3046. |
| 84. | Lisa Domski Photos | EDMI00035444-48, EDMI00035450-63, EDMI00035465-71 | Plaintiff may limit her photographic evidence to the presentation of 5 images, and must seek permission from the Court before showing the photographs to the jury. ECF No. 99, PageID.3046. |
| 85. | 2020 NBU Performance Review Lisa Domski 12.15.2020 | EDMI00035472 | Plaintiff may seek admission during her case-in-chief, but must establish foundation and relevancy. ECF No. 99, PageID.3047. |
| 86. | Certificates of Achievement | EDMI00035464; EDMI00035473 | Plaintiff may seek admission during her case-in-chief, but must establish foundation and relevancy. ECF No. 99, PageID.3047. |
| 87. – 131. | | BCBSM0004157, BCBSM0004571, BCBSM0005105, BCBSM0015089, BCBSM0003443, BCBSM0008559, BCBSM0021570-21572, | Plaintiff may not use these documents for her case-in-chief, but may use them for impeachment purposes, if she can lay a proper foundation. ECF No. 99, PageID.3047. |

7

| | | | |
|---|---|---|---|
| | | BCBSM0070075, BCBSM0001063, BCBSM0054841-54843, BCBSM0006664-0006669, BCBSM0075698, BCBSM0005922-5923, BCBSM0013889-13890, BCBSM0016449, BCBSM0016187-0016189, BCBSM0057709, BCBSM0020079-0020081, BCBSM0057710, BCBSM0007009-0007011, BCBSM0013098-0013105 BCBSM0002810-0002812, BCBSM0003634-0003635, BCBSM0027128-0027129, BCBSM0016366, BCBSM0003842-0003844, BCBSM0013889-0013890, BCBSM0000012-0000015, BCBSM0004254-0004256, BCBSM0003488-0003489, BCBSM0003501, | |

| | | BCBSM0003747-0003755, BSBSM0006873-0006899, BCBSM0011446-0011447, BCBSM0023622-0023630, BCBSM0004936-0004937, BCBSM0021953-0021954, BCBSM0027133-0027135, BCBSM0003477-0003480 BCBSM00034703, BCBSM004150, BCBSM0003704-07, BCBSM0012420, BCBSM0006584, BCBSM0008440 | |
|---|---|---|---|

Two pre-trial motions remain pending:

1.     ECF No. 37 – BCBSM's Motion *in Limine* to Exclude Tricia Keith Video; and

2.     ECF No. 66 – BCBSM's Motion for Protective Order Regarding Rudy Makupson.

## III.   PLAINTIFF'S CLAIMS

On January 19, 2024, Plaintiff filed her Amended Complaint asserting claims under 42 U.S.C. § 2000e, *et seq.* ("Title VII") for failure to accommodate (Count I) and disparate treatment (Count II), and a claim under Michigan's Elliot-Larsen Civil

Rights Act, MCL 37.2101, *et seq.* ("ELCRA") for disparate treatment (Count III). ECF No. 18, PageID.119-126.

### A.    Failure To Accommodate (Count I)

Plaintiff claims that BCBSM discriminated against her by failing to accommodate her sincerely held religious beliefs against COVID-19 vaccination. To succeed on this claim, Plaintiff must prove by a preponderance of evidence that: (1) she holds a sincere religious belief that conflicts with an employment requirement; (2) she informed BCBSM about the conflict; and (3) she was discharged for failing to comply with the conflicting employment requirement. *Bolden v. Lowes Home Centers, LLC*, 783 Fed. App'x. 589, 597 (6th Cir. 2019).

#### 1.    Religious Beliefs

"Title VII protects all aspects of religious observance and practice." *DeVore v. Univ. of Ky. Bd. of Trustees*, --4th--, 2024 WL 4471281, *4 (6th Cir. Oct. 11, 2024) (internal quotation omitted). "While this means that religion is broadly defined, the definition does not expand to include every belief, opinion, or ideology." *Speer, et al. v. UCOR, LLC*, No. 3:22-cv-426, 2024 WL 4370773, *5 (E.D. Tenn. Oct. 1, 2024).

Beliefs that are "essentially social, political, or philosophical, a matter of personal preference, or the product of a merely personal moral code," are not religious beliefs protected by Title VII. *Devore*, 2024 WL 4471281, at *4 (Plaintiff

10

did not establish a religious conflict with employer's vaccination policy, where her objection to same was that being "coerced" to vaccinate or test for COVID-19 "goes against all that God is and how He would have [plaintiff] live," because coercion is not "equitable" or "fair"), quoting *Welsh v. United States,* 398 U.S. 333, 342-43 (1970).

While overlap between a religious and political belief does not necessarily place the belief outside the scope of the law's protections, the belief must be part of a comprehensive religious belief system, and not simply an isolated teaching. *EEOC Compliance Manual on Religious Discrimination* § 12–I(A)(1) (Jan. 15, 2021); *Geerlings v. Tredyffrin/Easttown School Dist.*, No. 21-cv-4024, 2021 WL 4399672, *8 (E.D. Pa. Sept. 27, 2021) (plaintiff not likely to succeed on religious discrimination claim where his belief against masking for COVID-19 was an isolated personal belief, given that he allowed his son to wear helmets and headgear for sporting events).

### 2.    Sincerity

If a plaintiff asserts a belief that is religious on its face, she must still prove that the belief is sincerely held, and "not merely a pretextual assertion of a religious belief in order to obtain an accommodation." *Speer*, 2024 WL 4370773, at *6, citing *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 717, n. 28 (2014). The factfinder need not take a plaintiff at her word that she is sincere in her beliefs. *Id.*

Factors that—either alone or in combination—might undermine an employee's credibility include:  whether the employee has acted in a manner inconsistent with the professed belief; whether the accommodation sought is a particularly desirable benefit that is likely to be sought for nonreligious reasons; whether the timing of the request renders it suspect; and whether the employer otherwise has reason to believe the accommodation is not sought for religious reasons. *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, U.S. Equal Opportunity Employment Commission (July 12, 2022 update), at L.2; *see also Speer*, 2024 WL 4370773, at *6 (to determine sincerity, "the factfinder looks at a variety of factors such as the plaintiff's length of adherence, knowledge about the belief system, and the existence of religious literature and teachings supporting the belief…[and] past behavior, including whether they have wavered in their dedication to the belief.") (internal quotation omitted).

### 3.     Employer's Right To Inquiry

An employer may make a limited factual inquiry into both the religious nature and sincerity of an employee's professed belief. *Bushouse v. Local Union 2209, United Auto., Aerospace & Agric. Implement Workers of Am.*, 164 F.Supp.2d 1066, 1075 (N.D. Ind. 2001) (…"Title VII does permit an inquiry into the sincerity and religious nature of an employee or member's purported beliefs before the duty to

12

accommodate such a belief arises…"); *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, U.S. Equal Opportunity Employment Commission (July 12, 2022 update), at L.2.

"[I]f the rule were otherwise, an employer would have to grant an accommodation any time an employee requested one, even if there were not a sincerely-held religious belief but instead only a purely personal or stylistic preference." *E.E.O.C. v. Papin Enterprises, Inc.*, No. 6:07-cv-1548-ORL-28GJK, 2009 WL 2256023, at *4 (M.D. Fla. July 28, 2009) (further noting that "[t]he EEOC's own publications acknowledge that some inquiry into the sincerity of an employee's belief as well as into the religious nature of the belief is appropriate.").

### B.    Disparate Treatment (Counts II-III)

Plaintiff is attempting to prove disparate treatment with both "direct" and "indirect" evidence of discrimination.

### 1.    "Indirect" Or Circumstantial Claims

When a discrimination claim is based on "indirect" or circumstantial evidence, the plaintiff must prove by a preponderance of the evidence that: (1) she was a member of a protected class; (2) she was subject to an adverse employment action; (3) she was qualified for her position; and (4) similarly situated employees were treated more favorably. *Bolden,* 783 Fed. App'x. at 594.

If Plaintiff establishes all of these elements, the burden shifts to BCBSM to offer a legitimate, non-discriminatory explanation for Plaintiff's termination. *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007). Violating an employer's work policy is a legitimate, non-discriminatory explanation for an employee's termination. *See e.g. Minnis v. McDonnell Douglas Technical Srvs Co.*, 162 F. Supp. 2d 718, 735 (E.D. Mich. 2001) ("Defendants have articulated a non-discriminatory reason for Plaintiff's discharge, i.e., he was fired for violating MDTSC policy against sexual harassment."). If BCBSM satisfies this burden, then the presumption of intentional discrimination is negated.

Once BCBSM offers a legitimate, non-discriminatory explanation for Plaintiff's termination, the burden shifts back to Plaintiff to prove that BCBSM's non-discriminatory justification was not credible, and is merely a pretext for intentional discrimination. *Tepper*, 505 F.3d at 515-16.

For purposes of establishing the "similarly situated" element, Plaintiff must introduce evidence of a BCBSM employee, with different religious beliefs than Plaintiff, who was granted a religious accommodation to the Policy, but is otherwise comparable to Plaintiff in all relevant aspects. *Curry v. SBC Communications, Inc.*, 669 F. Supp. 2d 805, 826 (E.D. Mich. 2009).

At a minimum, to satisfy the similarly situated requirement, Plaintiff must demonstrate that the comparator employee was treated more favorably by the same

14

decision-makers who denied Plaintiff's accommodation request (i.e., Messrs. Walters and Henderson). *Barry v. Noble Metal Processing, Inc.*, 276 Fed. App'x. 477, 481 (6th Cir. 2008) ("This court has previously held that a plaintiff and a comparable employee are not similarly situated where they were disciplined by different ultimate decision-makers"); *Little v. Ill. Dept. of Rev.*, 369 F.3d 1007, 1012 (7th Cir. 2004) ("A similarly-situated employee must have been disciplined, or not, by the same decisionmaker who imposed an adverse employment action on the plaintiff"); *Forrest Transit Mgmt of Charlotte, Inc.*, 245 Fed. App'x. 255, 257 (4th Cir. 2007) ("If different decision-makers are involved, employees are generally not similarly situated").

### 2.    Direct Evidence Claims

Direct evidence of discrimination "is evidence that, if believed, requires no inferences to conclude that unlawful discrimination was a motivating factor in the employer's action." *Curry*, 669 F. Supp. 2d at 825.

To succeed on her "direct" evidence claim, Plaintiff must prove actual discriminatory intent by one of BCBSM's decision-makers (here, either Bruce Henderson or Jeff Walters), such as an explicit statement that the decision-maker was acting on illegal grounds when the employment decision was made. *Id.* This means that direct evidence is "composed of only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some

impermissible factor" (here, religion). *Equal Emp. Opportunity Comm'n v. Publix Super Markets, Inc.*, 481 F. Supp. 3d 684, 697 (M.D. Tenn. 2020). To be "direct evidence," the evidence must establish not only that BCBSM "was predisposed to discriminate on the basis of [religion,] but also that [it] acted on that predisposition." *Id.* at 698.

Further, to constitute direct evidence of discrimination, a statement must not only be facially discriminatory, but also causally related to the specific adverse employment action taken. *See E.E.O.C. v. Chrysler LLC*, 610 F. Supp. 2d 818, 828 (E.D. Mich. 2009) (plaintiff in a Title VII action did not have "direct evidence" of discrimination where there was nothing "that connect[ed] [the allegedly discriminatory] statements to the adverse employment decision alleged" and, "[a]bsent such connection, the statements d[id] not constitute direct evidence of discrimination."); *Dyer v. Community Memorial Hosp.*, No. 03-10250-BC, 2006 WL 435721, *3 (E.D. Mich. Feb. 21, 2006) ("the plaintiff attempting to establish a claim of [Title VII] discrimination using direct evidence must also point to an action or omission made with respect to the plaintiff's employment and connect the action to the discriminatory intent."). Direct evidence of discrimination is rare. *Mustafa v. Ford Motor Co.*, 691 F. Supp. 3d 796, 803 (E.D. Mich. 2023).

## IV.    BCBSM'S DEFENSES

### A.    Duty To Cooperate

"An employee who fails to cooperate with an employer's reasonable request for verification of the sincerity or religious nature of a professed belief risks losing any claim that the employer improperly denied an accommodation." *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, U.S. Equal Opportunity Employment Commission (July 12, 2022 update), L.2; *Smith v. Pyro Min. Co.*, 827 F.2d 1081, 1085 (6th Cir. 1987) ("Although the burden is on the employer to accommodate the employee's religious needs, the employee must make some effort to cooperate with an employer's attempt at accommodation."); *Bass v. T-Mobile USA, Inc.*, --F. Supp. 3d--, 2024 WL 1315843, *7 (E.D. Mich. Mar. 27, 2024) ("Employees are expected to make some effort to cooperate with an employer's attempt at accommodation.").

In *Weeden v. Frank*, for example, a part-time letter carrier for the United States Postal Service (USPS), requested an accommodation permitting her to take Saturdays off in observation of the Sabbath. 16 F.3d 1223, 1994 WL 47137, *1 (6th Cir. 1994). Upon learning of that request, USPS sought to verify, through the collection of corroborative information, that the plaintiff's request was sincere and religiously based. *Id.* at *2. The plaintiff, however, refused to waive her privacy rights so that USPS could acquire such corroborative information, and was

subsequently terminated for failing to work on Saturdays. *Id.* Plaintiff then sued USPS under Title VII alleging religious discrimination and failure to accommodate. *Id.* at \*1–2.

The Sixth Circuit concluded that plaintiff "is a non-denominational religious practitioner who observes the Saturday Sabbath" and satisfied her *prima facie* case, but nevertheless affirmed summary judgment for USPS on both claims. *Id.* at \*1–2. The court held that USPS's process for requesting and recording corroborative information in support of the plaintiff's request "was not unreasonable," nor was it applied discriminatorily. *Id.* at \*2. In the absence of such unreasonableness or discrimination, plaintiff was bound to either waive her privacy rights, i.e., cooperate with USPS's attempt, or forego the right to accommodation by USPS. *Id.* When the plaintiff failed to cooperate with her employer's investigation, the court found that she forewent her right to an accommodation. *Id.* ("Because [plaintiff] did not cooperate with the postal service's attempt to accommodate her religious beliefs by waiving her privacy rights, she rendered an accommodation impossible").[1]

---

[1] Plaintiff has previously argued that BCBSM is "erroneously conflat[ing] 'notice' with 'cooperation.'" ECF No. 95, PageID.2428. This is untrue. As demonstrated in *Weeden* and *Riselay*, a plaintiff can establish a *prima facie* case (inclusive of the notice element), but *still* be precluded from a finding of liability due to her failure to cooperate with the employer. Plaintiff has also argued that an employee's duty to cooperate only arises after the employer has offered a reasonable accommodation. *Id.* at PageID.2431. This is also wrong. The EEOC Guidelines explicitly state that an employee's duty to cooperate is triggered by an employer's limited inquiry into her professed beliefs: "An employee who fails to cooperate with an employer's

Similarly, in *Riselay v. Secretary of Health and Human Services*, 929 F.2d 701, 1991 WL 44319 (6th Cir. 1991), a claims representative for the United States Department of Health and Human Services (DHS), sought a religious exemption to a DHS policy giving employees 13 days of sick leave per year. *Id*., at *1. The plaintiff notified DHS that he had been dealing with bouts of severe stomach and intestinal pain, but that he was a practitioner of the Church of Christian Science, and was thus exercising his right to deal with his condition through prayer and religious study. *Id.*

The plaintiff further submitted formal requests for additional sick leave—requesting leave well in excess of what he was allotted. *Id.* at *1–2. DHS supervisors repeatedly notified the plaintiff that his requests were insufficient, and requested an attestation from a third-party of his medical diagnosis. The plaintiff claimed the request violated his Christian Scientists beliefs, and failed to respond to two letters notifying him of his requests' inadequacies. *Id.* at *3. DHS then clarified that the attestation could be from a Christian Science Practitioner, and did not have to contain a medical diagnosis, but needed to include information regarding why the plaintiff was unable to work. *Id.* at **3, 6. The plaintiff thereafter filed charges of religious discrimination with the EEOC. *Id.* at *4.

---

reasonable request for verification of the sincerity or religious nature of a professed belief risks losing any claim that the employer improperly denied an accommodation." EEOC Guidelines, L.2.

The court held that the plaintiff's failure to respond to the DHS's letters "impeded [DHS's] attempts to accommodate his religious objections and resulted in his termination from employment," and affirmed summary judgment on that basis. *Id.* at \*6. And "[b]ecause [the plaintiff] did not cooperate with his employer in its attempt to accommodate his religious beliefs, he rendered an accommodation impossible." *Id.*

### B.    Honest Belief Rule

BCBSM asserts that Plaintiff was terminated because she failed to comply with BCBSM's COVID-19 vaccination policy. Plaintiff asserts that this explanation is pretext for discrimination.

Under the honest belief rule, BCBSM's explanation for terminating Plaintiff cannot be pretext for discrimination—even if BCBSM's conclusion was mistaken, foolish, trivial, or baseless—so long as BCBSM reasonably relied on the particularized facts before it at the time the decision was made. *Blizzard v. Marion Tech. College*, 698 F.3d 275, 286-87 (6th Cir. 2012) (affirming summary judgment for the employer on plaintiff's discrimination claim where, even though the plaintiff challenged the veracity of the defendant's proffered reason for her termination, the plaintiff failed to "put forth evidence which demonstrate[d] the employer did not honestly believe in the proffered non-discriminatory reason for its adverse employment action").

20

An employer's pre-termination investigation need not be perfect in order to pass muster under the rule, nor must BCBSM demonstrate that its investigation was optimal or that it left no stone unturned. The key inquiry is instead whether Defendant made a reasonably informed and considered decision before terminating Plaintiff. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 708 (6th Cir. 2006) (affirming summary judgment for the employer on plaintiff's Title VII discrimination claim where defendant showed that "it made its decision to terminate [plaintiff] based on an honestly held belief in a nondiscriminatory reason supported by particularized facts after a reasonably thorough investigation").

To rebut BCBSM's reliance on this rule, Plaintiff must offer some evidence of an error on the part of BCBSM that is too obvious to be unintentional.  If BCBSM reasonably relied on the particularized facts before it when making the decision to terminate Plaintiff's employment, its reason for terminating Plaintiff (i.e., her failure to comply with the Policy) was not pretextual. *Graham v. Best Buy Stores, L.P.*, 298 Fed. App'x. 487, 494 (6th Cir. 2008) (plaintiff did not overcome the employer's honest belief in its nondiscriminatory reason for terminating plaintiff—i.e., plaintiff's violation of company policy—because the employer did "not need to prove that [plaintiff] violated or intended to violate the [] policy, only that [the employer] made its decision to terminate [plaintiff] based on an honestly held belief

in a nondiscriminatory reason supported by particularized facts after a reasonably thorough investigation.").

Plaintiff has previously claimed that the honest belief rule does not apply to religious discrimination claims, and cannot exist post-*EEOC v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028 (2015). ECF No. 95, PageID.2893-94. This is untrue. *See e.g. Jackson v. NTN Driveshift, Inc.*, No. 1:15-cv-01321-RLY-MPB, 2017 WL 1927694, **1-2 (S.D. Ind. May 10, 2017) (question of fact existed in a post-*Abercrombie* religious discrimination case as to the employer's honest belief in its non-discriminatory reason for terminating the plaintiff for excessive absences).

Respectfully submitted,

DICKINSON WRIGHT PLLC

Date: October 28, 2024

*/s/ Brandon C. Hubbard*
Scott R. Knapp (P61041)
Brandon C. Hubbard (P71085)
Nolan J. Moody (P77959)
Maureen J. Moody (P85032)
DICKINSON WRIGHT PLLC
123 W. Allegan St., Ste. 900
Lansing, MI 48933
(517) 371-1730
sknapp@dickinsonwright.com
bhubbard@dickinsonwright.com
nmoody@dickinsonwright.com
mmoody@dickinsonwright.com
*Attorneys for Defendant*

4874-5991-4483 v7 [19276-498]