# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

LISA DOMSKI,

    Plaintiff,

v.

BLUE CROSS BLUE SHIELD
OF MICHIGAN,

    Defendant.

Case No. 2:23-cv-12023

Hon. David M. Lawson

| | |
|---|---|
| Noah S. Hurwitz (P74063) | Scott R. Knapp (P61041) |
| Grant M. Vlahopoulos (P85633) | Brandon C. Hubbard (P71085) |
| HURWITZ LAW PLLC | Nolan J. Moody (P77959) |
| *Attorneys for Plaintiff* | Maureen J. Moody (P85032) |
| 340 Beakes St., Suite 125 | Davina A. Bridges (P85597) |
| Ann Arbor, MI 48104 | DICKINSON WRIGHT PLLC |
| (844) 487-9489 | Attorneys for Defendant |
| Noah@hurwitzlaw.com | 123 W. Allegan Street, Suite 900 |
| Grant@hurwitzlaw.com | Lansing, MI 48933 |
| | (517) 371-1730 |
| Jonathan R. Marko (P72450) | sknapp@dickinsonwright.com |
| MARKO LAW, PLLC | bhubbard@dickinsonwright.com |
| *Attorneys for Plaintiff* | nmoody@dickinsonwright.com |
| 220 W. Congress, Fourth Floor | mmoody@dickinsonwright.com |
| Detroit, MI 48226 | dbridges@dickinsonwright.com |
| (313) 777-7529 | |
| jon@markolaw.com | |

## **PLAINTIFF'S TRIAL BRIEF**

    NOW COMES Plaintiff Lisa Domski, by and through her attorneys, Hurwitz Law PLLC and Marko Law, PLLC, hereby submits the following Trial Brief:

## **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ................................................................................... ii

**INTRODUCTION** .....................................................................................................1

**STATEMENT OF FACTS** ........................................................................................2

**ARGUMENT** ............................................................................................................5

    **I.    DEFENDANT FAILED TO ACCOMMODATE PLAINTIFF.** .......5

    **II.   PLAINTIFF'S RELIGION PLAYED A MOTIVATING FACTOR IN HER TERMINATION.** ...............................................................8

**DAMAGES** ............................................................................................................11

**CONCLUSION** .......................................................................................................11

# **TABLE OF AUTHORITIES**

**Cases**

*Clay v. United Parcel Serv., Inc.*, 501 F.3d 695 (6th Cir. 2007) ..............................10

*E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015) ....................2, 9

*Fox v. Washington*, 949 F.3d 270 (6th Cir. 2020) ......................................................8

*Gorski v. Ascension St. John Hosp.*, No. 2:22-CV-13009, 2024 WL 1327904 (E.D. Mich. Mar. 25, 2024) ...............................................................................................6

*Kent v. Johnson*, 821 F.2d 1220 (6th Cir. 1987) .........................................................8

*Smith v. Pyro Mining Co.*, 827 F.2d 1081 (6th Cir. 1987) ..........................................6

*United States v. Seeger*, 380 U.S. 163 (1969)............................................................8

## INTRODUCTION

There is nothing more protected under state and federal statutory employment laws than an employee's right to exercise religious freedom. In fact, the obstacles for an employer seeking to undermine an employee's stated religious beliefs are set forth in a seemingly insurmountable gauntlet of binding case law from the highest courts in the land. For starters, "Title VII does not demand mere neutrality with regard to religious practices—that they be treated no worse than other practices. Rather, it gives them favored treatment, affirmatively obligating employers not to fail or refuse to hire or discharge any individual because of such individual's religious observance and practice." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775 (2015). With respect to an employee's religious beliefs, "Title VII requires otherwise-neutral [employment] polices to give way to the need for an accommodation." *Id*. Not only that, but those religious beliefs do not need to be "acceptable, logical, consistent, or comprehensible to others." *Thomas v. Review Bd. of Ind. Empl. Sec. Div.*, 450 U.S. 707, 714 (1981). Nor do an employee's religious beliefs need to be shared by all members of a religious sect. *Id*. at 708. Defendant mistakenly takes the position that it can question the religious sincerity of an employee by highlighting "conflicts" between the employee's religious beliefs and lifestyle choices, but "overlap between a religious and political view does not place it outside the scope of Title VII's religious protections, as long as the view is part of

a comprehensive religious belief system." *Sturgill v. Am. Red Cross*, 114 F.4th 803, 810 (6th Cir. 2024). And Defendant's desire to decide, based on a 15-minute interrogation, whether Plaintiff's religious beliefs meet its own subjective standard of religiosity is patently unlawful because "[a]n employer may not make an [employee's] religious practice, ***confirmed or otherwise***, a factor in employment decisions." *Abercrombie*, 575 U.S. at 773. Accordingly, Defendant cannot be allowed to poison and prejudice this proceeding by interposing a series of profane legal theories that flout the religious discrimination jurisprudence. This trial is not an opportunity for Defendant to test how loopholes and novel theories push the boundaries of well-established law. It is a reckoning for an employer that denied over 500 religious accommodations requests in a nation where "[r]espect for religious expressions is indispensable to life in a free and diverse Republic— whether those expressions take place in a sanctuary or on a field, and whether they manifest through the spoken word or a bowed head. *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 543, 142 S. Ct. 2407, 2432, 213 L. Ed. 2d 755 (2022).

## STATEMENT OF FACTS

Plaintiff Lisa Domski is a devout Catholic who served her God first, and her employer second, when she found herself with the horrible Hobson's choice of having to choose between her faith and her livelihood. *See Sambrano v. United Airlines, Inc.*, 19 F.4th 839, 841 (5th Cir. 2021) ("Forcing individuals to choose

2

between their faith and their livelihood imposes an obvious and substantial burden on religion."). But Plaintiff chose faith, even though it meant losing a career of 32 years with the same company, tremendous benefits, a pension, and the highest paid employment she will likely ever obtain because she holds no college degree.

The jury will learn that in her 32 years with Defendant, Plaintiff was promoted no fewer than ten times and always received excellent performance reviews. But on October 31, 2021, Defendant introduced a COVID-19 vaccination mandate for all employees. Plaintiff was given until November 11, 2021 to submit religious accommodation requests and until December 8, 2021 to be vaccinated. On November 10, 2021, Plaintiff submitted a religious accommodation request explaining the reasons why her sincerely held *bona fide* religious beliefs precluded her from receiving the COVID-19 vaccine. Plaintiff stated:

> I have provided reasons why this policy violates my Christian faith and why I cannot, in good conscience, take part in it. **It is my sincere personal religious belief that human life begins at conception, that the sanctity of life is precious to God and that it is a mortal sin to destroy innocent human life. <u>The three COVID vaccines were either developed or tested using fetal cells that originated in abortion.</u>** My religious view has always been and continues to be that abortion is murder and a sin against God. I must consider the moral aspects of the use of all vaccines that have connection to fetal cell lines obtained from an abortion.
>
> As a Christian, I live everyday through my faith in God and the Bible, which I believe to be God's revealed and inspired Word (2 Timothy 3:12-17). In 1 Corinthians 6:19-

20, the Apostle Paul addresses Christians about the importance of their bodies: "Or do you not know that your body is the temple of the Holy Spirt who is in you, whom you have from God? You are not your own, for you were bought with a price. Therefore, glorify God in your body." It is my utmost belief that my body belongs to God and my sincerely held personal religious belief that God will heal my temple by living my faith and trusting in God—not man.

These scriptures and my personal religious beliefs are a few examples of why I must honor God with my body, mind, and spirit. **I have been a Christian for many years and my beliefs are genuine and sincere.** I have done my best to live by the Bible's teachings my entire life. I firmly believe that to go against these teachings, would be a terrible sin and distance my relationship with God. . . . If I go against the guidance of the Holy Spirit I would be sinning and violating the sanctity of my conscience. (*Id*.)

On December 1, 2021, Plaintiff was questioned by a in-house attorney and human resource professional regarding her religious beliefs. Defendant's interviewers possessed no theological expertise. Quite the opposite—they propounded foolish theories like the medication aspirin being developed in the same manner as the COVID-19 vaccine, or a desire to punish employees that had "right to life" views, or even an inane affinity for a religion that Plaintiff's interviewer called "7th Day of Venice." Plaintiff was told multiple times at her religious accommodation interview that answering questions was strictly "voluntary," so she decided to "rely on her letter that was submitted with her request for accommodation." Little did she know that Defendant had decided to automatically

4

fire employees who tried to rely on written accommodation requests. This presents another absurdity in the case because Defendant did not seek information to affirm the religious beliefs of its employees. Defendant sought only reasons to deny religious accommodation requests. And boy did they find reasons. Once the process was all said and done, Defendant had denied 75% of employees who submitted a religious accommodation request to be exempt from COVID-19 vaccination.

On January 19, 2024, Plaintiff filed her Amended Complaint alleging religious discrimination in violation of Title VII and Michigan's ELCRA under two theories—failure to accommodate and disparate treatment.

## ARGUMENT

**I. DEFENDANT FAILED TO ACCOMMODATE PLAINTIFF.**

"The analysis of any religious accommodation case begins with the question of whether the employee has established a *prima facie* case of religious discrimination." *Smith v. Pyro Mining Co.*, 827 F.2d 1081 (6th Cir. 1987). To establish a *prima facie* claim of failure to accommodate religious beliefs, Plaintiff must demonstrate to the jury that she: (1) **holds a sincere religious belief that conflicts with an employment requirement**; (2) informed Defendant about the conflict; and (3) was discharged for failing to comply with the employment requirement. *Gorski v. Ascension St. John Hosp.*, 2024 WL 1327904, at *4 (E.D. Mich. Mar. 25, 2024). The only issue for the jury is whether Plaintiff holds a sincere

5

religious belief that conflicts with COVID-19 vaccination. However, Defendant seems poised to make the second element an issue, arguing ahead of trial that there should be a heightened standard for Notice in this case—which is wrong. In *Brown v. MGM Grand Casino*, No. 22-12978, 2023 WL 5489023, at *2 (E.D. Mich. Aug. 24, 2023), the Honorable Victoria A. Roberts took up the issue:

> Few courts have addressed the specific question of what actions are enough for an employee to sufficiently inform or notify his employer of a conflict between his work duties and his religious beliefs. At least two in this circuit have held that an employee need not request an accommodation in a particular manner to notify his employer of his need for a religious accommodation and trigger the employer's Title VII obligation to reasonably accommodate an employee's religious practices.

The *Brown* plaintiff "did not file a formal request but alleges that he informally told [the employer] that he would need an accommodation over the phone and via email. Brown's allegations are enough to survive dismissal." Here, it cannot be disputed that Plaintiff informed Defendant about the conflict and was fired. The only triable issue is whether Plaintiff possesses a sincerely-held religious belief that conflicts with COVID-19 vaccination. When a Tennessee court instructed a jury in a similar religious accommodation case against BCBS of Tennessee, it kept things simple.

6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| TANJA BENTON, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) Case No. 1:22-cv-118 |
| v. | ) |
| | ) Judge Atchley |
| BLUECROSS BLUESHIELD OF | ) |
| TENNESSEE, INC., | ) Magistrate Judge Lee |
| | ) |
| *Defendant.* | ) |

### VERDICT FORM

We, the jury, unanimously answer the following questions.

1. Has the plaintiff Tanja Benton proven by a preponderance of the evidence that her refusal to receive the Covid vaccination was based upon a sincerely held religious belief?

    __✓__ YES   _____ NO

    *If you answered "YES", please proceed to the next question. If you answered "NO", then your deliberations are at an end. Please have the foreperson sign and date this form and return it to the court officer.*

2. Has the defendant BlueCross BlueShield of Tennessee proven by a preponderance of the evidence that it offered a reasonable accommodation to the plaintiff?

    _____ YES   __✓__ NO

    *If you answered "YES", then your deliberations are at an end. Please have the foreperson sign and date this form and return it to the court officer. If you answered "NO", please proceed to the next question.*

As for whether Plaintiff holds a sincerely-held religious belief, such a determination requires the jury to determine "(1) whether the belief or practice asserted is ***religious in the person's own scheme of things***; and (2) whether it is ***sincerely held***." *Kent v. Johnson*, 821 F.2d 1220, 1224 (6th Cir. 1987)

7

(quoting *United States v. Seeger*, 380 U.S. 163, 185 (1969)). To do so, a jury looks at factors such as "length of adherence, knowledge about the belief system, ***and the existence of religious literature and teachings supporting the belief***." *Ackerman v. Washington*, 16 F.4th 170, 181 (6th Cir. 2021). A factfinder may also consider a plaintiff's past behavior, including whether they have "wavered in their dedication." *Fox v. Washington*, 949 F.3d 270, 277-78 (6th Cir. 2020). Plaintiff's spirituality is beyond reproach. Sixteen days after Plaintiff was suspended by Defendant for allegedly not having sincere religious beliefs, she was serving dinner to those in need of assistance on Christmas. Plaintiff was quoted in "The News Herald" on December 25, 2021, as saying "[a]fter we said grace, the line stretched to the back of the senior center and overflowed into the reception area. At times, there was hardly room to move the pop carts and coffee carts around. It was amazing to see." When asked by a journalist whether the family would continue an annual charity dinner the following year, Ms. Domski replied "God willing . . . [w]e're always going to plan on doing it." *Id.*

## II. PLAINTIFF'S RELIGION PLAYED A MOTIVATING FACTOR IN HER TERMINATION.

In the context of religious discrimination, Title VII "prohibits actions taken with the motive of avoiding the need for accommodating a religious practice." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015). It is as simple as that for Plaintiff's disparate treatment claim. No fancy bells or whistles.

8

The Supreme Court in *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.* expressly held that, in the context of a disparate treatment claim, Title VII "***does not impose a knowledge requirement***." 575 U.S. 768, 773 (2015). Rather, the disparate treatment "provision prohibits certain motives, regardless of the state of the actor's knowledge." *Id*. As a result, "[a]n employer may not make an applicant's [or an employee's] religious practice [, observance, or belief], confirmed or otherwise, a factor in employment decisions." *Id*.

Plaintiff can prove her disparate treatment claim under either a direct or indirect theory of evidence. Direct evidence in this case is simply evidence that, per the Supreme Court, demonstrates that Defendant made Plaintiff's religious practice, observance, or belief a factor in the employment decision. For that, Plaintiff will demonstrate a host of evidence for the proposition that Defendant's decision was motivated by Plaintiff's religion. The Honorable Judith E. Levy opined in a sister case to this one that "statements from the Director of Employee and Labor Relations display disregard or animus towards certain religious beliefs." *Eder v. Blue Cross Blue Shield of Michigan*, No. 23-12024, 2024 WL 4132669, at *5 (E.D. Mich. Sept. 10, 2024). Such evidence is sufficient for a jury to find direct evidence of disparate treatment religious discrimination.

Alternatively, Plaintiff can present a case of disparate treatment discrimination through an "indirect" methodology. That would require Plaintiff to prove a *prima*

9

*facie* by showing that (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) a person outside the protected class was treated more favorably than her. *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 703 (6th Cir. 2007). Defendant will challenge the first and fourth factors. However, the first factor is established if a jury find that Plaintiff has sincere religious beliefs that prevented her from receiving the COVID-19 vaccine. That leaves only whether individuals outside the protected class were treated more favorably.

In fact, Defendant's interview templates were specifically designed to deny religious accommodation to employees who protested the COVID-19 vaccines due to the fact that they were developed with research made possible by embryonic fetal stem cells. Defendant conducted religious accommodation interviews in an attempt to uncover evidence of "inconsistent lifestyle" in order to deny religious accommodation despite the EEOC Guidance stating "[a]n employer also should not assume that an employee is insincere simply because some of his or her practices deviate from the commonly followed tenets of his or her religion, or because the employee adheres to some common practices but not others." Defendant's interviewers denied accommodation to employees who were "right to life" supporters. Defendant trained interviewers that aspirin was developed with fetal stem cells even though aspirin was invented a whole century before embryonic fetal

10

cell research. Defendant then denied religious accommodation requests solely because an employee consumed aspirin. Such testimony pierces Defendant's pretextual justification for denying religious accommodation requests and has a place in this trial because "religious practice is one of the protected characteristics that cannot be accorded disparate treatment and must be accommodated. *Abercrombie*, 575 U.S. at 775.

## DAMAGES

Plaintiff will demonstrate state and federal statutory violations that allow her to recoup economic, non-economic, and punitive damages.

## CONCLUSION

Plaintiff will prove that (a) Defendant failed to accommodate her religious beliefs; and (b) Plaintiff's religion played a motivating factor in Defendant's adverse job action.

Respectfully submitted,

HURWITZ LAW PLLC

*/s/ Noah S. Hurwitz*
Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
HURWITZ LAW PLLC
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
grant@hurwitzlaw.com

11

                                        *Attorneys for Plaintiff*

                                        Jonathan R. Marko (P72450)
MARKO LAW, PLLC
220 W. Congress, Fourth Floor
Detroit, MI 48226
(313) 777-7526
jon@markolaw.com

Dated: October 28, 2024                      *Attorneys for Plaintiff*

## **PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing was served upon the attorney(s) of record for all parties by submitting the document through the ECF filing system on October 28, 2024.

*/s/ Noah S. Hurwitz*
Noah S. Hurwitz (P74063)