UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LISA DOMSKI,

        Plaintiff,

v.

        Case Number 23-12023
        Honorable David M. Lawson

BLUE CROSS BLUE SHIELD OF
MICHIGAN,

        Defendant.
_____/

## **OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO PRECLUDE THE PLAINTIFF FROM CALLING RUDOLPH MAKUPSON TO TESTIFY AT TRIAL**

The defendant states that during the conference between counsel for the parties to prepare a draft of the joint final pretrial order, the plaintiff announced her intention to call Rudolph Makupson as a trial witness. Mr. Makupson is an assistant general counsel for defendant Blue Cross, and he filed an appearance over a year ago identifying himself as an attorney of record in this matter. The defendant has moved to preclude the plaintiff from calling him as a witness at trial on two grounds: the failure to identify Makupson as a witness within the deadline for disclosure of trial evidence under Federal Rule of Civil Procedure 26(a)(3), and the plaintiff's failure to meet the requirements established for calling opposing counsel as a witness, including overcoming the assertion of the attorney-client privilege. The parties presented oral argument on this motion on October 24, 2024. For the reasons discussed below, the defendant's motion will be granted, and the plaintiff may not call Mr. Makupson as a trial witness.

I.

Plaintiff Lisa Domski filed a complaint alleging that her termination from her employment at Blue Cross violated federal and state antidiscrimination laws. The crux of the case focuses on

Ms. Domski's application for an accommodation relieving her of complying with Blue Cross's policy that required all employees to be fully vaccinated against COVID-19 by December 8, 2021. Ms. Domski's request for a religious accommodation was denied, she did not receive the COVID-19 vaccine, and the defendant fired her.

The defendant received dozens of requests for medical or religious accommodations and processed them through its human resources department. Mr. Makupson explains that his role in that process was limited to providing legal advice to the decisionmakers; he says that he did not make the decisions himself. When an HR representative denied an accommodation, the representative would explain the rationale to Mr. Makupson, who in turn would opine whether the decision was legally defensible. He says in his declaration that he did not participate in the decision itself.

The plaintiff believes that Mr. Makupson's role was broader than that, and she apparently wants to explore that idea at trial through his testimony. However, she has two obstacles to overcome before she can arrive at that point. On this record, they are insurmountable.

II.

First, as the parties are well aware at this stage of the case, a party seeking to offer evidence at trial must disclose that evidence by the deadline established under the rules of procedure or otherwise by the Court. Fed. R. Civ. P. 26(a)(3). Those pretrial disclosures are mandatory. *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003).

Under Rule 26(a)(3), a party is obligated to provide other parties certain information about the witnesses and exhibits that it may present at trial "other than solely for impeachment." This information includes the name and contact information of witnesses, as well as a list of documents or exhibits. Fed. R. Civ. P. 26(a)(3). "Unless the court orders otherwise, these disclosures must

be made at least 30 days before trial." *Ibid.* Here, the Court's scheduling order specified August 12, 2024 as the disclosure deadline.

Rule 37(c)(1) lays out the Court's obligation when dealing with non-compliant disclosures. That rule "clearly contemplates stricter adherence to discovery requirements, and harsher sanctions for breaches of this rule, and the required sanction in the ordinary case is mandatory preclusion." *Vance, by & Through Hammons v. United States*, 182 F.3d 920, 1999 WL 455435, at *3 (6th Cir. 1999) (table). The harshness of that rule can be ameliorated if the offending party can show that "the violation was harmless or is substantially justified." *Roberts*, 325 F.3d at 782 (citation omitted).

The determination of harmlessness and substantial justification is committed to the Court's discretion, which is "broad." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019). The Sixth Circuit has provided guidance for exercising that discretion, suggesting five factors to consider:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015) (quoting *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396-97 (4th Cir. 2014)).

The defendant contends that these factors favor preclusion. The plaintiff asserts that excluding Makupson as a witness would be premature because there is substantial evidence suggesting that he was a decisionmaker in the defendant's religious accommodation process and trained the interviewers who rejected the plaintiff's request. She points to records where Makupson emailed employees who were denied accommodations, records of HR employees identifying him has the person who dealt with religious accommodations, and an affidavit from a

- 3 -

New Jersey attorney who handled an internal appeal of a denial of his client's religious accommodation with Makupson. Finally, she argues that excluding Makupson under Rule 37(c) would be inappropriate because the defendant "has perpetrated a fraud upon the Court in covering up Mr. Makupson's role in Plaintiff's termination." ECF No. 72, PageID.2058. In fact, she contends that the *Howe* factors are inapplicable altogether under such circumstances because the defendant concealed Makupson's role in the accommodation process.

The plaintiff is incorrect. She does not dispute that her disclosure of her intention to call this witness was untimely. The plaintiff's omitted disclosure stands for itself. The *Howe* factors are tools that assist the Court in determining whether the plaintiff's disclosure failure is "harmless or is substantially justified" such that Rule 37(c)'s sanctions, which otherwise are mandatory, are not warranted. *Roberts*, 325 F.3d at 782 (citation omitted). If she is correct that the defendant violated discovery obligations, that would suggest that her failure to list Makupson on her Rule 26(a)(3) disclosures *was* substantially justified. Further review of the *Howe* factors is warranted.

*Surprise.* It appears undisputed that the defendant first learned of the plaintiff's intent to call Mr. Makupson as a witness in this case when the parties prepared the draft final pretrial order. It is difficult to characterize an attempt to call opposing counsel as a witness at trial as anything other than surprising. The plaintiff seems to submit that she only became aware of Mr. Makupson's alleged role in the accommodation process recently, although she does not say precisely when, and she accuses the defendant of "fraud" for failing to list him in response to a discovery interrogatory as an individual with input into the decision to terminate her. ECF No. 72, PageID.2052. But she has never furnished evidence that Mr. Makupson actually had input in her specific case or that the defendant's discovery response was untruthful. And even if it were, any

failure by the defendant represents a question distinct from whether the plaintiff's failure to identify him sooner was a surprise. This factor weighs in favor of exclusion.

*Ability to Cure Surprise/Disruption to Trial.* The plaintiff does not offer a cogent argument that her delay in identifying Mr. Makupson as a witness is mitigated by an ability to cure the surprise or would not cause a disruption to trial. Instead, she says only that "if Defendant perpetrated the fraud, Defendant cannot be surprised." ECF No. 72, PageID.2058. This hyperbolic language notwithstanding, the plaintiff is somewhat correct that it would take little additional effort to gain access to this witness to prepare for his testimony. The interruption of the *defendant's* trial preparation, however, would be substantial. Mr. Makupson is an attorney of record, and presumably he also is preparing the defendant for trial. Requiring him to step out of that role and assume the status as a percipient witness could be enormously disruptive. Moreover, the trial process itself could bog down due to the need to sort out privilege issues outside the presence of the jury. This issue could have been mitigated by earlier motion practice, but at this point there is too little time to sort the issue out in advance of trial. These factors weigh in favor of exclusion.

*Importance of the Evidence.* The plaintiff's only argument to establish the importance of this evidence is that "[i]f Defendant perpetrated the fraud, the evidence could not be of greater importance." *Ibid.* This conclusory and circular reasoning is unhelpful. She does not articulate how Mr. Makupson was involved in her termination decision, and it is difficult to see what testimony he could provide that would be of critical importance to her case compared to other witnesses, including employees of the defendant, that she already has identified as witnesses. Mr. Makupson may be able to shed light on the defendant's general procedures for dealing with accommodation requests. But HR witnesses likely would be more informed about those procedures. And the question for decision at trial will be the propriety of the defendant's decision

in the plaintiff's individual case. There is no suggestion on this record that Makupson played a role in that. The Sixth Circuit has equivocated on how this factor applies in practice. *See Bisig*, 940 F.3d at 220 (acknowledging that "this factor can cut both ways"). In this case, though, the unimportance of the evidence, when measured against the disruption to trial calling opposing counsel as a witness would cause, weighs in favor of exclusion.

*Explanation.* The plaintiff's only explanation for failing to disclose her intention of calling Makupson as a witness sooner rests on her accusation that the defendant hid his identity from her by not answering her discovery interrogatory responses truthfully. But the plaintiff's belief that Mr. Makupson should have been identified does not make it so. According to the plaintiff, her relevant interrogatory asked the defendant to "identify the full name and job title of any individual responsible for either making the decision to terminate [the plaintiff] and/or having input into the decision to terminate [her]." ECF No. 72, PageID.2052. As discussed below, the plaintiff has adduced significant evidence that Makupson was involved in the defendant's religious accommodation process, but none of this evidence necessarily suggests that he was involved in the decision in her case. She has not established that the defendant's response, identifying other individuals with input into her case — some of whom will be trial witnesses — was inaccurate. Perhaps it is fair enough to seek testimony from Mr. Maksupon on a theory, unearthed during discovery, that he substantially was involved in overseeing the religious accommodation process, but even crediting this explanation, it does not overcome the other factors, which weigh in favor of exclusion.

### III.

There is, perhaps, a more compelling reason to bar the plaintiff from calling Mr. Makupson as a trial witness. Because Makupson is opposing counsel of record in this case, the so-called

*Shelton* rule applies. *See Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). That rule requires a party wishing to obtain evidence from the other side's lawyer to demonstrate that "(1) no other means exist to obtain the information[]; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir. 2002) (quoting *Shelton*, 805 F.2d at 1327).

Although that rule generally is invoked during the discovery process when opposing counsel's deposition is sought, courts also have applied the rule to attempts to call opposing counsel to testify at trial. *See, e.g.*, *Tera II, LLC v. Rice Drilling D, LLC*, No. 19-02221, 2024 WL 1833910, at *1 (S.D. Ohio Jan. 26, 2024); *AWGI, L.L.C. v. Atlas Trucking Co., L.L.C.*, No. 17-12131, 2019 WL 7288766, at *2 (E.D. Mich. Dec. 30, 2019) (Cox, J.); *Gazvoda v. Sec'y of Homeland Sec.*, No. 15-14099, 2018 WL 1281756, at *6 (E.D. Mich. Mar. 13, 2018) (Ludington, J.) (applying *Shelton* on a motion *in limine*). Courts have explained that the rule "prevent[s] the disruption of the adversarial system through harassment of opposing counsel and reduc[es] the burden and cost of litigation arising from collateral issues of privilege and attorney work product." *Abington Emerson Cap., LLC v. Landash Corp.*, No. 17-143, 2019 WL 3779779, at *2 (S.D. Ohio Aug. 12, 2019) (citing *Shelton*, 805 F.2d at 1327 ).

In her response, the plaintiff does not address the *Shelton* elements or even cite the case. Instead, she appears to assume the general prescription for protective orders defined in Rule 26(c)(1) governs. That position, however, ignores that Mr. Makupson entered an appearance as opposing counsel in October of 2023; his lengthy involvement in the case undermines an argument that his appearance was part of an effort to shield information from the plaintiff.

Under the first and third *Shelton* elements, the plaintiff must establish that there are no other ways to obtain the information to which Makupson would testify and that the information is

- 7 -

crucial to her case. That is problematic for her. She has not articulated what specific information she seeks to elicit from Makupson, why that information would be crucial to her case, or why that information could not be obtained from other sources or witnesses. Even accepting her theory that Makupson was a "manager" of religious accommodations for the defendant, she has not pointed to evidence that he was involved in the decision on the plaintiff's individual requested accommodation. And she has not pointed to any evidence from which it might be inferred that Makupson engaged in any sort of direct discrimination that would be relevant to her disparate treatment claim. *Shelton* places the burden of establishing these elements on the party seeking to call opposing counsel. The plaintiff's conclusory statements at best suggest that the information Makupson would provide would be helpful as background.

The plaintiff suggests that the Court could conduct an *in camera* review of "the evidence involving Mr. Makupson that has been redacted" to "glean whether Mr. Makupson's testimony is actually privileged." ECF No. 72, PageID.2064. That argument reads like an invitation to a fishing expedition for testimony that could harm the defendant rather than a good-faith inquiry. And the plaintiff has attached no redacted documents or stated that any such documents appear relevant to the defendant's decision to terminate *her*. She has not met burden under these two *Shelton* elements.

The second element requires a showing that the sought-after testimony "is relevant and nonprivileged." *Shelton*, 805 F.2d at 1327. This is a difficult task because, again, the plaintiff has not undertaken to describe in detail what information she seeks from Makupson. And if the proposed testimony includes communications about the defensibility of individual termination decisions — the very function Makupson says he served in his role as assistant general counsel — overcoming a privilege claim would be a steep hill for the plaintiff to climb.

The law regarding the attorney-client privilege is well-settled: the privilege attaches "(1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived." *Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998). The privilege is narrowly construed, because it "reduces the amount of information discoverable during the course of a lawsuit." *United States v. Collis*, 128 F.3d 313, 320 (6th Cir. 1997); *In re Grand Jury Proceedings*, 78 F.3d 251, 254 (6th Cir. 1996). "[T]he essence of the privilege is confidentiality, and when confidentiality is destroyed, there is little justification for incurring the heavy cost to the production of relevant evidence which the privilege exacts." *360 Const. Co. v. Atsalis Bros. Painting Co.*, 280 F.R.D. 347, 351 (E.D. Mich. 2012) (Lawson, J.). "The burden of establishing the existence of the privilege rests with the person asserting it." *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999).

It is true that in-house corporate attorneys, like Mr. Makupson, face unique challenges when asserting the privilege due to the often-multi-natured responsibilities of their positions. Responding to this reality, courts have acknowledged that "'[w]here a person who happens to be an attorney is not acting in that capacity, the privilege does not attach,' and '[c]ommunications between an attorney and client which relate to business, rather than legal matters, do not fall within the protection of the attorney-client privilege.'" *Carhartt, Inc. v. Innovative Textiles, Inc.*, 333 F.R.D. 113, 116 (E.D. Mich. 2019) (quoting *Michigan First Credit Union v. Cumis Ins. Soc., Inc.*, 2006 WL 1851018, at *2 (E.D. Mich. July 5, 2006)). Because legal and business advice frequently is "inextricably intertwined," however, courts have held that "[t]he mere fact that business considerations are weighed in the rendering of legal advice does not vitiate the attorney-client

privilege.'" *Id.* at 117 (quoting *Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*, 951 F. Supp. 679, 685-86 (W.D. Mich. 1996)). Instead, courts look to whether the non-legal aspect of the attorney's role predominates, resolving doubts in favor of the privilege. *Ibid.*

The plaintiff has offered evidence that Mr. Makupson played multiple roles during the defendant's vaccine enforcement period. She submitted a transcript from another employee's Unemployment Insurance Agency administrative hearing where human resources employee Jeff Walter — a witness in this case — testified that he made recommendations regarding COVID exemptions to Mr. Makupson, ECF No. 72-2, PageID.2081; multiple emails from Bart Feinbaum, the director of Employee and Labor Relations — also a listed witness in this case — to employees directing them to Makupson for questions about religious accommodations, some of which stated that Makupson "managed" or "handl[ed]" religious accommodations, *e.g.*, ECF No. 72-4, PageID.2105, 2115, 2144; emails from Makupson informing other human resources employees whether a particular employee's accommodation request had been granted or denied, *e.g.*, ECF No. 72-3, PageID.2089; ECF No. 72-4, PageID.2107, 2109, 2110, 2113, 2114; email correspondence with an employee who sought to overturn the denial of her accommodation request, ECF No. 72-4, PageID.2127; and a declaration from an attorney who represented an employee whose accommodation was denied, attesting that "based on [his] phone conversation with Mr. Makupson . . . he had the ability to grant or deny [his client's] accommodation request . . ." ECF No. 72-5, PageID.2156. For his part, Makupson avers that his role was to evaluate the legal defensibility of the interviewers' decisions and that he would occasionally send the interviewers' decisions directly to the affected employee because his review was the final step in the process. Makupson decl., ECF No. 66-2, PageID.1945-46. He adds that the employees who characterize him as a decisionmaker were mistaken. *Id.* at PageID.1947.

The defendant curiously asserts that "Mr. Makupson's role in the accommodation process is privileged." ECF No. 66, PageID.1934. That argument betrays a misunderstanding of how the attorney-client privilege functions. Mr. Makupson's multiple role in the accommodation evaluation process neither establishes his potential testimony as privileged, nor does it undermine it. The privilege doctrine is not a blanket testimonial immunity for attorneys. It *does*, however, shield confidential *communications*. And on this record, it does not appear that Mr. Makupson would have much evidence to offer other than his advice to whomever made the decision to reject the plaintiff's religious accommodation request.

The plaintiff's failure otherwise to identify the exact information she seeks from Mr. Makupson inhibits the Court from concluding that the evidence she seeks from him is relevant and non-privileged as is required under *Shelton*. She has not made a sufficient showing to demonstrate that she is entitled to call Mr. Makupson as a witness.

IV.

The plaintiff has not shown that her failure to make a timely disclosure of her intention to call Rudolph Makupson as a trial witness is harmless or substantially justified. Nor has she established that the *Shelton* test has been satisfied to allow her to seek evidence from opposing counsel at trial.

Accordingly, it is **ORDERED** that the defendant's motion to preclude the plaintiff from calling Rudolph Makupson as a trial witness (ECF No. 66) is **GRANTED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated:   October 29, 2024