# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

LISA DOMSKI,

    Plaintiff,

v.

BLUE CROSS BLUE SHIELD
OF MICHIGAN,

    Defendant.

Case No. 2:23-cv-12023

Hon. David M. Lawson

Mag. Elizabeth A. Stafford

---

| | |
|---|---|
| Noah S. Hurwitz (P74063)<br>Grant M. Vlahopoulos (P85633)<br>HURWITZ LAW PLLC<br>*Attorneys for Plaintiff*<br>340 Beakes St., Suite 125<br>Ann Arbor, MI 48104<br>(844) 487-9489<br>noah@hurwitzlaw.com<br>grant@hurwitzlaw.com<br><br>Jonathan R. Marko (P72450)<br>MARKO LAW, PLLC<br>*Attorneys for Plaintiff*<br>220 W. Congress, Fourth Floor<br>Detroit, MI 48226<br>(313) 777-7529<br>jon@markolaw.com | Scott R. Knapp (P61041)<br>Brandon C. Hubbard (P71085)<br>Nolan J. Moody (P77959)<br>Maureen J. Moody (P85032)<br>Davina A. Bridges (P85597)<br>DICKINSON WRIGHT PLLC<br>Attorneys for Defendant<br>123 W. Allegan Street, Suite 900<br>Lansing, MI 48933<br>(517) 371-1730<br>sknapp@dickinsonwright.com<br>bhubbard@dickinsonwright.com<br>nmoody@dickinsonwright.com<br>mmoody@dickinsonwright.com<br>dbridges@dickinsonwright.com |

## PLAINTIFF LISA DOMSKI'S EMERGENCY TRIAL MOTION TO ADMIT PLAINTIFF'S EXHIBIT 47

Prior to jury selection on October 29, 2024, this Court advised the parties that it did not yet see the relevance of the Human Resources Meeting Recording (the "HR

Recording") identified as Exhibit 47 on Plaintiff's Exhibit List and uploaded as media to the Court on October 18, 2024.[1] As a threshold matter, the HR Recording was timely produced to Defendant on September 15, 2023, and timely offered to Defendant in Plaintiff's August 13, 2024 Fed. R. Civ. P. 26(a)(3) disclosures. Defendant never objected to the HR Recording or moved *in limine* to exclude it on any grounds. It is therefore not clear to Plaintiff why the relevance of the HR Recording is in doubt. The HR Recording, which three federal judges in the Eastern District of Michigan have opined is potentially direct evidence of religious discrimination, certainly has a place in the trial. Most importantly, the HR Recording needs to be preapproved prior to trial in order to be referenced as a genuine smoking gun piece of evidence in Plaintiff's Opening Statement. It would be a critical error to prevent the use of the HR Recording either in Plaintiff's Opening Statement or during the trial. This Court stated that it required Plaintiff to lay a

---

[1] On October 18, 2024, following the hearing on Defendant's various motions *in limine*, the Court entered an Order stating: "During the hearing, the Court announced from the bench its decision on the questions presented by the motions ready for adjudication and took under advisement the defendant's motion to exclude from trial an unproduced and unidentified video on plaintiff's amended disclosures (ECF No. 37) pending the plaintiff's submission of the disputed video for review [*i.e.*, the Tricia Keith video announcing that Defendant "was awarded an important $54 million bonus for its work on COVID vaccinations"]. As such, Plaintiff's upload of media to the Court also included video of Tricia Keith. It remains unclear to Plaintiff whether the Court's comments on relevance pertain to the HR Recording, the video of Ms. Keith, or both. As such, Plaintiff is submitting this motion out of an abundance of caution to preemptively lay foundation for the most critical media upload—the HR Recording.

2

foundation for the video prior to its admission. Accordingly, Plaintiff submits the Affidavit of Kate Boverhof, Defendant's former employee who recorded the video and can speak to its relevance. *See* **Exhibit 1**, Boverhof Affidavit.

Addressing the matter of authentication, Rule 901(a) provides that "authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). The rule also states, by way of illustration, that the testimony of a witness that the item is what it purports to be is sufficient authentication under the rule. *See* Fed. R. Evid. 901(b)(1). Requisite familiarity can be "acquired either before or after the particular speaking which is the subject of the identification." Fed. R. Evid. 901, advisory committee's notes.

Here, Ms. Boverhof avers that she was employed as a member of Defendant's Talent Acquisition Team in Defendant's Human Resources Department and that she possesses personal knowledge regarding Defendant's religious and medical accommodation process for job candidates and employees subject to the Company's mandatory COVID-19 vaccination policy. Ex. 1, ¶¶2-5. Ms. Boverhof is the individual that recorded the HR Recording and was present at the meeting on October 12, 2021. *Id*. at ¶¶5-6. Ms. Boverhof avers that "the meeting was scheduled to discuss the religious and medical accommodation process for job candidates who were offered employment positions by Defendant" and "[t]he religious

3

accommodation process for job candidates was the same as for current employees." *Id*. at ¶¶7-8.  She attests with certainty that "the candidate accommodation process and employee accommodation process followed the same guidelines."  *Id*. at ¶¶9-11.  Mr. Feinbaum and Ms. Snyder are the main speakers in the HR Recording and will be called as witnesses at trial.  *Id*. at ¶¶12-18; ECF No. 98, PageID.3028.  A foundation for the HR Recording mirroring Ms. Boverhof's affidavit is sure to come in as testimony very early in the trial from either Mr. Feinbaum or Ms. Snyder.

As for relevance, relevant evidence must be material-logically relevant to an issue or fact of consequence-and probative-having a tendency to prove that issue or fact.  *People v. Starr*, 457 Mich. 490, 497-498; 577 NW2d 673 (1998).  Here, three federal court judges in the Eastern District of Michigan (the Honorable Judith E. Levy, the Honorable Gershwin A. Drain, and Honorable Terrence G. Berg) found that statements in the HR Recording were probative of direct evidence of discrimination.  Those statements include:

- Patricia Snyder: "**I want to be very realistic with this group to say we're not going to accept all religious accommodation requests**.  We might not accept all medical accommodation requests.

- Bart Feinbaum: "Yeah, **I've done some research on this, and I would say the major religions, and I'm saying three major religions Christianity, Judaism, Islam, all in general say that vaccinations are allowable under their religious teachings.**"

4

- Bart Feinbaum: "I mean I think each of these interviews are gong to be like **mini depositions** and I've done hundreds of those."

- Bart Feinbaum: "Yeah, well, yeah, just follow me around, but uh I enjoy it and so **it should be an interesting and fun experience**."

- Fay Arabo: "I like what you're doing[, Bart.] It's interesting. I kinda want to know the outcome."

- Erica Alford: "**I wish we could be like a fly on the wall**."

- Fay Arabo: "Yeah, could we be in the background for the interview and not say anything?"

- Bart Feinbaum: "**You don't want to be deposed as a witness**, so I'm going to say no, unfortunately. It's funny because when I sued to teach at U of D Law School for over 25 years, you know we would talk about this very issue, but now I get to actually apply it. So, **it's kind of fun from the textbook to the real world**."

- Valarie Furchi: "Bart's our secret agent man."

- Bart Feinbaum: "**I would say that if they decide to get the vaccine, then we have accomplished our goal to get them vaccinated.**"

**Exhibit 2**, HR Recording Transcript; *see also* Ex. 1, ¶¶12-16.

The statements made in the audio are callous, disturbing, and most of all patently reflective of Defendant's motive to arbitrarily deny religious accommodation requests. Indeed, the individuals in the HR Recording audibly laugh out loud at the "fun" time they will have conducting "mini depositions" to

5

coerce employees to sacrifice their religious beliefs and submit to a vaccination. And Mr. Feinbaum telling human resources personnel that they "don't want to be deposed as a witness" is indicative that Defendant was conducting an unlawful, unreasonable accommodation procedure that Defendant understood would be the subject of civil litigation. Moreover, the results of Defendant's religious accommodation procedure corroborate the statements in the HR Recording because Defendant admits to denying nearly three-quarters of employee religious accommodation requests. In light of Supreme Court authority and EEOC Guidance, it is unfathomable that a corporation would deny over 500 religious accommodation requests based solely on denying the sincerity of its applicants without an unlawful motive. Nowhere is Defendant's unlawful motive more apparent than in the HR Recording, which cannot be excluded from the evidentiary record. It is nothing short of a miracle that Ms. Boverhof recorded a meeting in which Defendant set forth its unlawful plan to deny religious accommodations. While Defendant will certainly have an opportunity to explain the contents of the HR Recording to the jury, it would be a catastrophic error to deny admission of the highly relevant evidence.

    The Supreme Court's express instruction on what constitutes direct evidence of disparate treatment religious discrimination in *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015) is any conduct that "prohibits actions taken with the *motive* of avoiding the need for accommodating a religious practice." In

6

*Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000), the Sixth Circuit held, "a corporate decision maker's express statement of a desire to remove employees in the protected group is direct evidence of discriminatory intent." That is certainly what the HR Recording represents. The jury is obligated to hear evidence that Defendant proclaimed prior to religious accommodation requests were received that it would not accommodate all employees.

Of course, Plaintiff's contention in this motion has substantial legal support already. Case in point, the Honorable Judith E. Levy opined in a sister case to this one that "**statements from the Director of Employee and Labor Relations display disregard or animus towards certain religious beliefs**." *Eder v. Blue Cross Blue Shield of Michigan*, No. 23-12024, 2024 WL 4132669, at *5 (E.D. Mich. Sept. 10, 2024). In *Smith v. Blue Cross Blue Shield of Michigan*, No. 23-12064, 2024 WL 3991245, at *5 (E.D. Mich. Aug. 29, 2024), the Honorable Judith E. Levy opined in greater detail on the significance of the HR Recording:

> Additionally, the Court finds that Plaintiff's proposed amended complaint sufficiently alleges direct evidence of disparate treatment. Plaintiff states that Defendant's Director of Employee and Labor Relations, Mr. Feinbaum, "was responsible for deciding which employees received religious and medical accommodations," but instructed "employees who would be conducting the religious accommodation interviews that Defendant was not allowed to accept 'all' religious accommodation requests." (ECF No. 13-1, PageID.162–163.) Mr. Feinbaum allegedly asserted in that same meeting that "after performing personal research ... he believed that the

7

three major religions (Christianity, Judaism, and Islam) all allowed for vaccination against COVID-19," and that "the goal of Defendant's interview process was to 'pressure' employees to get vaccinated against COVID-19." (*Id*. at PageID.163.) According to Defendant, these allegations "require far-fetched, impermissible inferences to arrive at 'direct evidence' of discriminatory intent." (ECF No. 16, PageID.244 (emphasis in original).) The Court disagrees. Plaintiff claims that she was discriminated against because of her different religious beliefs, and ***the alleged statements from the Director of Employee and Labor Relations display disregard or animus towards certain religious beliefs.*** *See Williams*, 2024 WL 1994258, at *5 (evaluating the same statements from Mr. Feinbaum). Defendant also argues that Mr. Feinbaum's statements cannot constitute direct evidence because he was not a decision-maker. (ECF No. 16, PageID.246.) This argument is not convincing. The proposed amended complaint claims that ***Mr. Feinbaum is the Director of Employee and Labor Relations, was responsible for determining religious and medical accommodations, and instructed employees with regard to the religious accommodation interviews.*** (ECF No. 13-1, PageID.162–163.) The Court can reasonably infer that Mr. Feinbaum was involved in the decision to terminate Plaintiff's employment.

Likewise, the Honorable Gershwin A. Drain held for the same proposition in *Williams*:

> Here, [Blue Cross Blue Shield of Michigan's] Director of Employee Relations, Mr. Feinbaum, told other employees in management that he doubted the validity of "any" religious accommodation request; stated in human resources meetings that he believes Christianity . . . allows for vaccination against COVID-19; and asserted that religious accommodation interviews would be conducted like "mini depositions" to "pressure" employees to get vaccinated against COVID-19. Indeed, [Blue Cross Blue

8

> Shield of Michigan] allegedly instructed employees conducting religious accommodation interviews not to accept "all" religious accommodation requests, even though Defendant did not base denials on a purported undue hardship (*i.e.*, substantially increased costs in relation to the conduct of the business). ***When taken together and accepted as true, these allegations require the conclusion that unlawful discrimination was at least a motivating factor in [Blue Cross Blue Shield of Michigan's] decision to deny Plaintiff's accommodation request***. *Williams v. Blue Cross Blue Shield of Michigan*, No. 23-CV-12066, 2024 WL 1994258, at *5 (E.D. Mich. May 6, 2024). Accordingly, Defendant's proposed jury instruction would place a higher bar on "direct evidence" that what is legally required.

In yet another federal court decision, the Honorable Terrence G. Berg acknowledged the relevance of Exhibit 47 in *Dickhudt v. COBX Co.*, No. 2:22-CV-12838-TGB-DRG, 2024 WL 4235470, at *6–7 (E.D. Mich. Sept. 19, 2024):

> Plaintiff here claims that the alleged statements from the Director of Employee and Labor Relations, Bart Feinbaum, constitute direct evidence of religious discrimination. Plaintiff's proposed second amended complaint alleges that Mr. Feinbaum "was responsible for deciding which employees received religious and medical accommodations to be exempt from the COVID-19 vaccine." ECF No. 22-1, ¶ 40, PageID.467. She alleges that "Mr. Feinbaum told other employees in management that he doubted the validity of 'any' religious accommodation request" and that he indicated during a human resources meeting that "after performing personal research, and without consulting any religious leaders, he believed that the three major religions (Christianity, Judaism, and Islam) all allowed for vaccination against COVID-19." *Id.* ¶¶ 41–42. Mr. Feinbaum declared during that same human resources meeting "that Defendant's religious accommodation interviews would be conducted

9

like 'mini depositions.'" He stated that "the goal of Defendant's interview process was to 'pressure' employees to get vaccinated against COVID-19," and "told the employees who would be conducting the religious accommodation interviews that Defendant was not allowed to accept 'all' religious accommodation requests[.]" *Id.* ¶¶ 43–45.

Defendant argues that Plaintiff's proposed second amended complaint does not sufficiently allege a "direct evidence" claim. ECF No. 25, PageID.614–19. Defendant contends that Plaintiff's allegations regarding Mr. Feinbaum do not "explicitly express[ ]" religious discrimination and instead "require far-fetched, impermissible *inferences* to arrive at 'direct evidence' of discriminatory intent." *Id.* PageID.615–16 (emphasis in original).

***The Court disagrees with Defendant and agrees with its sister courts that "Plaintiff claims that she was discriminated against because of her different religious beliefs," and that, taken as true, "the alleged statements from the Director of Employee and Labor Relations display disregard or animus towards certain religious beliefs."*** See *Ford*, 2024 WL 3991246, at *4; *Smith*, 2024 WL 3991245, at *4 (same); *Williams*, 2024 WL 1994258, at *5 (concluding that "[w]hen taken together and accepted as true, these allegations [regarding Mr. Feinbaum's statements] require the conclusion that unlawful discrimination was at least a motivating factor in Defendant's decision to deny Plaintiff's accommodation request.").

Defendant also argues that Plaintiff fails to establish a direct evidence claim because Mr. Feinbaum was not a decision-maker with respect to Plaintiff's accommodation request and her termination. ECF No. 25, PageID.618. Defendant contends that according to Plaintiff's accommodation interview notes, Vera Grigorian and Julie Tracy assessed Plaintiff's accommodation request, not Mr.

10

>  Feinbaum. *Id.* However, as stated above, the proposed second amended complaint alleges that Mr. Feinbaum "was responsible for deciding which employees received religious and medical accommodations to be exempt from the COVID-19 vaccine." ECF No. 22-1, ¶ 40. That other individuals may have conducted the accommodation request interview does not conclusively demonstrate that they made the decision to terminate Plaintiff's employment.

It is axiomatic that Title VII gives religious practices **favored treatment**, affirmatively obligating employers to accommodate religious beliefs absent an undue hardship. *Abercrombie*, 575 U.S. at 775. "An employer meets its obligation under Title VII when it demonstrates that it has offered a reasonable accommodation to the employee." *Bass v. T-Mobile USA, Inc.*, No. 22-11975, 2024 WL 1315843, at *7 (E.D. Mich. Mar. 27, 2024) (citing *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986)). "The reasonableness of an employer's attempt at accommodation must be determined on a case-by-case basis and is generally a question of fact for the jury, rather than a question of law for the court." *Id.* (citing *E.E.O.C. v. Robert Bosch Corp.*, 169 F. App'x 942, 944 (6th Cir. 2006)). Defendant cannot claim that it satisfied its burden to offer Plaintiff a reasonable accommodation when Defendant trained human resources personnel to remove unvaccinated religious employees from the workforce or achieve the "goal" to pressure vaccination. The HR Recording confirms that, from the outset, Defendant celebrated its mission to deny religious accommodation requests. Meaning, the HR Recording is material as to

11

whether Plaintiff's religion was a "motivating factor" in her termination and/or whether Defendant had a larger motive to deny religious accommodation requests.

                Respectfully submitted,

                HURWITZ LAW PLLC

                */s/ Noah S. Hurwitz*
                Noah S. Hurwitz (P74063)
                Grant M. Vlahopoulos (P85633)
                HURWITZ LAW PLLC
                340 Beakes St., Ste. 125
                Ann Arbor, MI 48104
                (844) 487-9489
                noah@hurwitzlaw.com
                grant@hurwitzlaw.com
Dated: October 30, 2024       *Attorneys for Plaintiff*

## PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing was served upon the attorney(s) of record for all parties by submitting the document through the ECF filing system on October 30, 2024.

*/s/ Noah S. Hurwitz*
Noah S. Hurwitz (P74063)

13