# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| LISA DOMSKI, | Case No. 2:23-cv-12023 |
| Plaintiff, | |
| v. | Hon. David M. Lawson |
| BLUE CROSS BLUE SHIELD OF MICHIGAN, | Mag. Elizabeth A. Stafford |
| Defendant. | |

| | |
|---|---|
| Noah S. Hurwitz (P74063) | Scott R. Knapp (P61041) |
| Grant M. Vlahopoulos (P85633) | Brandon C. Hubbard (P71085) |
| HURWITZ LAW PLLC | Nolan J. Moody (P77959) |
| 340 Beakes St., Ste. 125 | Maureen J. Moody (P85032) |
| Ann Arbor, MI 48104 | DICKINSON WRIGHT PLLC |
| (844) 487-9489 | 123 W. Allegan St., Ste. 900 |
| noah@hurwitzlaw.com | Lansing, MI 48933 |
| grant@hurwitzlaw.com | (517) 371-1730 |
| *Attorneys for Plaintiff* | sknapp@dickinsonwright.com |
| | bhubbard@dickinsonwright.com |
| Jonathan R. Marko (P72450) | nmoody@dickinsonwright.com |
| MARKO LAW, PLLC | mmoody@dickinsonwright.com |
| 220 W. Congress, Fourth Floor | *Attorneys for Defendant* |
| Detroit, MI 48226 | |
| (313) 777-7526 | |
| jon@markolaw.com | |
| *Attorneys for Plaintiff* | |

## PLAINTIFF'S RESPONSE TO
## DEFENDANT'S OBJECTIONS TO PLAINTIFF'S DEMONSTRATIVES

Plaintiff Lisa Domski ("Plaintiff") provides the following response to Defendant Blue Cross Blue Shield of Michigan's Objections to Plaintiff's Demonstratives, and states as follows:

## ARGUMENT

Defendant objects to six demonstratives that Plaintiff timely exchanged with Defendant on Thursday, October 31, 2024, pursuant to the Joint Final Pretrial Order, ECF. 98. Defendant did not confer with Plaintiff on how to amicably allow for certain demonstratives, or even that it would file its pleading, so the Objections should be denied pursuant to E.D. Mich. LR 7.1(a)(3). But in any event, the Sixth Circuit has an "established tradition" of permitting the use of demonstrative exhibits that summarize evidence as an aid to the jury as long such a summary is "accompanied by a limiting instruction which informs the jury of the summary's purpose and that it does not constitute evidence." *U.S. v. Bakke,* 942 F.2d 977, 985-986 (6th Cir. 1991); *Montie v. Crossfire, LLC*, No. 2:19-CV-10455, 2023 WL 10676155, at *2 (E.D. Mich. May 16, 2023) (Hon. Stephen J. Murphy) ("Even without a precise standard for the admissibility of demonstrative animations, the Court will allow Defendants to present the animations at trial because a limiting instruction will cause any prejudice to be less than its probative value."); *United States v. Clark*, 24 F.4th 565, 579 (6th Cir. 2022) ("Given the [limiting] instructions and the importance of the [ ] evidence, any remaining prejudice was limited and did not invite the jury to decide the case on an improper basis.").

Of course, this Court has wide discretion to allow demonstratives to summarize the content of witness testimony. *United States v. Scales,* 594 F.2d 558,

2

563 (6th Cir. 1979); *United States v. Pinto*, 850 F.2d 927, 935 (2d Cir.1988) (A court's "discretion generally encompasses the authority to allow the use of demonstrative aides, including the display of charts or tables accurately summarizing the content of primary testimony."). Demonstratives summarizing timelines, witness testimony, documentary evidence are obviously commonplace in this Court. Defendant's main objections to the Plaintiff's timely exchanged demonstratives are either semantical or downright ludicrous. Of course, this Court can give a limiting instruction and Defendant can attack the demonstratives as it so chooses.

I. **LISA DOMSKI TIMELINE.**

In *Mich. Carpenters' Pension Fund v. Rayonier Advanced Materials, Inc.*, the plaintiffs moved to strike a timeline of critical events. No. 3:18-cv-771-J-34JRK, 2019 U.S. Dist. LEXIS 53577, at *11 (M.D. Fla. Mar. 29, 2019). The *Rayonier* court held that there was no good cause for striking the demonstratives because they were intended to aid the court. A timeline is a demonstrative that is "helpful in organizing the information before the Court, [which] the Court may rely on." *Id.* at *12. While Defendant complains that Plaintiff mischaracterizes certain events in the timeline, courts have long held that is not a basis to exclude a timeline. *United States v. Morris,* 568 F.2d 396, 401 (5th Cir. 1978) ("an attorney's statements that indicate his opinion or knowledge of the case as therefore presented before the court and jury are

3

permissible if the attorney makes it clear that the conclusions he is urging are conclusions to be drawn from the evidence."); *United States v. Helmsley*, 733 F. Supp. 600, 608–09 (S.D.N.Y. 1989) (counsel is "free to promise what he believes the evidence will show—although, like *any* lawyer on *any* opening statement, he runs the calculated risk that certain evidence ultimately will not be admitted and that his credibility with the jury might suffer as a result."). Plaintiff invites this Court to examine the straightforward timeline (that Defendant falsely alleges is 29 pages) and observe that Defendant's objection is a gross overreaction to a simple on-page timeline of events that Plaintiff will later demonstrate with admissible evidence.

| **LISA DOMSKI TIMELINE** | |
|---|---|
| **July 2, 1964** | President Johnson Signs Civil Rights Act |
| **1984** | Lisa Begins Working for Defendant |
| **October 12, 2021** | Defendant holds Secret Meeting with Lawyer and Human Resources |
| **October 29, 2021** | Defendant Announces All Employees Will be Forced to be Vaccinated |
| **November 10, 2021** | Lisa Makes Written Religious Exemption Request |
| **December 1, 2021** | Lisa is Interviewed by Human Resources and a Lawyer |
| **December 2, 2021** | Defendant Denies Lisa's Religious Exemption and Tells Her She Must Get Vaccinated by December 8, 2021 or Fired |
| **January 4, 2022** | Lisa is Fired after 38 Years |

As for the argument that Plaintiff cannot mention the audio recording that three federal judges indicated is evidence of religious discrimination, Plaintiff begs this Court to listen to it. Defendant tells bold-faced lies when it comes to the audio recording. How can Defendant tell this Court that it has no relevance when it comes to Defendant's religious accommodation process? The audio expressly states the how, what, when, where and why of Defendant's religious accommodation process. Feinbaum admits that he is doing the religious accommodation interviewing and second-guessing religious beliefs through "google" searches.

```
16   MR. FEINBAUM: It's a good question.  In terms of the
17   one I'm interviewing at 3:30, this person also has a
18   Facebook site, and she does not appear in my opinion
19   to be a spiritual leader or religious leader.  So it's
20   kind of, you've got to just do your research.  You
21   kinda would think that most reputable churches or
22   mosques or synagogues, their religious leaders, if you
23   Google their name, it will come up as being affiliated
24   with that organization, which is part of our process.
25   We double check everything, and it's just, you know,
```

Feinbaum even tells the HR Team that if they have questions about the religious accommodation process, to ask either him (HR Director) or Patricia Snyder (VP of HR), both of whom are listed on Plaintiff's witness list and were timely disclosed.

```
6   MR. FEINBAUM: All good questions.  Any other ones?
7   Okay.  Well, if you ever have any questions you think
8   of after this meeting, you can always reach out to
9   Tricia or myself and we'll be happy to answer.
```

There may never be a more express, damning statement of religious accommodation discrimination that gets caught on video than this—and yet there is still apparently reluctance to acknowledge that the evidence is relevant. That is plainly wrong and unfair to Plaintiff. We are talking about Defendant stating that it is "***not*** going to accept all religious accommodation requests," but it "might not accept all medical accommodation requests"—which is discrimination because Defendant has placed a higher burden on religious requests, which the Supreme Court states in *Abercrombie* that an employer may not do. *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775 (2015) ("Title VII does not demand mere neutrality with regard to religious practices—that they be treated no worse than other practices. Rather, it gives them ***favored treatment***, affirmatively obligating employers not . . . discharge any individual . . . because of such individual's 'religious observance and practice.'").

We have Defendant describing its policy of "really scrutinizing" the religious accommodation requests and "apply[ing] this process to our own employees," which completely undercuts Defendant's argument that the job applicant religious accommodation process was different than the employee process. We see Defendant talking about religious accommodation in the exact same way that the religious accommodation interviewers told Lisa Domski that she would be treated. Patricia Snyder states that employees have to "tie their reason for not getting a vaccine to a

religious belief." That is exactly what Defendant told all of the religious accommodation applicants. Defendant's witnesses will testify that Lisa Domski had to "tie [her] reason for not getting a vaccine to a religious belief." Relevance here simply could not be more obvious.

```
1   MS. SNYDER:   -- the expectations for this team because
2   you guys are on the front lines working with leaders,
3   desperately trying to fill, I know hundreds of open
4   reqs and every open position is an important one to be
5   able to fill.  And identifying the right person is
6   important, we know, to the organization and
7   everything, but I want to be very realistic with this
8   group to say, we're not going to accept all religious
9   accommodation requests.  We might not accept all
10  medical accommodation requests.  This may likely lead
11  to some candidates falling out of the process after
12  they've already been selected, and that will be
13  unfortunate, but we have to, first of all, be
14  consistent in how we make these decisions.  And if we
15  ever are going to have to apply this process to our
16  own employees, we have to be consistent with how we
17  treat our own employees.
18  So I just kind of want to put it out there that we're
19  going to be really scrutinizing like Bart's talking
20  about, and if someone really can't tie their reason
21  for not getting a vaccine to a religious belief, then
22  they're going to likely fall out and their request for
23  an exemption will be denied.
```

## II. SUMMARY OF PLAINTIFF'S LOST EARNINGS.

Defendant's allegation that Plaintiff is attempting to circumvent this Court's exclusion of her economic damages expert is spurious. Had Defendant inspected both the demonstrative exchanged for trial and the economic damages chart prepared by Plaintiff's former expert witness, it would have quickly observed that they were ***entirely different***. The chart presently before this Court is rudimentary and Plaintiff is fully prepared to lay a foundation for the entire thing in her testimony. Of course, if she fails to do so, Defendant can attack the veracity of the chart and/or her testimony. Cf. *Mahoney v. Found. Medicine, Inc.*, No. 17-11394-LTS, 342 F. Supp. 3d 206, 2018 WL 4516684, at *4 (D. Mass. Sept. 20, 2018) (denying motion to strike because the chart was "helpful" in summarizing defendants' disclosures and risk warnings).

**Lisa Domski**
**Summary of Lost Earnings and Benefits and Lost Retirement Benefits**

| Past or Future | Year | Salary | Bonus | Fringe Benefits [a] | 401K Match | Total Lost Earnings / Benefits | Lost Retirement Benefits | Total Lost Earnings and Benefits and Lost Retirement Benefits |
|---|---|---|---|---|---|---|---|---|
| Past | 1 | $ 92,300 | $ 5,000 | $ 1,058 | $ 3,000 | $ 101,358 | | $ 101,358 |
| Past | 2 | 92,300 | 5,000 | 1,058 | 3,000 | 101,358 | | 101,358 |
| Past | 3 (Partial Yr) | 69,225 | 3,750 | 794 | 2,250 | 76,019 | | 76,019 |
| **Past Damages as of 10/31/24** | | **$ 253,825** | **$ 13,750** | **$ 2,910** | **$ 8,250** | **$ 278,735** | **$ -** | **$ 278,735** |
| Future | 3 (Partial Yr) | $ 23,075 | 1,250 | 264 | $ 750 | $ 25,339 | | $ 25,339 |
| Future | 4 | 92,300 | 5,000 | 1,058 | 3,000 | 101,358 | | 101,358 |
| Future | 5 | 92,300 | 5,000 | 1,058 | 3,000 | 101,358 | | 101,358 |
| Future | 6 | 92,300 | 5,000 | 1,058 | 3,000 | 101,358 | | 101,358 |
| Future | 7 | 92,300 | 5,000 | 1,058 | 3,000 | 101,358 | | 101,358 |
| Future | 8 | 92,300 | 5,000 | 1,058 | 3,000 | 101,358 | | 101,358 |
| Future | 9 | 92,300 | 5,000 | 1,058 | 3,000 | 101,358 | | 101,358 |
| Future | 10 | 92,300 | 5,000 | 1,058 | 3,000 | 101,358 | | 101,358 |
| Future | 11 | | | | | | 18,000 | 18,000 |
| Future | 12 | | | | | | 18,000 | 18,000 |
| Future | 13 | | | | | | 18,000 | 18,000 |
| Future | 14 | | | | | | 18,000 | 18,000 |
| Future | 15 | | | | | | 18,000 | 18,000 |
| Future | 16 | | | | | | 18,000 | 18,000 |
| Future | 17 | | | | | | 18,000 | 18,000 |
| Future | 18 | | | | | | 18,000 | 18,000 |
| Future | 19 | | | | | | 18,000 | 18,000 |
| Future | 20 | | | | | | 18,000 | 18,000 |
| **Future Damages as of 10/31/24** | | **$ 669,175** | **$ 36,250** | **$ 7,670** | **$ 21,750** | **$ 734,845** | **$ 180,000** | **$ 914,845** |
| **Total Damages** | | **$ 923,000** | **$ 50,000** | **$ 10,580** | **$ 30,000** | **$ 1,013,580** | **$ 180,000** | **$ 1,193,580** |

## III. BCBSM REVENUE.

Both the Sixth Circuit and the Supreme Court have made it abundantly clear that financial information is relevant as to punitive damages in federal cases. *Clark v. Chrysler Corp.*, 436 F.3d 594, 618 (6th Cir. 2006) (stating that "consideration of the defendant's financial resources is consistent with the purposes underlying punitive damages."); *Txo Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443, 462 n.28, 113 S. Ct. 2711, 2722 (1993) (stating that "[u]nder well-settled law, however, factors such as [a party's finances] are typically considered in assessing punitive damages."). The Sixth Circuit explained why financial information is relevant:

> Since a fixed dollar award will punish a poor person more than a wealthy one, one can understand the relevance of the defendant's financial position to the State's interest in retribution . . . The defendant's financial position is equally relevant to the State's interest in deterrence, which is also a valid purpose of punitive damages.

*Romanski v. Detroit Entm't, L.L.C.*, 428 F.3d 629, 647 (6th Cir. 2005). Other courts have held the same. *Koel v. Citizens Med. Ctr., Inc.*, No. 2:21-cv-02166-HLT-TJJ, 2023 U.S. Dist. LEXIS 9607, at *5 (D. Kan. Jan. 19, 2023) ("[g]enerally, information about a party's current net worth or financial condition is relevant to the issue of punitive damages."); *Chernyy v. Roesler*, No. 8:21CV366, 2024 U.S. Dist. LEXIS 169904, at *6 (D. Neb. Sep. 20, 2024) ("it is well established that under federal law, the evidence of a defendant's financial worth is relevant to a claim for punitive damages."); *Ferrarelli v. Federated Fin. Corp. of Am.*, 253 F.R.D. 432, 433 (S.D.

9

Ohio 2008) ("where a plaintiff seeks to recover punitive damages, evidence of the financial condition of the defendant is highly relevant."). Accordingly, evidence of Defendant's current finances, wealth, and financial status is highly relevant to the issue of punitive damages in this case.

## IV.  THE HR RECORDING.

Defendant's untimely attack on the HR Meeting recording is unlawful. This Court has consistently prevented Plaintiff from putting in evidence that was not introduced in a procedurally proper fashion. Yet, Defendant is allowed to attack the relevance of the HR Meeting audio that was timely produced in November 2023, included in the original trial disclosures, and Defendant **never objected to**, as you can see below.

| | | | | | | |
|---|---|---|---|---|---|---|
| 46. | Human Resources Recording | WDMI0024104 | Sep. 7, 2023 | Aug. 12, 2024 | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 54. | Request HR Recording Transcript | WDMI0024104 | Sept. 2023 | Aug. 12, 2024 | | |

Defendant makes only "lawyer arguments" to exclude the HR Meeting as an exhibit, not relying on any type of admissible evidence. This HR Meeting protest has become a sideshow and there is zero reason for that given Defendant took no depositions, submitted no affidavits, and is keeping out this evidence based solely on fake recitations of facts and laws to this Court.

10

## V. SUMMARY OF ACCOMMODATION REQUESTS.

This is Defendant's business record. What in the world could be wrong with using it as a demonstrative? It will surely come in as impeachment evidence if Defendant's witnesses do not admit to the incredible volume of religious accommodations that Defendant denied. Moreover, it is certainly the best evidence of Defendant's voluminous religious accommodation denials, which is evidence that goes to whether religion played a motivating factor in Plaintiff's termination. Was it merely an accident that Defendant denied 500+ religious accommodation requests? Of course not. Plaintiff must be allowed to show the jury Defendant's own statistical analysis of religious accommodation requests, or else Plaintiff's evidence is not getting the "favored treatment" that the Supreme Court states that Plaintiff deserves as an employee fired based on her religious beliefs.

## VI. DEFENDANT'S RELIGIOUS ACCOMMODATION QUESTIONS.

This is the most bizarre of Defendant's objections. Defendant asks this Court to ban not just a demonstrative of the questions that were asked to all employees as part of the religious accommodation interview process, but ban any mention of them at all. That is crazy because Plaintiff indeed was interviewed and answered a number of these questions. But what is obvious here is that Defendant is trying to hide from the interview questions because Defendant's witnesses have recently been deposed and had no clue why these questions were asked. Rudy Makupson just yesterday

testified that he designed the questions by himself without any relevant training. Asked why he thought that Aspirin was developed in the same manner as the COVID-19 vaccine, Mr. Makupson said he did not know and could not find out. In fact, Defendant would probably like the interview questions to be presented to the jury in Size 2 font, just like this:



For crying out loud, these are the religious accommodation interview questions that were asked to *every* religious accommodation applicant. Defendant will probably tomorrow ask this Court to exclude Plaintiff herself from testifying.

Respectfully submitted,

HURWITZ LAW PLLC

*/s/ Noah S. Hurwitz*
Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
HURWITZ LAW PLLC
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
*Attorneys for Plaintiff*

Dated: November 2, 2024

## PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing was served upon the attorney(s) of record for all parties by submitting the document through the ECF filing system on November 2, 2024.

/s/ *Noah S. Hurwitz*
Noah S. Hurwitz (P74063)