UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LISA DOMSKI,

     Plaintiff,

v.

BLUE CROSS BLUE SHIELD
OF MICHIGAN,

     Defendant.

Case No. 2:23-cv-12023

Hon. David M. Lawson

Hon. Mag. Elizabeth A. Stafford

---

Noah S. Hurwitz (P74063)
HURWITZ LAW PLLC
340 Beakes Street, Suite 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
*Attorneys for Plaintiff*

Jonathan R. Marko (P72450)
MARKO LAW, PLLC
220 W. Congress, Fourth Floor
Detroit, MI 48226
(313) 777-7529
jon@markolaw.com
*Attorneys for Plaintiff*

Scott R. Knapp (P61041)
Brandon C. Hubbard (P71085)
Nolan J. Moody (P77959)
Maureen J. Moody (P85032)
DICKINSON WRIGHT PLLC
123 W. Allegan Street, Suite 900
Lansing, MI 48933
(517) 371-1730
sknapp@dickinsonwright.com
bhubbard@dickinsonwright.com
nmoody@dickinsonwright.com
mmoody@dickinsonwright.com
*Attorneys for Defendant*

---

## DEFENDANT BLUE CROSS BLUE SHIELD OF MICHIGAN'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND FOR A NEW TRIAL

Blue Cross Blue Shield of Michigan ("BCBSM"), by its attorneys Dickinson

Wright PLLC, moves for judgment as a matter of law pursuant to Federal Rule of

Civil Procedure 50(b) as to Plaintiff Lisa Domski's claims for intentional religious discrimination (Counts II-III), and for a new trial pursuant to Federal Rule of Civil Procedure 59. BCBSM relies on the facts, law, and argument set forth in its accompanying brief, and the record made at trial.

On November 8, 2024, the Court entered an Order permitting BCBSM to file by November 17, 2024 a motion "renew[ing] its motion for judgment as a matter of law[.]" ECF No. 124, PageID.3805. BCBSM files this Motion pursuant to the Court's Order.

WHEREFORE, BCBSM respectfully requests that this Honorable Court enter an Order: (1) granting BCBSM's Renewed Motion for Judgment as a Matter of Law; (2) granting BCBSM a new trial; and (3) awarding any further relief this Court deems equitable and just.

Respectfully submitted,

DICKINSON WRIGHT PLLC

By:*/s/ Brandon C. Hubbard*
Scott R. Knapp (P61041)
Brandon C. Hubbard (P71085)
Nolan J. Moody (P77959)
Maureen J. Moody (P85032)
DICKINSON WRIGHT PLLC
123 W. Allegan Street, Suite 900
Lansing, MI 48933
(517) 371-1730
bhubbard@dickinsonwright.com
*Attorneys for Defendant*

Dated:  November 17, 2024

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LISA DOMSKI,

       Plaintiff,

v.

BLUE CROSS BLUE SHIELD
OF MICHIGAN,

       Defendant.

Case No. 2:23-cv-12023

Hon. David M. Lawson

Hon. Mag. Elizabeth A. Stafford

---

Noah S. Hurwitz (P74063)
HURWITZ LAW PLLC
340 Beakes Street, Suite 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
*Attorneys for Plaintiff*

Jonathan R. Marko (P72450)
MARKO LAW, PLLC
220 W. Congress, Fourth Floor
Detroit, MI 48226
(313) 777-7529
jon@markolaw.com
*Attorneys for Plaintiff*

Scott R. Knapp (P61041)
Brandon C. Hubbard (P71085)
Nolan J. Moody (P77959)
Maureen J. Moody (P85032)
DICKINSON WRIGHT PLLC
123 W. Allegan Street, Suite 900
Lansing, MI 48933
(517) 371-1730
sknapp@dickinsonwright.com
bhubbard@dickinsonwright.com
nmoody@dickinsonwright.com
mmoody@dickinsonwright.com
*Attorneys for Defendant*

---

**DEFENDANT BLUE CROSS BLUE SHIELD OF MICHIGAN'S
BRIEF IN SUPPORT OF ITS RENEWED MOTION FOR JUDGMENT AS
<u>A MATTER OF LAW AND FOR A NEW TRIAL</u>**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................... ii

ISSUES PRESENTED............................................................... v

MOST APPROPRIATE AUTHORITIES .............................................vi

I.  INTRODUCTION ....................................................................1

II.  LEGAL STANDARDS................................................................1

    A.  Fed. R. Civ. P. 50 .......................................................1

    B.  Fed. R. Civ. P. 59(a).....................................................2

III.  ARGUMENT .........................................................................3

    A.  There Is Not A Legally Sufficient Evidentiary Basis To Conclude That Plaintiff Was Terminated Because Of Her Religion ...................................................................... 3

        1.  Plaintiff failed to present direct evidence of religious discrimination ......................................................3

        2.  Stray comments from non decision-makers do not constitute direct evidence of discriminatory animus ........5

        3.  Plaintiff failed to present evidence that Jeff Walters, the decision-maker, was motivated by discriminatory animus ...........................................................9

        4.  Plaintiff failed to present evidence to support a *prima facie* case of discrimination ....................................14

    B.  The Court Should Grant a New Trial Under Rule 59 .................19

IV.  CONCLUSION ....................................................................25

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amini v. Oberlin College*,
   440 F.3d 350 (6th Cir. 2006) ................................................................3

*Bieske, et. al v. Accident Fund Ins. Co.*,
   Case No. 1:22-cv-01088-JMB-PJG (W.D. Mich. Jul. 9, 2024) ...........9

*Blizzard v. Marion Tech. College*,
   698 F.3d 275 (6th Cir. 2012) ..............................................................18

*Bolden v. Lowes Home Centers, LLC*,
   783 Fed. App'x. 589 (6th Cir. 2019) ...................................................15

*Bush v. Dictaphone Corp.*,
   161 F.3d 363 (6th Cir. 1998) ..............................................................11

*Bushouse v. Local Union 2209, United Auto., Aerospace & Agricultural
   Implement Workers of Am.*,
   164 F. Supp. 2d 1066 (N.D. Ind. 2001) ................................................5

*City of Cleveland v. Peter Kiewit Sons' Co.*,
   624 F.2d 749 (6th Cir. 1980) ..............................................................24

*Curry v. SBC Communications, Inc.*,
   669 F. Supp. 2d 805 (E.D. Mich. 2009) ................................................3

*E.E.O.C. v. Papin Enterprises, Inc.*, No. 6:07-cv-1548-Orl-28GJK, 2009 WL
   2256023 (M.D. Fla. July 28, 2009) .....................................................20

*Garcimonde-Fisher v. Area203 Mktg., LLC*,
   105 F. Supp. 3d 825 (E.D. Tenn. 2015)................................................8

*Graham v. Best Buy Stores, L.P.*,
   298 Fed. App'x. 487 (6th Cir. 2008) ...................................................18

*Harris v. Giant Eagle Inc.*,
   133 Fed. App'x. 288 (6th Cir. 2005) ...................................................14

*Hensley v. Bossio,*
   No. 23-5606, 2024 WL 2799261 (6th Cir. May 31, 2024) ...................2

*Holmes v. City of Massillon*,
78 F.3d 1041 (6th Cir. 1996) ................................................................19

*Ivezaj v. Detroit Pub. Sch.*,
99 F. Supp. 3d 735 (E.D. Mich. 2015) ....................................................8

*Johnson v. Kroger Co.*,
319 F.3d 858 (6th Cir. 2003) ..................................................................3

*Jones v. McDonald*,
No. 14-CV-361-JMH, 2016 WL 5844476 (E.D. Ky. Sept. 30, 2016) ................8

*Karnib v. Dep't of Corrections*,
No. 363669, 2024 WL 2790505 (Mich. Ct. App. May 30, 2024)......................15

*Lawson v. United States Steel Corporation*,
No. 19-cv-13175, 2022 WL 17960778 (E.D. Mich. Oct. 19, 2022) .......... 6, 7, 8

*Lowe v. Walbro LLC,*
No. 1:18-cv-12835, 2024 WL 4545961 (E.D. Mich. Oct. 22, 2024) ......... passim

*Noble v. Brinker Int'l, Inc.*,
391 F.3d 715 (6th Cir. 2004) ...................................................... passim

*Partin v. Weltman Weinberg & Reis Co. LPA*,
666 Fed. App'x. 428 (6th Cir. 2016) ..................................................3

*Patterson v. Hudson Area Sch.*,
724 F. Supp. 2d 682 (E.D. Mich. 2010) ...........................................20

*Pelcha v. MW Bancorp, Inc.*,
988 F.3d 318 (6th Cir. 2021) ...................................................... passim

*Smith v. Chrysler Corp.*,
155 F.3d 799 (6th Cir. 1998) ..................................................................3

*Smith v. Leggett Wire Co.*,
220 F.3d 752 (2000)..............................................................................8

*Stafford v. Electronic Data Systems Corp.*,
749 F. Supp. 781 (E.D. Mich. 1990) ...................................................22

*Umani v. Michigan Dep't of Corr*,
   432 Fed. App'x. 453 (6th Cir. 2011) ....................................................4

*Waller v. Moore-Patton*,
   No. 15-13305, 2017 WL 726664 (E.D. Mich. Jan. 18, 2017) ...........................9

*Weber v. Infinity Broad. Corp.*,
   No. 02-74602, 2005 WL 3726303 (E.D. Mich. Dec. 14, 2005) .......................21

*Worthy v. Mich. Bell. Tel. Co.*,
   472 Fed. App'x. 342 (6th Cir. 2012) .................................................6, 7

*Wright v. Murray Guard, Inc.*,
   455 F.3d 702 (6th Cir. 2006) ..........................................................17

*Wu v. Tyson Foods, Inc.*,
   189 Fed. App'x. 375 (6th Cir. 2006) ...................................................19

## Statutes

42 U.S.C. § 1981a(b)(3) ......................................................................22

42 U.S.C. § 2000e-2(a) .......................................................................2

## Rules

Fed. R. Civ. P. 50(a) ......................................................................1, 2

Fed. R. Civ. P. 50(b) ..................................................................v, vi, 2

Fed. R. Civ. P. 59 ...........................................................................1

Fed. R. Civ. P. 59(a) ..................................................................v, vi, 3

Fed. R. Civ. P. 59(a)(1)(A) .................................................................3

## ISSUES PRESENTED

1.  Whether Blue Cross Blue Shield of Michigan is entitled to judgment as a matter of law under Federal Rule of Civil Procedure 50(b) as to Counts II and III of Plaintiff's Amended Complaint, where no reasonable jury could conclude from the evidence at trial that Plaintiff was terminated because of her religion?

    | | |
    |---|---|
    | Defendant answers: | Yes. |
    | Plaintiff answers: | No. |
    | The Court Should Answer: | Yes. |

2.  Whether Blue Cross Blue Shield of Michigan is entitled to a new trial under Federal Rule of Civil Procedure 59(a) where the jury verdict was against the great weight of the evidence, damages were excessive and unsupported by the evidence at trial, the jury verdict was the byproduct of Plaintiff's counsel's misconduct, and the stray remarks about an October 2021 meeting were entirely *irrelevant* to Plaintiff's Failure to Accommodate claim?

    | | |
    |---|---|
    | Defendant answers: | Yes. |
    | Plaintiff answers: | No. |
    | The Court Should Answer: | Yes. |

## <u>MOST APPROPRIATE AUTHORITIES</u>

- Fed. R. Civ. P. 50(b)

- Fed. R. Civ. P. 59(a)

- *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715 (6th Cir. 2004)

- *Lowe v. Walbro LLC,* No. 1:18-cv-12835, 2024 WL 4545961 (E.D. Mich. Oct. 22, 2024)

## I.   **INTRODUCTION**

This is a religious discrimination case in which Plaintiff Lisa Domski ("Plaintiff") asserted against Blue Cross Blue Shield of Michigan ("BCBSM") a claim under Title VII for failure to accommodate (Count I), and claims under Title VII and Michigan's Elliott Larsen Civil Rights Act ("ELCRA") for intentional discrimination (Counts II-III).

A jury trial occurred between November 4 and November 7, 2024. At the close of Plaintiff's case-in-chief, BCBSM made an oral Motion for Judgment as a Matter of Law ("Motion") on Plaintiff's intentional discrimination claims. ECF No. 125, PageID.3949-52, 144: 16 – 147: 9. The Court took BCBSM's Motion under advisement, and submitted the case to the jury at the close of all proofs. *Id.* at PageID.3954, 149: 14-17.

The jury rendered a verdict in Plaintiff's favor. BCBSM now renews its Motion because the jury's verdict was not supported by sufficient evidence. BCBSM also moves the Court for a new trial pursuant to Federal Rule of Civil Procedure 59.

## II.   **LEGAL STANDARDS**

### A.   **Fed. R. Civ. P. 50**

Judgment as a matter of law is appropriate under Federal Rule of Civil Procedure 50(a) if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [non-moving] party on [an] issue," and the claim can "under the controlling law . . . be maintained . . . only with a favorable finding on that issue."

1

*Hensley v. Bossio,* No. 23-5606, 2024 WL 2799261, *9 (6th Cir. May 31, 2024),

quoting Fed. R. Civ. P. 50(a). A district court's grant of a motion for judgment as a

matter of law will be upheld if, "viewing the evidence in the light most favorable to

the party against whom the motion is made, and that party given the benefit of all

reasonable inferences, . . . reasonable minds could not come to a conclusion other

than one favoring the movant." *Id.* (internal quotation omitted).

   "If the court does not grant a motion for judgment as a matter of law made

under Rule 50(a) . . . the movant may file a renewed motion for judgment as a matter

of law [no later than 28 days after the jury was discharged] and may include an

alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b).

   "When entertaining a motion for judgment as a matter of law following a trial

on the merits in a Title VII case, a reviewing court should . . . assess the ultimate

question of [intentional] discrimination" (*Noble v. Brinker Int'l, Inc.*, 391 F.3d 715,

720 (6th Cir. 2004)), meaning here, whether there is a legally sufficient evidentiary

basis in the record establishing that Plaintiff was terminated "because of" her

religion. 42 U.S.C. § 2000e-2(a). Because there is not, BCBSM is entitled to

judgment as a matter of law.

### B.     Fed. R. Civ. P. 59(a)

   Under Rule 59(a), the Court may "on motion, grant a new trial . . . for any

reason for which a new trial has heretofore been granted in an action at law in federal

court." Fed. R. Civ. P. 59(a)(1)(A).

## III.   <u>ARGUMENT</u>

### A.   **There Is Not A Legally Sufficient Evidentiary Basis To Conclude That Plaintiff Was Terminated Because Of Her Religion**

#### 1.   **Plaintiff failed to present direct evidence of religious discrimination**

"[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003). In other words, "direct evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Id*. Thus, "[e]vidence of discrimination is not considered direct evidence unless a[n improper] motivation is explicitly expressed." *Curry v. SBC Communications, Inc.*, 669 F. Supp. 2d 805, 824 (E.D. Mich. 2009), quoting *Amini v. Oberlin College*, 440 F.3d 350, 359 (6th Cir. 2006). Said differently, "[d]irect evidence is a manifestation of actual discriminatory intent by a decision maker, such as an explicit statement that the employer was acting on the basis of a protected status." *Id.*

"[D]irect evidence is the proverbial 'smoking gun.'" *Partin v. Weltman Weinberg & Reis Co. LPA*, 666 Fed. App'x. 428, 433 (6th Cir. 2016). For example, "an employer telling an employee, 'I fired you because you are disabled.'" *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998). "Direct evidence is composed of

3

only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor." *Umani v. Michigan Dep't of Corr*, 432 Fed. App'x. 453, 458 (6th Cir. 2011).

In support of her direct evidence claims, Plaintiff relies, solely, on comments from Bart Feinbaum, Director, Labor and Employee Relations, and Tricia Snyder, Vice President, Employee and Labor Relations. In doing so, however, Plaintiff asked the jury to *infer* discriminatory animus. Once the jury has to infer intent, the evidence does not constitute direct evidence of discrimination.

As the Court recalls, although Mr. Feinbaum testified that, at an October 12, 2021 meeting, he compared the religious accommodation process to a fun and interesting experience that would be like a mini deposition (ECF No. 116, PageID.3425, 54: 8-14), he later explained that the accommodation process would be fun and interesting "purely professionally" because it would present an opportunity for him to put to practice "about 25 years as an adjunct professor" teaching employment law. *Id.* at PageID.3447-48, 76: 9 – 77: 3. As a lawyer, his reference to depositions meant only that BCBSM would utilize "a thorough process." *Id.* at PageID.3423, 52: 10-14.

Similarly, although Ms. Snyder testified that, at the same October 12, 2021 meeting, she told employees in the Talent Acquisition department that accommodation requests would be "scrutinized," she meant only that BCBSM

"need[ed] to be very thorough in understanding each individual's religious accommodation request and their religious beliefs." ECF No. 120, PageID.3639, 53: 5-10. Further, when Ms. Snyder said "we're not going to accept all religious accommodation requests," she was imparting to the Talent Acquisition team that "they could have some candidates that they worked very hard to recruit fall out . . . of the [hiring] process because they were not going to have a religious belief that met the criteria for an accommodation." *Id.* at PageID.3637, 51: 6-17. These comments were perfectly consistent with Title VII and do not in any way rise to the level of "direct evidence" of discrimination. "Title VII requires [an employer] to accommodate only those [persons] who hold sincere religious beliefs that specifically conflict with [an employment] requirement." *See Bushouse v. Local Union 2209, United Auto., Aerospace & Agricultural Implement Workers of Am.*, 164 F. Supp. 2d 1066, 1075 (N.D. Ind. 2001).

Plaintiff did not present "smoking gun" evidence at trial. Instead, she asked the jury to *infer*, from stray comments made by non-decision-makers, that BCBSM terminated her employment based on discriminatory animus. Plaintiff's reliance on inferences, alone, demonstrates there was no direct evidence of discrimination.

**2.     Stray comments from non decision-makers do not constitute direct evidence of discriminatory animus**

The Sixth Circuit recently confirmed in *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 325 (6th Cir. 2021) that four factors are considered in determining the

"materiality" of allegedly discriminatory statements: "(1) whether the statements were made by a decision[-]maker . . . ; (2) whether the statements were related to the decision[-]making process; (3) whether the statements were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the act of termination." *See also Worthy v. Mich. Bell. Tel. Co.*, 472 Fed. App'x. 342, 347 (6th Cir. 2012) (discussing the same four factors "[t]o determine if statements are 'relevant' as direct evidence of discrimination or are merely 'stray remarks'").

In *Pelcha*, an age discrimination case, the plaintiff argued that there was "direct evidence" of discrimination where the defendant's President and CEO made comments that an employee in her eighties had a "limited shelf life" and had reached her "expiration date," and that he wanted to "hire younger tellers." *Id.* Although the President was the decision-maker with respect to the plaintiff's termination, the statements did not qualify as "direct evidence" of discrimination. Because the comments were not related to the plaintiff's termination, were isolated remarks made once or twice to higher-level management, and were made more than six months before the plaintiff's termination, the plaintiff could not demonstrate an issue of material fact based on direct evidence of discrimination. *Id.* at 325-26.

Similarly, in *Lawson v. United States Steel Corporation*, No. 19-cv-13175, 2022 WL 17960778 (E.D. Mich. Oct. 19, 2022), the plaintiff practiced the

Rastafarian religion. *Id.* at * 1. As part of his faith, the plaintiff wore his hair in long dreadlocks and did not cut it. *Id.* The plaintiff was suspended for violating the defendant's safety policy regarding long hair in the workplace, and for sleeping on the job. *Id.* **1-2. After his suspension was converted into a termination, the plaintiff sued the defendant for race and religious discrimination. *Id.* The plaintiff contended there was direct evidence of religious discrimination because his supervisor made pejorative comments about the length and cleanliness of his hair, including that she "didn't think that men should have long hair," and did not think people "who had dreads" washed their hair, but instead "just grew it with poor hygiene." *Id.* at *2. The supervisor further mocked the plaintiff by accusing him of "claiming to be religious just to smoke weed." *Id.*

The court, applying the *Pelcha*/*Worthy* factors, found the statements "d[id] not meet the standard for establishing direct evidence of . . . religious discrimination." *Id.* at *5. Indeed, none of the statements directly invoked religion. *Id.* at *6. And even if the comments were related to Rastafarianism, they did not "motivate[] [defendant] to terminate [plaintiff's] employment" because the comments were neither made by a decision-maker nor connected to the plaintiff's termination, and were isolated incidents that occurred months before the plaintiff's termination. *Id.* at *6 (noting the comments were "no smoking gun of discrimination, and instead require[d] further inferences[.]").

7

As in *Pelcha* and *Lawson*, none of the statements made by Mr. Feinbaum and Ms. Snyder at the October 12, 2021 HR meeting are "blatant remarks" containing clear discriminatory animus.[1] Further, none of the statements was made in reference to Plaintiff's termination, or repeated as part of a discriminatory pattern. The statements thus do not constitute direct evidence of discrimination. *See Ivezaj v. Detroit Pub. Sch.*, 99 F. Supp. 3d 735, 748 (E.D. Mich. 2015) ("none of the various comments that [plaintiff] ascribes to the individual defendants constitute direct evidence of discrimination, because, even if deemed to be evidence of some form of animus, none of the comments were directly related to the employment decision in question, and none of them state any actual intent or motive by any of the defendants to make the challenged termination decision based upon the animus expressed.").

Moreover, even if the statements reflected discriminatory animus, they are not "direct evidence" of discrimination because they were not made by Jeff Walters, the decision-maker with respect to Plaintiff's accommodation request. *Smith v. Leggett Wire Co.*, 220 F.3d 752, 759 (2000) ("[s]tatements by non[] decision[-]makers

---

[1] Cases in which there *was* direct evidence of discrimination further illustrate that this case is not among them. *See e.g. Garcimonde-Fisher v. Area203 Mktg., LLC*, 105 F. Supp. 3d 825, 842 (E.D. Tenn. 2015) (finding direct evidence from supervisor's comments that he terminated an employee because "he felt that [the employee] was not the type of Christian he wanted in leadership in his company[.]"); *Jones v. McDonald*, No. 14-CV-361-JMH, 2016 WL 5844476 (E.D. Ky. Sept. 30, 2016) (finding direct evidence from supervisor's comment that she was there "for the purpose of cleaning out the [racial slur]" prior to terminating defendant).

cannot suffice to satisfy the plaintiff's burden of demonstrating animus.") (internal markups omitted); *Waller v. Moore-Patton*, No. 15-13305, 2017 WL 726664, *7, n. 1 (E.D. Mich. Jan. 18, 2017) (plaintiff's claim could not be analyzed under a "direct evidence" theory where the alleged statement was made by an employee who "did not make the decision to terminate [plaintiff's] employment").

Simply put, the statements at the October 12, 2021 HR meeting were not "evidence from the lips of the defendant proclaiming his or her animus," nor were they made by a decision-maker about Plaintiff's termination. *Pelcha*, 988 F.3d at 326. As a result, they are not direct evidence of discrimination. *Bieske, et. al v. Accident Fund Ins. Co.*, Case No. 1:22-cv-01088-JMB-PJG, ECF No. 88, PageID.1033-34 (W.D. Mich. Jul. 9, 2024) (plaintiffs' allegations relative to the October 12 HR meeting were not direct evidence of discrimination because "[Mr.] Feinbaum's statements . . . do not rise to the level of express statements of a desire to remove employees . . . nor do they reflect discriminatory animus").

### 3.    Plaintiff failed to present evidence that Jeff Walters, the decision-maker, was motivated by discriminatory animus

Judgment as a matter of law is also appropriate for BCBSM on Counts II and III because Plaintiff failed to introduce evidence that Jeff Walters took adverse action against Plaintiff because of her religion.

It is undisputed that Jeff Walters was the decision-maker with respect to Plaintiff's accommodation request. ECF No. 116, PageID.3538, 167: 5-6 (Mr.

Walters: "Bruce and I made the decision to deny [Plaintiff's] accommodation request."). Mr. Walters testified that he respects all faiths, that his own personal religion teaches him not to discriminate, and that he does not discriminate against other religions. *Id.* at PageID.3548, 176: 15 – 177: 6. Mr. Walters further testified that no "magic words" were required to obtain a religious accommodation to BCBSM's vaccine policy (*id.* at PageID.34990, 119: 7-14), and agreed that "an employee's stated religious beliefs, practices, or observances is [generally] not in dispute[.]" *Id.* at 119: 15-19.

Mr. Walters made the non-discriminatory decision to deny Plaintiff's accommodation request—not because of Plaintiff's religion—but because Plaintiff refused to describe for Mr. Walters, in her own words, her religious conflict with the COVID-19 vaccine (ECF No. 125, PageID.3914-16, 109: 19 – 111: 14), meaning she did not communicate to Mr. Walters a sincerely held religious belief in conflict with BCBSM's vaccine policy, and Mr. Walters had an honest (non-discriminatory) belief that Plaintiff's written submission was not her own. ECF No. 116, PageID.3552, 181: 5-14 ("[Plaintiff's] unwillingness to answer the questions caused me to wonder and believe that it may not have been her letter that she wrote. I was asking to get in her words what . . . she had to say about her religious beliefs. I mean, anybody can write a letter. And the intent was to really hear from her on explaining why she [] wanted an exemption to the vaccine. It made me believe that the letter

didn't come from her.").[2] This unrebutted evidence establishes that the decision to deny Plaintiff's request was not motivated by discriminatory animus.

Moreover, the stray comments of Mr. Feinbaum and Ms. Snyder during the October 12, 2021 HR meeting (even if discriminatory) cannot be used to establish that *Mr. Walters* harbored discriminatory animus. The "statements or conduct of non[-]decisionmakers"[3]—such as those of Mr. Feinbaum and Ms. Snyder—"cannot suffice to satisfy the plaintiff's burden of demonstrating animus," unless "they can be imputed to the ultimate decision-maker" (i.e., Mr. Walters). *Noble*, 391 F.3d at 724; *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998) ("[S]tatements by nondecisionmakers . . . cannot suffice to satisfy the plaintiff's burden of demonstrating animus.") (internal quotations and markups omitted).

And to impute Mr. Feinbaum's and/or Ms. Snyder's statements to Mr. Walters, Plaintiff was required to "submit competent evidence that [their]

---

[2] Plaintiff testified that she utilized template accommodation requests found on the internet, including thehealthyamerican.com, to create the accommodation request letter she submitted to BCBSM (ECF No. 125, PageID.3844, 39: 4-13; *id.* at PageID.3839, 93: 22 – 94: 3), thereby supporting, rather than discrediting, Mr. Walters's honest belief that Plaintiff's submission did not reflect her own beliefs. ECF No. 116, PageID.3552, 181: 5-14.

[3] Mr. Feinbaum did not have any input with respect to Plaintiff's accommodation request. ECF No. 116, PageID.3446, 75: 20-22 (Q: "Did you have any input with Ms. Domski's religious accommodation request?" A: "No"). Nor did Ms. Snyder. ECF No. 120, PageID.3673, 87: 2-4 (Q: "Did you have any input of any kind with how to evaluate Ms. Domski's religious accommodation request" A: "No.").

discriminatory motives somehow influenced [Mr. Walters]." *Noble*, 391 F.3d at 722 (reversing trial court, and granting judgment as a matter of law for the defendant, where the plaintiff "presented no evidence [at trial] that [one employee's] alleged opinions or attitudes influenced [the decision-maker's] decision to terminate the plaintiff or otherwise caused the plaintiff's discharge."). She did not do so.

Indeed, it went unrebutted that Mr. Walters was not present at the October 12, 2021 meeting. ECF No. 116, PageID.3434, 63: 7-12 (Q: "Was Mr. Walters present at the [October 12] meeting?" A: "Mr. Walters was not in attendance, according to [the transcript]."). Nor was Mr. Walters trained by Mr. Feinbaum relative to the religious accommodation process. *Id.* at PageID.3445, 74: 5-8. In fact, Mr. Feinbaum never even spoke to Mr. Walters about the religious accommodation request process. *Id.* at 74: 19-21 (Q: "Did you ever speak to Jeff Walters about the religious accommodation request process? A: No.").

Likewise, Ms. Snyder never trained Mr. Walters on the religious accommodation request process. ECF No. 120, PageID.3672, 86: 3-5 (Q: "Did you train Blue Cross interviewers about the religious accommodation process?" A: "No."). Nor did she ever "speak to Mr. Walters about how to address religious accommodation requests." *Id.* at 86: 8-10.

And shortly after the October 12 HR meeting, BCBSM changed the manner in which religious accommodation requests were handled. Beginning in late October

or early November 2021, the Human Resources department transferred oversight of religious accommodation requests to the Office of the General Counsel ("OGC"). ECF No. 120, PageID.3635, 49: 1-11. The OGC then made reforms to the interview process. *Id.* at 49: 23-24.

The process changed from "a three-person religious exemption review committee" of which Mr. Feinbaum was a member (ECF No. 116, PageID.3400, 29: 4-11)—and pursuant to which Mr. Feinbaum conducted the accommodation interviews (*id.* at PageID.3399, 28: 23-25)—to a team of interviewers who conducted the accommodation interviews and were the decision-makers relative to employee accommodation requests. ECF No. 120, PageID.3635, 49: 23-25 (Ms. Snyder: "The interview process changed. We established through the office of general counsel a process where it would be a team of interviewers. That was not originally the process."); *id.* at PageID.3654, 68: 11-16 (Ms. Snyder: "The interviewers made the decision on whether or not the person met the criteria for a religious accommodation, and that was reviewed by Rudy Makupson").

Further, once OGC took over from Human Resources, OGC trained interviewers on how to conduct the accommodation interviews. ECF No. 116, PageID.3472, 101: 8-11 (Q: "[] Now, how were you trained on . . . doing this religious accommodation process?" A: "Rudy Makupson trained me probably, maybe, a total of five to ten hours prior to the interviewing process."). After

13

interviewers made their decision regarding an employee's accommodation request, the decision was reviewed by the OGC. *Id.* at PageID.3654, 68: 14-16.

Thus, the undisputed evidence establishes that neither Mr. Feinbaum nor Ms. Snyder influenced Mr. Walters's decision-making. As a result, even if Mr. Feinbaum's and Ms. Snyder's stray remarks could be considered discriminatory, they cannot be used to establish that Mr. Walters was motivated by discriminatory animus when he denied Plaintiff's accommodation request. *Noble*, *supra*; *Harris v. Giant Eagle Inc.*, 133 Fed. App'x. 288, 298-96 (6th Cir. 2005) (plaintiff did not produce sufficient evidence from which the jury could infer intentional discrimination where "she [] introduced no evidence that tends to prove that the person who made racially discriminatory remarks had any role in her firing.").

### 4. Plaintiff failed to present evidence to support a *prima facie* case of discrimination

Because Plaintiff did not introduce "direct evidence" of discrimination, "the indirect method of proof is the only remaining avenue by which [] [P]laintiff can establish a claim of intentional discrimination, [and] it is necessary and appropriate for [the] [C]ourt to evaluate the evidence supporting [] [P]laintiff's *prima facie* case." *Noble*, 391 F.3d at 727. Plaintiff did not prove a *prima facie* case of discrimination, indeed, the Court will recall that Plaintiff's counsel (Mr. Hurwitz)

14

conceded in chambers that Plaintiff was relying only on a "direct evidence" theory.[4]

In any event, the *prima facie* elements of an intentional discrimination claim are that: (1) Plaintiff was a member of a protected class; (2) she was subject to an adverse employment action; (3) she was qualified for her position; and (4) similarly situated employees were treated more favorably. *Bolden v. Lowes Home Centers, LLC*, 783 Fed. App'x. 589, 594 (6th Cir. 2019); *Karnib v. Dep't of Corrections*, No. 363669, 2024 WL 2790505, *2 (Mich. Ct. App. May 30, 2024) (listing the same elements under ELCRA and affirming summary disposition for defendant where there was no direct evidence of discrimination because the racial slurs at issue were not made by a decision-maker, and plaintiff failed to establish a *prima facie* claim).

At trial, Plaintiff introduced *zero* evidence that any similarly situated employee outside of her protected class was treated more favorably than she. And because Plaintiff neither satisfied her *prima facie* burden, nor otherwise proved that she was terminated "because of" her religion, BCBSM is entitled to judgment as a matter of law. *See Lowe v. Walbro LLC,* No. 1:18-cv-12835, 2024 WL 4545961, *7 (E.D. Mich. Oct. 22, 2024) (granting a post-trial motion for judgment as a matter of

---

[4] "Michigan law provides that in claims brought under the ELCRA, the *McDonnell Douglas* approach applies when assessing motions for summary disposition *and for directed verdict* in cases involving circumstantial evidence of discrimination." *Walbro LLC*, 2024 WL 4545961, at *6 (internal quotation and markup omitted) (emphasis in original) (collecting cases). Thus, in the absence of direct evidence of discrimination, judgment as a matter of law is appropriate under Michigan law where a plaintiff fails to establish the *prima facie* elements of discrimination. *Id.*

law on the plaintiff's ELCRA claim where the "[p]laintiff did not identify *any* similarly situated person outside his protected class who was treated differently.").

Moreover, even assuming, *arguendo*, that Plaintiff had established a *prima facie* case at trial, she failed to prove that BCBSM's legitimate, non-discriminatory explanation for her termination was pretextual. It is undisputed that Plaintiff was terminated for failing to comply with BCBSM's vaccination policy. ECF No. 125, PageID.3970, 165: 8-22 (instructing the jury that the Parties' stipulated that "[o]n January 5, 2022, the defendant terminated the plaintiff as a result of her failure to comply with defendant's COVID-19 vaccination policy.").

It is also undisputed that Mr. Walters read Plaintiff's accommodation letter twice—once five or ten minutes before the interview (ECF No. 116, PageID.3504, 133: 12-22), and once after her interview (*id.*, PageID.3513, 142: 16-21)—and attempted to have a conversation with Plaintiff to better understand her religious beliefs and the reason for her accommodation request. *Id.* at PageID.3504, 133: 18-22 (Mr. Walters: "I wanted to really understand . . . in the employee's own words why they were requesting the accommodation."); *id* at PageID.3550-51, 179: 12 – 180: 22 (Mr. Walters asked Plaintiff why she was requesting an accommodation and what her religious beliefs are); *id.* at PageID.3536 (Mr. Walters: ". . . It was stated that it was important that she cooperate with this and answer the questions . . . so that we could make an informed decision on whether or not to grant or deny her

accommodation request.").

It also went unrebutted that Plaintiff refused to explain for Mr. Walters her religious conflict with the COVID-19 vaccine (ECF No. 125, PageID.3914-16, 109: 19 – 111: 14), and thus, Mr. Walters came to the honest, non-discriminatory conclusion that Plaintiff's written submission was not her own (ECF No. 116, PageID.3552, 181: 5-14), meaning Plaintiff did not sincerely hold religious beliefs in conflict with BCBSM's vaccine policy.

Under the honest belief rule, an employer's explanation for an adverse employment decision is not pretext for discrimination—even if the employer turns out to be mistaken—so long as the employer reasonably relied on the particularized facts before it, and honestly believed in the legitimate, non-discriminatory reason for its decision at the time the decision was made. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 708 (6th Cir. 2006). An employer's pre-termination investigation need not be perfect in order to pass muster under the rule, nor must the employer demonstrate that its investigation was optimal or that it left no stone unturned. *Id.* Instead, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action against the employee. *Id.*

Here, even if Mr. Walters was mistaken in believing that Plaintiff's written submission was not her own—and that Plaintiff did not hold sincere religious beliefs in conflict with COVID-19 vaccination—that mistake is not evidence of pretext

where: (i) Mr. Walters reviewed Plaintiff's accommodation letter twice, (ii) attempted to discuss with Plaintiff the basis for her accommodation request, but was rebuffed, and (iii) accepted Plaintiff's statement that her accommodation request was supported by nothing more than her written submission.[5] *See e.g. Blizzard v. Marion Tech. College*, 698 F.3d 275, 286-87 (6th Cir. 2012) (plaintiff could not establish that defendant's proffered reason for plaintiff's termination was pretextual, or motivated by animus, where the plaintiff failed to "put forth evidence which demonstrate[d] the employer did not honestly believe in the proffered non-discriminatory reason for its adverse employment action"); *Graham v. Best Buy Stores, L.P.*, 298 Fed. App'x. 487, 494 (6th Cir. 2008) (plaintiff did not overcome the employer's honest belief in its nondiscriminatory reason for terminating plaintiff—i.e., plaintiff's violation of company policy—because the employer only needed to prove "that [the employer] made its decision to terminate [plaintiff] based on an honestly held belief in a nondiscriminatory reason supported by particularized facts after a reasonably thorough investigation.").

Because Plaintiff did not establish direct evidence of discrimination, a *prima facie* claim, or pretext for BCBSM's legitimate, non-discriminatory explanation for

---

[5] ECF No. 116, PageID.3508, 137: 11-17 (Mr. Walters: . . ."[W]hen I talked to her she said: I have nothing further to offer. I stand by my letter. And the Very Reverend wasn't mentioned in the letter at all. And she was saying . . . I stand by my letter and I have nothing further to offer.").

denying Plaintiff's accommodation request and terminating her employment, BCBSM is entitled to judgment as a matter of law as to Counts II and III. *See Wu v. Tyson Foods, Inc.*, 189 Fed. App'x. 375, 381 (6th Cir. 2006) (affirming judgment as a matter of law for the employer in a Title VII case where the plaintiff failed to establish the fourth element of his *prima facie* case and, "when combined with the minimal evidence of pretext offered at trial, would not have permitted the factfinder to *believe* the plaintiff's explanation of intentional discrimination.") (internal markup omitted, emphasis in original).

### B.    The Court Should Grant a New Trial Under Rule 59

"The Sixth Circuit has interpreted [Rule 59] to permit a new trial 'when a jury has reached a seriously erroneous result as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias.'" *Walbro LLC*, 2024 WL 4545961, at *8, quoting *Holmes v. City of Massillon*, 78 F.3d 1041, 1045-46 (6th Cir. 1996). All three bases warrant a new trial here.

First, the jury's verdict as to Count II and Count III was against the great weight of the evidence. The great weight of the evidence showed that Mr. Walters reasonably inquired into the sincerity and religious nature Plaintiff's purported beliefs, and came to the honestly-held belief (because Plaintiff would not explain her

religious views or the reason for her accommodation request) that Plaintiff did not hold sincere religious beliefs in conflict with COVID-19 vaccination.

There is nothing intentionally discriminatory about this decision. *See E.E.O.C. v. Papin Enterprises, Inc.*, No. 6:07-cv-1548-Orl-28GJK, 2009 WL 2256023, *4, n. 11 (M.D. Fla. July 28, 2009) ("Title VII . . . permit[s] an inquiry into the sincerity and religious nature of an employee or member's purported beliefs before the duty to accommodate such a belief arises[.]"); *id.* ("[I]f the rule were otherwise, an employer would have to grant an accommodation any time an employee requested one, even if there were not a sincerely-held religious belief [backing the request] . . .").

And where the bulk of Plaintiff's proofs focused on the statements and conduct of non decision-makers (concerning an accommodation review process that was not applied to Plaintiff), the jury's conclusion otherwise was unreasonable, and against the great weight of the evidence. *See Patterson v. Hudson Area Sch.*, 724 F. Supp. 2d 682, 700 (E.D. Mich. 2010) (conditionally granting motion for new trial where "the great weight of the evidence did not support a finding that: (1) [p]laintiff was subjected to harassment based on sex . . . ."); *Walbro LLC*, 2024 WL 4545961, at *8 (conditionally granting motion for a new trial where the plaintiff failed to establish a *prima facie* ELCRA claim and the "offhand comments allegedly made by an employee's supervisor *alone* [were] not sufficient to show circumstances

giving rise to an inference of age discrimination") (emphasis in original).

Second, a new trial is appropriate because the jury's award was excessive. As explained more fully in BCBSM's Motion for Remittitur (being filed contemporaneously with this Motion), the record at trial does not support the proposition that Plaintiff suffered $1,000,000 in non-economic damages. Indeed, absent from the record is any evidence that Plaintiff sought psychological treatment, counseling, or medical care for her emotional distress. *Walbro LLC*, 2024 WL 4545961, at *9 (new trial was appropriate where the record did not support $1.3 million in damages because plaintiff did not seek professional treatment for his distress), citing *Weber v. Infinity Broad. Corp.*, No. 02-74602, 2005 WL 3726303, *6, *10 (E.D. Mich. Dec. 14, 2005) (finding excessive a $2,000,000 noneconomic jury award "when the employee never consulted or treated with any . . . health care professional, and that she never felt the need to."). Nor was the jury's punitive damages award sustainable as a matter of law. 42 U.S.C. § 1981a(b)(3).

Further, while Plaintiff testified that in 2021, she did not have any plans to retire early (ECF No. 125, PageID.3830, 25: 7-17), Plaintiff also testified that: (i) for at least a year following her termination, she informed prospective employers that she was "retired" and looking for part-time work (*id.* at PageID.3895, 90: 1-25); (ii) she did not once apply for a job within the same industry as BCBSM (*id.* at PageID.3896, 91: 13-17); (iii) she did not once write to a potential employer in the

industry saying she has 32 years of experience, notwithstanding her lack of degree (*id.* at PageID.3896, 91: 18-25); and (iv) could not recall the name of a single employer's full-time employment opportunity she actually reviewed. *Id.* at PageID.125, PageID.3897, 92: 16-25. Under the circumstances, the jury's award of $1,300,000 in front pay—roughly the equivalent of thirteen additional years of full-time work—is unsupported. *See Stafford v. Electronic Data Systems Corp.*, 749 F. Supp. 781, 790 (E.D. Mich. 1990) ("front pay awards should only be temporary in nature, compensating the plaintiff only until such time that he could reasonably be expected to attain a [comparable] employment status[.]").

Third, a new trial should be awarded due to Plaintiff's counsel's inappropriate statements at trial. In his opening statement, Plaintiff's counsel—relying on an exhibit the Court *barred* from Plaintiff's case-in-chief (ECF No. 99, PageID.3047)—told the jury: "You're going to hear, they rejected the majority of religious accommodation requests. 75 percent." ECF No. 114, PageID.3310, 53: 11-12. In his cross-examination of Tricia Snyder, counsel—again relying on the excluded exhibit—stated "[a]nd of the 763 religious accommodations, Blue Cross declined 433 of them." ECF No. 120, PaegID.3662, 76: 16-17. But Ms. Snyder did not independently recall those numbers (*id.* at PageID.3662, 76: 18-23), and testified that she thought "that what [Plaintiff's counsel] said was not accurate." *Id.* at PageID.3662, 76: 24.

Plaintiff's counsel also repeatedly asked Ms. Snyder whether the policy had an "end date" of December 2, 2021—the day Plaintiff's accommodation request was denied—but Ms. Snyder did not know. ECF No. 120, PageID.3664-65, 78: 3 – 79: 1. Nevertheless, counsel asked Ms. Snyder "[s]o you had one day to suddenly make decisions on 166 religious accommodation requests, including that of Lisa Domski? . . . it would be a tremendous relief for HR, if you only had one day, to just deny all those requests, wouldn't it?" *Id.* at PageID.3665, 79: 2-12 (objection sustained). Counsel also pressed Mr. Walters about the total number of accommodation requests he denied, asking: "[a]nd the majority of those requests you recommended be denied; true? . . . It was 75 percent, wasn't it?" ECF No. 116, PageID.3561, 190: 11-15. But Mr. Walters did not recall. *Id.*

Despite failing to introduce evidence of the policy's "end date," and how many accommodation requests BCBSM received, granted, or denied, counsel during his closing argument displayed his own handwritten notes to the jury showing the numbers 433 and 763. And while displaying those (still not in evidence) numbers, counsel told the jury to imagine it was 1984, and that "someone in a black suit from the office of general counsel" knocked on Plaintiff's door and told her that she is "going to be one of 433 people for an artificial end date for Blue Cross on December 2, 2021, and [that her] religious accommodation request is going to be denied." ECF No. 125, PageID.4014, 208: 13 – 209: 20.

23

The purpose of counsel's persistent commentary about the number and percentage of denied requests is obvious and improper. Counsel wanted the jury to believe, and base its verdict on, the *unsupported* notion that BCBSM flippantly denied 75% of all religious accommodation requests to meet a December 2, 2021 "end date" for the policy. With decided understatement, counsel's argument was inflammatory, exceedingly prejudicial, and without any basis in the record. Counsel's unsupported theory permeated the case from beginning to end, and warrants a new trial. *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 758-59 (6th Cir. 1980) (ordering a new trial because the prejudicial effect of the plaintiff's counsel's comments permeated the trial, and could not be remedied without a new trial).

Finally, but critically, a new trial is warranted on Plaintiff's failure to accommodate claim (Count I) if the Court grants judgment as a matter of law on Plaintiff's intentional discrimination claims. The relevant inquiry for a failure to accommodate claim is whether Plaintiff holds a sincere religious belief that conflicts with an employment requirement, and BCBSM was informed of the conflict, and terminated Plaintiff for failing to comply with the conflicting requirement. ECF No. 125, PageID.3981, 176: 5-9. Testimony about the October 12, 2021 HR meeting does not bear on a single element of this claim. And as the Court recognized, "comments made by other employees at the [October 12] meeting who were not

24

decision-makers . . . could be characterized as stray remarks. And for that reason, those remarks are not relevant." ECF No. 120, PageID.3783, 197: 1-5. Despite their lack of relevance, the October 12 comments of Mr. Feinbaum and Ms. Snyder pervaded the trial. If judgment as a matter of law is granted on Counts II and III, BCBSM should be awarded a new trial on Count I to ensure a proper jury verdict based on admissible, *relevant* facts, rather than passion and prejudice resulting from "stray remarks" that are irrelevant to Count I.

## IV.   **CONCLUSION**

For the foregoing reasons, BCBSM respectfully requests that this Honorable Court enter an order: (1) granting BCBSM's Motion for Judgment as a Matter of Law and BCBSM's Motion for a New Trial; and (2) awarding BCBSM any further relief this Court deems equitable and just.

Respectfully submitted,

DICKINSON WRIGHT PLLC

By: */s/ Brandon C. Hubbard*
Brandon C. Hubbard (P71085)
DICKINSON WRIGHT PLLC
123 W. Allegan Street, Suite 900
Lansing, MI 48933
(517) 371-1730
bhubbard@dickinsonwright.com
Dated:  November 17, 2024        *Attorneys for Defendant*